UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-1862-GW(PJWx) | Date | May 23, 2019 |
|---|---|---|---|
| Title | *Optimum Productions et al v. Home Box Office, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Bryan J. Freedman | Theodore J. Boutrous, Jr. |
| Jonathan P. Steinsapir | Daniel M. Petrocelli |
| Zachary T. Elsea | |
| Howard Weitzman | |

PROCEEDINGS:    **PLAINTIFFS' MOTION TO REMAND TO THE LOS ANGELES SUPERIOR COURT [17];**

**PLAINTIFFS' MOTION TO COMPEL ARBITRATION [18]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Motions are TAKEN UNDER SUBMISSION. Court to issue ruling.

|  | : | 30 |
|---|---|---|
| Initials of Preparer | JG | |

*__Optimum Productions et al v. Home Box Office et al__*; Case No. 2:19-cv-01862-GW-(PJWx)
Tentative Rulings on: (1) Motion to Remand, and (2) Motion to Compel Arbitration

**I.      Background**

On or about February 21, 2019, Plaintiffs/Petitioners[1] Optimum Productions and John Branca and John McClain, in their respective capacities as Co-Executors of the Estate of Michael J. Jackson (collectively, the "Estate") filed a "Petition to Compel Public Arbitration" against Time Warner Entertainment, L.P. and Home Box Office, Inc. ("HBO") in the Superior Court of California, County of Los Angeles ("Los Angeles County Superior Court"). *See generally* Petition to Compel Public Arbitration (the "Petition"), Docket No. 1-1.  The Petition seeks to arbitrate claims for breach of contract (disparagement clause) and breach of the covenant of good faith and fair dealing. *See generally id.*  HBO removed the action claiming diversity jurisdiction.[2]  *See* Notice of Removal, Docket No. 1, ¶ 4.  Plaintiffs now move this Court to remand the action to the Superior Court or, alternatively, to compel arbitration.  *See* Motion to Remand, Docket No. 17; Motion to Compel Arbitration ("Arbitration Motion"), Docket No. 18.  HBO opposes both motions.  *See* Memorandum in Opposition to Motion to Remand ("Remand Opp'n"), Docket No. 21; Memorandum in Opposition to Arbitration Motion ("Arbitration Opp'n"), Docket No. 22.

This dispute stems from HBO's exhibition of the documentary film *Leaving Neverland*, which details sexual abuse allegations against the late entertainer.  In essence, the Estate asserts that the film is not a documentary at all because HBO willfully ignored evidence that disputes the accusers' allegations.  *See* Petition ¶¶ 37, 61-68.  However, because there is no civil liability for defamation of the deceased, the Estate asserts contract causes of action against HBO instead.  *See id.* at 2-4; ¶ 66.

The contract on which the Estate relies was signed in 1992.  *See* Ex. B to the Petition (the "Agreement"), Docket No. 1-1, at p. 37-46 of 54.  It is a licensing agreement between Jackson and Optimum's predecessor entity on the one hand, and HBO on the other, to grant HBO the exclusive right to air Jackson's first-ever televised concert – a performance in Bucharest, Romania from the *Dangerous* world tour. *Id.* at p. 37 of 54; Petition ¶ 28.  The Agreement included the following

---

[1] To simplify the discussion, the Court will refer to the parties respectively as "Plaintiffs" and "Defendants" rather than "Petitioners" and "Respondents."  The parties use the terms interchangeably in their briefing.

[2] Plaintiffs seemingly have not served Time Warner Entertainment, L.P., and, as such, HBO need not have obtained its consent to remove the action.  *See* 28 U.S.C. § 1446(b)(2)(A).

provision, under the heading "Arbitration" (the "Arbitration Provision"):

> Any dispute arising out of, in connection with or relating to this Agreement shall be submitted for binding and final arbitration before a retired judge of the Superior Court of the State of California for the County of Los Angeles who shall be mutually selected by the parties.  In the event that the parties cannot agree on the selection of such a retired judge within 30 days after one of the parties notifies the other in writing that there is any such dispute to be resolved, each party shall select such a retired judge, and the two retired judges so selected shall then select a third retired judge who shall serve as the sole judge in connection with such dispute.  If the two party-appointed judges are unable to select a third judge within 30 days after their appointment, the sole retired judge in connection with such dispute shall be selected by the Superior Court of the State of California for the County of Los Angeles.  The retired judge so selected shall conduct the arbitration in conformity with the rules of, and as if it were conducted by, the American Arbitration Association.

Agreement at p. 45 of 54.  The Agreement also incorporated "confidentiality provisions," which were set forth in an attached "Exhibit 1."  *Id.*; Petition ¶ 31.  The confidentiality provisions state "HBO shall not make any disparaging remarks concerning Performer or any of his representatives, agents, or business practices or do any act that may harm or disparage or cause to lower in esteem the reputation or public image of Performer."  Petition ¶ 33; Agreement at p. 51 of 54 ("Disparagement Clause").  They also provide that "HBO shall not in any manner nor at any time (either during or after HBO's contact of HBO's relationship with Licensor and/or Performer), use or disclose, directly or indirectly . . . . any . . . 'Confidential Information.'"  *Id.* at p. 50 of 54.

HBO aired the concert special on October 10, 1992.  Petition ¶ 30.  The Estate further alleges that *Leaving Neverland* suggests that Jackson was abusing children during the *Dangerous* world tour.  Petition ¶¶ 40-41.

## II.     Legal Standard

### A.  Motion to Remand

"Federal courts are courts of limited jurisdiction," and have subject matter jurisdiction only to the extent "authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt*

*v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)).

28 U.S.C. § 1441 permits defendants to remove certain civil actions brought in a state court to federal district courts.  The removal statute is strictly construed against removal jurisdiction, however, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).  "Generally, [a] defendant has the right to invoke federal removal jurisdiction if the case *could* have been filed originally in federal court (i.e. on diversity or federal question grounds)."  O'Connell & Stevenson, *Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial* ("*Federal Practice Guide*") § 2:2192 (2017) (emphasis in original); *see also Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977).

While Section 4 of the Federal Arbitration Act ("FAA") authorizes a United States district court to entertain a petition to compel arbitration, the district court can only do so if it would otherwise have subject matter jurisdiction over the "suit arising out of the controversy between the parties" "save for [the arbitration] agreement."  *See* 9 U.S.C. § 4; *Vaden v. Discover Bank*, 556 U.S. 49, 52-53, 70 (2009).  In other words, the FAA does not create an independent ground for federal subject matter jurisdiction.  *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984).

In order for a court to have jurisdiction under 28 U.S.C. § 1332 (which was the sole basis for the removal here), the parties must be completely diverse.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) ("[T]he presence . . . of a single plaintiff from the same [s]tate as a single defendant deprives the district court of original diversity jurisdiction.").  The matter in controversy must also "exceed[] the sum "or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).

However, "[t]he enforcement of a forum selection clause is a proper basis for remanding a removed case to state court."  *Comerica Bank v. Whitehall Specialties, Inc.*, 352 F. Supp. 2d 1077, 1080 (C.D. Cal. 2004) (citing *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 275, 280 (9th Cir. 1984)).

B.  Arbitration Motion

The FAA reflects a "liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted).  "By its terms, the [FAA] leaves no room

for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)).

**III.    Discussion**

A.  Motion to Remand

Plaintiffs do not dispute the existence of diversity jurisdiction. *See generally* Motion to Remand; Reply ISO Motion to Remand, Docket No. 24. Rather, they claim that this Court should remand the Petition because the Agreement contains a "mandatory" forum-selection clause that establishes the Los Angeles County Superior Court as the "exclusive" forum for any dispute. *See* Motion at 7-8. Defendants respond that the Agreement does not contain "a forum selection clause – much less a mandatory and exclusive one – and establishes no basis to remand this case." Remand Opp'n at 5.

Federal courts apply federal law to interpret forum selection clauses. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Under federal law, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir.1999). District courts will only remand based on forum selection clauses if the clause is "exclusive and mandatory." *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). "To be mandatory, a clause must contain language that clearly designates a forum as the exclusive one." *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,

69 F.3d 1034, 1036 (9th Cir. 1995).

Plaintiffs argue that the Arbitration Provision itself includes the forum selection clause that requires this Court to remand.  *See* Motion at 8-9.  First, Plaintiffs contend that the Arbitration Provision's use of the verb "shall" demonstrates that the clause is mandatory rather than permissive.  Motion at 9.  Next, Plaintiffs argue that because the Arbitration Provision designates the Los Angeles Superior Court as the ultimate decider (after the parties try to work out any dispute amongst themselves) of which retired judge would be the arbitrator, the arbitration clauses evinces a clear intent that the Superior Court should have exclusive jurisdiction over *any* disputes.  *See id.*; Agreement at p. 45 of 54 ("If the two party-appointed judges are unable to select a third judge within 30 days after their appointment, the sole retired judge in connection with such dispute shall be selected by the Superior Court of the State of California for the County of Los Angeles.").  Or, in Plaintiffs' words:

> The manifest intent of the parties as expressed in the arbitration clause is that if a dispute arises and the parties fail to select a mutually-agreeable arbitrator, then the arbitrator will be selected by [the] Los Angeles Superior Court.  Necessarily inherent in and ancillary to the Los Angeles Superior Court's exclusive jurisdiction to ultimately select an arbitrator is the exclusive power to compel and specifically enforce the other antecedent procedures in the arbitration clause.

Motion at 9.  Further, Plaintiffs contend that if this Court does not interpret the clause as a mandatory and exclusive forum selection clause, HBO would be rewarded for refusing to engage with Plaintiff in trying to pick an arbitrator because HBO will now have the Estate's Arbitration Motion heard here, rather than by an arbitrator or the Superior Court.  *Id.* at 10.

The problem with Plaintiffs' arguments is that the plain language of the Arbitration Provision only explicitly grants the Los Angeles County Superior Court a limited role – *i.e.* selecting a retired judge who will preside over the arbitration when the parties cannot first agree and when two retired judges (one chosen by each side to make the selection) thereafter cannot agree.  Moreover, the Provision initially delineates that the arbitration "shall be submitted [to] . . . a retired judge of the Superior Court of the State of California for the County of Los Angeles . . . ."  There is no requirement that the chosen retired Los Angeles County Superior Court Judge reside in Los Angeles County[3] or conduct the arbitration there.  Nowhere does the Arbitration Provision

---

[3] This Court would take judicial notice of the fact that not all retired Los Angeles Superior Court judges have continued

use the words "forum," "venue," "exclusive," "mandatory," or "jurisdiction."  And while it is true that "there are no magic words that render a forum selection clause mandatory and exclusive," *A.O. Smith Corp. v. Transpac Container Sys. Ltd.*, No. CV 09-00304 RGK (JTLx), 2009 WL 3001503, at \*3 (C.D. Cal. May 8, 2009), the Court does not think that the cited language in the Arbitration Provision "clearly designates" the Los Angeles County Superior Court as the mandatory and exclusive forum for all disputes.

In *Hunt Wesson Foods*, for example, the Ninth Circuit found the following language to be merely "permissive" and therefore unenforceable:

> Buyer and Seller expressly agree that the laws of the State of California shall govern the validity, construction, interpretation and effect of this contract.  *The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract.*

*Id.*, 817 F.2d at 76 (emphasis added).  The Ninth Circuit reasoned that the clause only meant that Orange County had jurisdiction but not that it was exclusive.  The Circuit contrasted the "shall have jurisdiction language" at issue with the clause in *Pelleport*, which read "this Agreement shall be litigated *only* in the Superior Court for Los Angeles (*and in no other* ).  [Emphasis added.]" *Id.* (quoting *Pelleport*, 741 F.2d at 275).  Moreover, the use of the word "shall" is not alone sufficient to establish mandatory and exclusive jurisdiction.  *See Hunt Wesson Foods*, 817 F.2d at 77 ("Although the word "shall" is a mandatory term, here it mandates nothing more than that the Orange County courts have jurisdiction.").  The supposed forum selection clause in *Hunt Wesson Foods* is much clearer and broader than the clause at issue here and, yet, the Ninth Circuit still rejected the argument that it was mandatory and exclusive.

Plaintiffs' cases are not contrary.  In *Calisher & Associates., Inc. v. RGCMC, LLC*, 2008 WL 4949041, at \*3 (C.D. Cal. Nov. 17, 2008), the forum selection clause read "[i]f any party initiates litigation . . . . such litigation shall be subject to the laws and Rules of Evidence of the state of California with the venue being Los Angeles County Superior Court."  The *Calisher & Associates* clause specifically listed the venue as the Superior Court for *any litigation*.  Here, the purported forum selection clause only states that the Los Angeles Superior Court shall resolve a dispute over the choice of arbitrator if the parties and their chosen representatives cannot agree.  It

---

to reside in Los Angeles County.  There are some retired Los Angeles Superior Court Judges who have gone on to work in the legal field but outside of the Los Angeles area and even some other retired state judges who have gone on to sit on the federal bench.

does not state that the Superior Court must resolve *any and all* disputes; it merely covers one specific and very limited dispute.  Plaintiffs do not direct the Court to any case where a court held that a clause which granted authority to a court to decide a single discrete issue constituted an exclusive and mandatory forum selection clause.

The Confidentiality Provisions also negate a finding that the Arbitration Provision contains a mandatory and exclusive forum selection clause.  The Confidentiality Provisions state:

> In the event that either party to this agreement brings an action to enforce the terms of these confidentiality provisions or to declare rights with respect to such provisions, the prevailing party in such actions shall be entitled to an award of costs of litigation, including attorneys' fees and related costs . . . in such amount as may be determined *by the court having jurisdiction in such action*.

*See* Agreement at p. 52 of 54 (emphasis added).  By not naming the Los Angeles Superior Court, the Confidentiality Provisions seemingly envision that an action to enforce those rights could be brought in various forums.

While the Agreement may establish the Los Angeles County Superior Court as the only venue that has the authority to resolve a dispute about *which* arbitrator to select when there is a continued conflict between the parties and their surrogates on that point, the plain language of the Arbitration Provision does not support a finding that the parties intended that court to be the only forum for other disputes.  The parties' instant disagreement is not about *who* should serve as the arbitrator, but rather whether arbitration should be compelled in the first instance.[4]  Therefore, the Court would deny Plaintiff's Motion to Remand.

### B.  Arbitration Motion

As an alternative to the Motion to Remand, Plaintiffs request that the Court compel arbitration of its claims against HBO pursuant to the Arbitration Provision in the Agreement.

---

[4] The Court does not think that its interpretation leads to the "absurd" results Plaintiffs envision.  *See* Remand Reply at 5-6.  In the Court's mind, there is no assurance that the parties will ever need to be in front of the Los Angeles Superior Court in regards to that issue.  Should a determination eventually be made that the present controversy is subject to arbitration, the parties at that stage could possibly agree on an arbitrator from the outset.  Moreover, even if the parties were to be recalcitrant themselves, the next step is for the selection by each side of a retired judge and for those two judges to make the choice of a third judge who will preside over the arbitration.  Only upon a continued impasse thereafter would the Los Angeles Superior Court be called upon to resolve the deadlock.  It does seem in any way absurd for this Court to decide the proper forum for the initial decision as to arbitrability even if it were to ultimately conclude that the parties have clearly agreed to have that matter determined by an arbitrator and, thereafter, a dispute as to the selection of the arbitrator arose which would have to be decided by the Los Angeles County Superior Court.

Arbitration Motion at 1.  Anticipating Defendants' opposition, Plaintiffs further argue that the Agreement dictates that the arbitrator must decide questions of arbitrability.  *Id.* at 4-5.  Defendants oppose, arguing first that this Court – as opposed to the arbitrator – must determine the gateway issues of validity of the Agreement and arbitrability of the Petition's claims.  *See* Arbitration Opp'n 6-9.  Defendants, unsurprisingly, argue that the Agreement is terminated, including the Arbitration provision, and therefore no longer valid.  *See id.* at 10-15.  Defendants continue that, even if it remains in force, the Agreement has nothing to do with *Leaving Neverland*, and thus the Arbitration Provision would not even apply to the current dispute.  *Id.* at 15-16.  Finally, Defendants assert that the Disparagement Clause is unenforceable because it violates HBO's constitutional rights and various public policies.[5]  *Id.* at 17-22.

### 1.  Who Decides Arbitrability?

The first question for the Court is therefore whether it or the arbitrator will decide the gateway issues of validity and arbitrability.  Courts are "normally tasked with two gateway issues when deciding whether to compel arbitration under the FAA: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.' " *Morgan v. Glob. Payments Check Servs., Inc.*, No. 2:17-CV-01771-JAM-CMK, 2018 WL 934579, at *2 (E.D. Cal. Feb. 15, 2018) (quoting *Chiron Corp.*, 207 F.3d at 1130).  "But the parties can agree to expressly delegate these gateway issues to an arbitrator, in which case an arbitrator, rather than a court, must decide the issues." *Id.*  A court must determine whether the underlying agreement "clearly and unmistakably" delegated the questions of arbitrability to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal quotation marks and citations omitted).  Recently, the Supreme Court reiterated these points.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (explaining that the "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.").  The Supreme Court has emphasized that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *See id.*

---

[5] The Defendants have not raised the specter of the California anti-SLAPP law, California Code of Civil Procedure §425.16.  *See e.g.  Vivian v. Labrucherie*, 214 Cal. App. 4th 267, 274 (2013).

Plaintiffs' primary argument (for the proposition that the Arbitration Provision delegates arbitrability questions to the arbitrator) is that the Provision calls for arbitration according to the Rules of the American Arbitration Association ("AAA"). *See* Arbitration Motion at 5; Reply ISO Arbitration Motion ("Arbitration Reply"), Docket No. 25, at 4-5; Agreement at p. 45 of 54. The current version of the AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* AAA, *Commercial Arbitration Rules and Mediation Procedures*, R-7(a) (2013) *available at* https://www.adr.org/sites/default/ files/Commercial%20Rules.pdf. And the Ninth Circuit "hold[s] that incorporation of the AAA Rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.[6] Thus, the issue would be simple enough if the Agreement incorporated the current AAA Rules. However, Defendants argue that the proper rule for the Court to consider is the AAA rule that existed at the time the parties entered in to the Agreement, and that the 1992 AAA Rules are silent on the topic of the arbitrator's deciding its own jurisdiction. *See* Arbitration Opp'n at 7-8. Plaintiffs respond that Rule 1 of the 1992 AAA Rules provided that the "rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration" is made. Arbitration Reply at 4 (citing Declaration Nathaniel L. Bach ISO Arbitration Opp'n ("Bach Decl."), Docket No. 22-2, Ex. A at p. 8 of 31). In other words, Plaintiffs contend that the Agreement would change along with changes to the AAA Rules. According to Plaintiffs, most federal courts that have considered the issue have decided that Rule 1 means that agreements signed before the provision granting arbitrators the jurisdiction to rule on arbitrability still incorporate the new rule. *See* Arbitration Reply at 4-5.

The Ninth Circuit has not weighed in on whether agreements signed before the adoption of the AAA Rule providing that arbitrators could rule on their jurisdiction nonetheless incorporate that rule based on AAA Rule 1.[7] Plaintiffs are correct, however, that numerous courts that have

---

[6] *Brennan* limited its holding to the facts of that case where both parties were sophisticated, but expressly kept open the possibility that the same would be true for unsophisticated parties. *Id.* at 1130-31 ("Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.").

[7] To the extent Defendants are arguing that this Court must determine the continued validity of the Agreement as a whole before analyzing whether the Arbitration Provision commits the question of arbitrability to the arbitrator, they are misguided. Here, Defendants are not challenging the Arbitration Provision itself as invalid, instead they argue that the Agreement as a whole has expired. The continued validity of the Agreement as a whole is a question for the

considered the issue have determined that the earlier-signed agreement incorporated the later-added rule delineating arbitrability questions to the arbitrator; and that the incorporation of the later-added rule is a clear and unmistakable delegation of arbitrability.  *See* e.g. *Marriott Ownership Resorts, Inc. v. Flynn*, 2014 WL 7076827, at * 14 (D. Haw. 2014) ("Thus, even under Marriott's theory that the relevant time was the recording of the Timeshare Agreements (in 1999 and 2001), Marriott agreed at that time to be bound by the AAA rules, as amended, 'in the form obtaining at the time the demand for arbitration . . . is received.'  That is, it agreed to be bound by the rules in existence in 2014."); *JSC Surgutneftegaz v. President & Fellows of Harvard College*, 167 Fed. Appx. 266, 268 (2d Cir. 2006) ("Surgut's argument that the 1996 version of the AAA's Commercial Rules does not contain such a clause [committing the question of arbitrability to the arbitrator] is inapposite because Rule 1 of that version provides that the 'rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration or submission agreement is received by the AAA.'"); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1273 (7th Cir. 1976) ("This amendment [to the AAA rules] . . . was in effect at the time Edison initiated arbitration and thus is binding on the parties according to the terms of the contract."); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 684-85 (S.D. Fla. 2001) ("MedPartners' only response is to argue that the 1999 version of Rule 8 does not apply here because the Agreement was forged in 1996 and not 1999.  This argument is without merit.  As quoted above, Rule 1 of the AAA, which was operative in 1996 at the time of the Agreement, states '[t]hese rules *and any amendment of them* shall apply in the form obtaining *at the time the demand for arbitration or submission agreement is received by the AAA*' (emphasis added).  If MedPartners had wanted to carve out this provision so that it would not operate to validate any subsequent amendments to the AAA's rules, it could have done so rather easily using everyday contract language.").  As is clear from the quoted language in the parentheticals, many courts reason that the parties to agreements that incorporate the AAA Rules

---

arbitrator.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.  Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.  Third, this arbitration law applies in state as well as federal courts."); *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000-01 (9th Cir. 2010) ("[W]hen a plaintiff's legal challenge is that a contract as a whole is unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of its constituent provisions (such as the arbitration clause) . . . . However, when a plaintiff argues that an arbitration clause, standing alone, is unenforceable – for reasons independent of any reasons the remainder of the contract might be invalid – that is a question to be decided by the court." (citations omitted)).

are on notice that those rules may change in unexpected ways, and that if the parties intended to adopt specific rules, they could have contracted around Rule 1. *See* Arbitration Reply at 4-5 (collecting additional cases that apply the AAA Rules in effect at the time of the arbitration demand rather than those rules in effect at the time of the agreement).

Defendants only cite *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007 (N.D. Cal. 2011), for the premise that courts consider the AAA Rules in effect at the time of the agreement, rather than those in effect at the time one party is attempting to compel arbitration. *See* Arbitration Opp'n at 7-8. *Yahoo!* did not address the exact issue here though because the AAA Rules in place at the time the agreement was made seem to have been functionally the same as those in effect when arbitration was demanded. *See Yahoo!*, 836 F. Supp. 2d at 1010-12 (noting that as of October 8, 2003 the AAA rules include the AAA Supplementary Rules for Class Arbitration). In other words, the *Yahoo!* court did not have to consider what effect a change in the AAA Rules would have on the delegation clause at issue. Unsurprisingly, therefore, *Yahoo!* does not discuss the impact of Rule 1 on the analysis.

The Court did find a few cases that hold that the AAA Rules at the time of the agreement, rather than at the time of the arbitration demand, are applicable. In *Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185 (2009), the California Court of Appeal rejected the argument that the arbitrator should decide its own jurisdiction where the parties agreed to the earlier AAA Rules. The court held that to "allow for the incorporation of a rule that might not even come into existence in the future . . . contravenes the clear and unmistakable rule." *Id.* at 1193. While there is not a significant discussion of Rule 1, the court does note its existence, yet nonetheless rejects its importance. *Id.* at 1189 n.5. However, *Gilbert* relies on "California common law," instead of the federal arbitrability law,[8] and was decided prior to *Brennan*. *See id.* at 1190. In *Hasbro, Inc. v. Amron*, 419 F. Supp. 2d 678 (E.D. Pa. 2006), district court similarly declined to apply the post-agreement AAA Rules change allowing the arbitrator to decide arbitrability because "those rules were not in effect at the time the Settlement Agreement was executed." *Id.* at 685-86. *Hasbro*, however, did not analyze Rule 1's language about the applicable

---

[8] Neither party argues that California arbitration law as opposed to federal arbitrability law applies. *See Brennan*, 796 F.3d at 1129 ("[F]ederal law governs the arbitrability question by default because the Agreement is covered by the FAA, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and the parties have not clearly and unmistakably designated that nonfederal *arbitrability* law applies, *see Cape Flattery Ltd. v. Titan Maritime*, 647 F.3d 914, 921 (9th Cir. 2011).")

rules being those at the time of the arbitration demand. *Id.*

While the Court recognizes the weight of cases holding that an agreement to incorporate the AAA Rules is a clear and unmistakable delegation of the arbitrability question, even when the agreement was signed prior to the incorporation of the new rules on delegation, the Court is not entirely convinced by the logic underlying those cases. How can it be that the parties *clearly and unmistakably* intended for an arbitrator to decide arbitrability when they didn't even know that the AAA would years later come up with such a rule?[9] To accept that view, it must be assumed that − no matter what the AAA subsequently adopted pursuant to its Rule 1− the parties clearly and unmistakably agreed to anything that the AAA might devise. Therefore, if the AAA drafted a new rule that abolished all pre-trial discovery and any requirement that the arbitrator give reasons for his or her decision, the courts would have to hold that the parties unmistakably agreed to such procedures and thus would be bound by those amendments based on the language of Rule 1.[10]

The Supreme Court has repeatedly and recently reminded courts that they "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *See e.g. Henry Schein, Inc.*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). And because the Ninth Circuit has not weighed in on the precise question here, the Court is not bound to follow the out-of-circuit or otherwise non-precedential decisions Plaintiffs cite. Further, it bears noting that the Supreme Court has not even held that incorporation of the AAA Rules (even without the further wrinkle of the later-added amended rules) constitutes clear and unmistakable evidence of intent to arbitrate arbitrability. *See Henry Schein, Inc.*, 139 S. Ct. at 528, 531 (remanding for Court of Appeals to decide whether the contract in fact delegated arbitrability where the contract incorporated the AAA Rules which placed the arbitrability determination with the arbitrator rather than the court).

In sum, the Court recognizes and understands the cases Plaintiffs cite for their argument that Rule 1 incorporates the current AAA Rules' delegation rule. However, the Court is not yet

---

[9] While this Court recognizes that the decision in *Gilbert Street Developers* is not binding upon it, it does find the reasoning therein to be persuasive (at least initially). 174 Cal. App. 4th at 192-94.

[10] This Court recognizes that there may be certain types of amendments made to the AAA rules which are not of such great import that the applicable law would not require that the parties' agreement to such provision would have to be shown by clear and unmistakable evidence. For example, amendments to AAA Rules which are strictly procedural in nature (such as providing for preliminary hearings before an arbitrator to discuss the future conduct of the case and the pre-hearing exchange of documents and witness identifications) could be deemed to fall within the ambit of Rule 1's adoption by incorporation.

ready to say whether or not it will follow those cases.  The parties should discuss this point during the hearing.

Because the Court has not yet decided whether it or the arbitrator will decide arbitrability, it will hold off from addressing the arguments in regards to the arbitrability issue.

## IV.      Conclusion

Based on the foregoing discussion, the Court would deny the motion to remand and hear further argument before deciding whether the Arbitration Provision clearly and unmistakably delegates arbitrability questions to the arbitrator.