1 | DANIEL M. PETROCELLI (S.B. #97802)
     dpetrocelli@omm.com
2 | DREW E. BREUDER (S.B. #198466)
     dbreuder@omm.com
3 | O'MELVENY & MYERS LLP
   | 1999 Avenue of the Stars, 8th Floor
4 | Los Angeles, CA  90067-6035
   | Telephone:  (310) 553-6700
5 | Facsimile:   (310) 246-6779

6 | THEODORE J. BOUTROUS JR. (S.B. #132099)
     tboutrous@gibsondunn.com
7 | NATHANIEL L. BACH (S.B. #246518)
     nbach@gibsondunn.com
8 | GIBSON, DUNN & CRUTCHER LLP
   | 333 South Grand Avenue
9 | Los Angeles, CA 90071-3197
   | Telephone:  (213) 229-7804
10 | Facsimile:   (213) 229-6804

11 | *Attorneys for Defendant Home Box Office, Inc.*

12 | **UNITED STATES DISTRICT COURT**

13 | **CENTRAL DISTRICT OF CALIFORNIA**

14 | OPTIMUM PRODUCTIONS, a
   | California corporation; and JOHN
15 | BRANCA and JOHN MCCLAIN, in
   | the respective capacities as CO-
16 | EXECUTORS OF THE ESTATE OF
   | MICHAEL J. JACKSON,
17 |
18 |                          Plaintiffs,
19 |        v.
20 | HOME BOX OFFICE, a Division of
   | TIME WARNER ENTERTAINMENT,
21 | L.P., a Delaware Limited Partnership;
   | HOME BOX OFFICE, INC., a
22 | Delaware corporation; DOES 1 through
   | 5, business entities unknown; and
23 | DOES 6 through 10, individuals
   | unknown,
24 |
25 |                          Defendants.
26 |
27 |
28 |

Case No. 2:19-cv-01862-GW-PJW

Hon. George H. Wu

**DECLARATION OF DREW E. BREUDER IN SUPPORT OF DEFENDANT HOME BOX OFFICE, INC.'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ARBITRATION**

Hearing Date:  June 24, 2019
Hearing Time:  8:30 a.m.

# DECLARATION OF DREW E. BREUDER

I, Drew E. Breuder, declare:

1.      I am an attorney at law, licensed to practice in the State of California.  I am a partner at O'Melveny & Myers LLP and counsel for Defendant Home Box Office, Inc. ("HBO") in the above-referenced matter.  I submit this declaration in support of HBO's Supplemental Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion to Compel Arbitration (the "Motion").  I have personal knowledge of the facts set forth below and, if called as a witness, I could and would testify competently to them.

2.      I have reviewed and am familiar with the concert special *Michael Jackson: Live in Bucharest—The Dangerous Tour* ("*Live in Bucharest*").  *Live in Bucharest* is an approximately two-hour program featuring an October 1992 live concert performance by Michael Jackson in Bucharest, Romania as part of the worldwide tour for Mr. Jackson's 1991 *Dangerous* album (the "*Dangerous* tour").  A true and correct DVD copy of *Live in Bucharest*, which was purchased from Amazon.com, has been lodged with the Court as Exhibit A to HBO's June 4, 2019 Notice of Lodging.

3.      I have reviewed and am familiar with the 2019 documentary film *Leaving Neverland*.  A true and correct DVD copy of *Leaving Neverland* (Part I and Part II) has been lodged with the Court as Exhibit B to HBO's June 4, 2019 Notice of Lodging.

4.      Plaintiffs' Motion contends that arbitration of the parties' dispute should be compelled because *Leaving Neverland* "expressly alleges that Jackson was abusing children *in connection with and on the Dangerous World Tour*."  Dkt. 1-1 at 13, ¶ 40 (emphasis in original); *see also* Dkt. 17 at 6.  The *Dangerous* tour was a worldwide concert tour by Mr. Jackson that took place following the November 1991 release of Mr. Jackson's *Dangerous* album.  According to Mr. Jackson's official website, the *Dangerous* tour ran for more than a year—from June 1992 to November 1993—and included nearly 70 concerts in more than 25 different countries, including Germany,

BREUDER DECL. ISO HBO'S SUPPL. OPP. TO
MOTION TO COMPEL ARBITRATION
CASE NO. 2:19-CV-01862-GW-PJW

Italy, Spain, England, France, Japan, Russia, Turkey, Argentina, Brazil, Chile, Mexico, and Romania.  *See* https://www.michaeljackson.com/the-artist/?pdate=1992; https://www.michaeljackson.com/the-artist/?pdate=1993; https://www.michaeljackson.com/music/live-concert-bucharest-dangerous-tour/; *see also* https://en.wikipedia.org/wiki/Dangerous_World_Tour.

5.     As mentioned above, *Live in Bucharest* features Mr. Jackson's October 1, 1992 concert performance in Bucharest, Romania in connection with the *Dangerous* tour.  *See* https://www.michaeljackson.com/music/live-concert-bucharest-dangerous-tour/.  *Live in Bucharest* pertains solely to the October 1, 1992 concert in Romania; there is no content in *Live in Bucharest* relating to any other aspect or venue of the *Dangerous* tour.  Based on my review, *Leaving Neverland* does not mention or discuss *Live in Bucharest*, Mr. Jackson's October 1992 concert in Bucharest, or HBO's exhibition of *Live in Bucharest* on the HBO programming service in October 1992.  There does not appear to be any concert footage or other content from *Live in Bucharest* in *Leaving Neverland*, nor have Plaintiffs alleged otherwise.  Nor have Plaintiffs alleged that *Leaving Neverland* contains or uses any "confidential information" (as that term is defined in Exhibit I to the 1992 Agreement (Dkt. 18, Ex. B at 38)).  Plaintiffs have not even alleged that HBO acquired any "confidential information" in connection with its one-time license to exhibit Mr. Jackson's *Live in Bucharest* concert performance on the HBO programming service in October 1992.  *Leaving Neverland* also does not mention or discuss the 1992 Agreement that is the basis of Plaintiffs' Motion.

6.     Moreover, the *Dangerous* tour is only mentioned once during *Leaving Neverland*, in the following passage:

Joy Robson:  "During that *Dangerous* tour when Michael [Jackson] took Brett Barnes on the tour with him, Wade [Robson] had asked to go on the tour.  And Michael had told him no, he couldn't go because he wasn't

BREUDER DECL. ISO HBO'S SUPPL. OPP. TO
MOTION TO COMPEL ARBITRATION
CASE NO. 2:19-CV-01862-GW-PJW

allowed to take children on this tour.  And then he saw Brett Barnes with him on television."

*See* HBO's Notice of Lodging, Ex. B (*Leaving Neverland*, Part I) at 1:58:38—1:58:59 (showing a photograph and video of Mr. Jackson with Brett Barnes).

7.    Plaintiffs also contend that arbitration should be compelled because *Leaving Neverland* shows part of the same "music video footage"—*i.e.*, the music video for Mr. Jackson's November 1991 song *Black or White*—that was played on stage in October 1992 at Mr. Jackson's concert in Romania and which also briefly appears in *Live in Bucharest*.  Dkt. 17 at 6; *id.* at 18, ¶ 7 (alleging *Leaving Neverland* "uses footage from at least one of Michael Jackson's short films utilized in the Dangerous World Tour").  Notably, Plaintiffs do not allege that the *Black or White* music video was specifically created for or in connection with Mr. Jackson's October 1, 1992 concert in Romania or the *Live in Bucharest* program.  To the contrary, Mr. Jackson's official website confirms that the *Black or White* song and corresponding music video were released in November 1991—nearly a year before Mr. Jackson's October 1, 1992 concert in Bucharest and HBO's exhibition of *Live in Bucharest*.  *See* https://www.michaeljackson.com/news/michael-jackson-black-or-white-single-released/; *see also* https://en.wikipedia.org/wiki/Black_or_White.  Both the *Black or White* song and music video are available to the public for purchase on iTunes.

8.    *Live in Bucharest* contains a segment where the opening sequence of the *Black or White* music video, featuring Macaulay Culkin, plays on large screens to the left and the right of the concert stage, as an introduction to Mr. Jackson's live performance of the song.  Below is a screenshot from *Live in Bucharest* showing the *Black or White* video on display for concert attendees and viewers of the program:

BREUDER DECL. ISO HBO'S SUPPL. OPP. TO
MOTION TO COMPEL ARBITRATION
CASE NO. 2:19-CV-01862-GW-PJW

*See* HBO's Notice of Lodging, Ex. A (*Live in Bucharest*) at 1:30:23—1:31:57.

9.     *Leaving Neverland* also contains a short excerpt from the beginning sequence of the *Black or White* music video.  *See* HBO's Notice of Lodging, Ex. B (*Leaving Neverland*, Part I) at 1:50:37.

10.     Attached hereto as Exhibit C is a true and correct copy of the May 23, 2019 hearing transcript in this matter.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 4th day of June 2019, at Los Angeles, California.


                                        /s/ Drew E. Breuder
                                        Drew E. Breuder

BREUDER DECL. ISO HBO'S SUPPL. OPP. TO
MOTION TO COMPEL ARBITRATION
CASE NO. 2:19-CV-01862-GW-PJW

# Exhibit C

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5  OPTIMUM PRODUCTIONS, et al,

6                    Plaintiff,

7     vs.                          Case No. CV 19-1862-GW

8  HOME BOX OFFICE, et al,

9                    Defendants.
   _____/

10

11

12

13                  REPORTER'S TRANSCRIPT OF
                         MOTION HEARING
13                 THURSDAY, MAY 23, 2019
14                        8:30 A.M.
                   LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22     _____

       TERRI A. HOURIGAN, CSR NO. 3838, CCRR
23        FEDERAL OFFICIAL COURT REPORTER
          350 WEST FIRST STREET, ROOM 4311
24       LOS ANGELES, CALIFORNIA  90012
                  (213) 894-2849

25

                  UNITED STATES DISTRICT COURT

APPEARANCES OF COUNSEL:

**FOR THE PLAINTIFF:**

    FREEDMAN and TAITELMAN, LLP
    BY:  BRYAN J. FREEDMAN
    Attorney at Law
    1901 Avenue of the Stars, Suite 500
    Los Angeles, California  90067
    bfreedman@ftllp.com

    KINSSELLA WEITZMAN ISER KUMP and ALDISERT LLP
    BY:  JONATHAN P. STEINSAPIR
         HOWARD WEITZMAN
    Attorneys at Law
    808 Wilshire Boulevard, 3rd Floor
    Santa Monica, California 90401
    jsteinsapir@kwikalaw.com

**FOR THE DEFENDANT:**

    GIBSON DUNN and CRUTCHER LLP
    BY:  THEODORE J. BOUTROUS, JR.
    Attorney at Law
    333 South Grand Avenue
    Los Angeles, California  90071
    rvoureoua@gibsondunn.com

    O'MELVENY and MYERS
    BY:  DANIEL M. PETROCELLI
    Attorney at Law
    1999 Avenue of the Stars, 8th Floor
    Los Angeles, California 90067
    dpetrocelli@omm.com

ALSO PRESENT:  Stephanie Aberton, In-house counsel

1      **LOS ANGELES, CALIFORNIA; THURSDAY, MAY 23, 2019**

2                    **8:30 A.M.**

3                    --oOo--

4

5          THE COURT:  Okay.  In that case, let me call *Optimum*

6  *Productions versus HBO*.

7          MR. WEITZMAN:  Good morning, Your Honor.  Howard

8  Weitzman on behalf of Optimum Productions and the Estate of

9  Michael Jackson.

10          THE COURT:  All right.

11          MR. STEINSAPIR:  Good morning, Your Honor.  Jonathan

12  Steinsapir for the plaintiff and the petitioners.

13          THE COURT:  All right.

14          MR. FREEDMAN:  Good morning, Your Honor.  Bryan

15  Freedman on behalf of the same parties.

16          THE COURT:  All right.

17          MR. PETROCELLI:  Good morning, Your Honor.  Daniel

18  Petrocelli for the defendant Home Box Office, Inc., together

19  with Theodore Boutrous and Stephanie Aberton, who is the

20  in-house chief litigation counsel for Home Box Office.  She's

21  the client.

22          THE COURT:  All right.  So do I have to be nice to

23  her, too?

24          MS. ABERTON:  No, Your Honor.

25          THE COURT:  All right.  We're here on a motion to

```
 1   remand and a motion to compel arbitration.

 2        I have issued a tentative on the matters.  I presume both

 3   sides have seen it?

 4             MR. STEINSAPIR:  Thank you for your excellent and

 5   your law clerks' excellent work.

 6        Too much?

 7             THE COURT:  Too much.  I feel a little drippy after

 8   I hear all of that.

 9        Yes, does somebody want to argue something?

10             MR. STEINSAPIR:  Yes, Your Honor.  Of the motion to

11   remand --

12             THE COURT:  Yes.

13             MR. STEINSAPIR:  -- we will submit on the tentative.

14             THE COURT:  Okay.

15             MR. STEINSAPIR:  My only comment is that on the

16   arbitration issue, it looks like the best case for them is from

17   the California Court of Appeal, and it might be that they would

18   want to go back to state court, in which case we would be okay

19   with it.

20        But with that said, I will turn to the issue Your Honor

21   identified.

22        And the issue is whether arbitrability has been delegated

23   to the arbitrator under this agreement.

24        I want to argue that issue, but it's a tricky issue.

25   There is a split of authority on it.
```

1          There is no binding authority from either the Ninth

2     Circuit or the Supreme Court as Your Honor recognizes.

3          I think Your Honor can skip right over it and just go to

4     arbitrability.

5          If you look at Footnote 7 of Your Honor's tentative, that

6     decides the issue of arbitrability right there, which is Your

7     Honor says correctly under Supreme Court precedent, challenges

8     to the validity of the agreement as a whole go to the

9     arbitrator.  Only challenges to the arbitration clause are for

10    Your Honor.  You can read their opposition papers.

11              THE COURT:  But the problem is that is not their

12    only argument, that is one of their arguments and if that was

13    their sole argument then I can understand your argument here to

14    me on that point.

15              MR. STEINSAPIR:  I would actually say it is their

16    sole argument.

17          They do not make a single argument -- not a single one

18    that is addressed to the validity of the arbitration clause as

19    such -- not a single one.

20              THE COURT:  They're raising the issues -- they are

21    raising First Amendment issues, although they don't flesh that

22    out, but they kind of like dangle that.

23          They didn't make a Slapp motion, which is weird because if

24    they going to do that I thought they would have made a Slapp

25    motion.

1          MR. STEINSAPIR:  I will tell you why they didn't

2    because the California Courts have said you can't make a Slapp

3    motion to a petition to compel arbitration.  That would explain

4    to that.

5          On the First Amendment issue, those defenses are for the

6    arbitrator.

7          The defenses are always for the arbitrator, that is what

8    their own case *Henry Schein* says.

9          *Henry Schein* says that any challenges to the merits of the

10   claim are for the arbitrator, even if they are frivolous.

11          THE COURT:  Is the plaintiff conceding then the

12   point, so that I don't have to decide the issue?

13          I can say it is for me to decide, then just go forward and

14   then have you guys come back at a later date where I will then

15   -- because I haven't considered the arbitrability myself,

16   because I didn't feel I should do that unless I make the

17   determination that it's for me to make the decision on.

18          MR. STEINSAPIR:  Well, if we're not going to

19   entertain argument on that issue, then I'm certainly not going

20   to concede the first issue, just come back here.

21          If what Your Honor is telling me to move on to the actual

22   issue that you discussed in your tentative, I will do that, and

23   I got the message, but that is it, I think this issue can be

24   avoided.

25          Let me get to the issue of delegation.

```
 1        In 1992, two very sophisticated parties here -- we're not

 2   dealing with consumers, we're not dealing with employees, we're

 3   dealing with a multi-billion dollar corporation, and Michael

 4   Jackson at the time was worth some money -- maybe not a

 5   billion, but it was a lot -- the biggest performer in the world

 6   at the time.

 7             THE COURT:  In other words, after he passed away his

 8   estate was worth more.

 9             MR. STEINSAPIR:  Well, it certainly was, but that is

10   for a lot of reasons.  One of which, you don't have the

11   individual to spend money anymore, so it's easier to preserve

12   assets when that is the case, but that is a side issue.

13        The point is that these are two very sophisticated parties

14   represented by very sophisticated lawyers.

15        They agreed to the broadest possible arbitration clause

16   under the Ninth Circuit precedent and then they took it a step

17   farther and said this arbitration would be governed by the

18   Rules of the AAA.

19        Now at the time, and this is the issue, Rule 1 of the AAA

20   said these rules will apply as they exist at the time the

21   demand for arbitration is made, okay.

22        They, therefore, delegated clearly and unmistakably to

23   AAA --

24             THE COURT:  Let's put it this way:  I said I found

25   -- is it *Gilbert*?
```

1              MR. STEINSAPIR:  *Gilbert*, the Court of Appeals case.

2              THE COURT:  In *Gilbert*, it would be somewhat

3      persuasive.  It seems to me, you know, I have no problem with

4      what you are arguing except for the fact that the Courts have

5      always said, and the Supreme Court has just recently this year

6      in a unanimous decision, that, you know, a decision by the

7      parties to give the arbitrator the jurisdiction or the

8      authority to decide the issues of arbitrability in and of

9      itself have to be clear and unmistakable.

10          In other words, it cannot be by silence, it cannot be just

11     as an afterthought, it has to be really explicit.

12          So the thing I can't understand is if I look at an

13     agreement in and of itself between the parties that actually

14     talk about this issue, I have to make sure that it's clear and

15     unmistakable from the language of the agreement itself, which

16     talks about it.

17          How am I supposed to say that well, if we have an

18     agreement that the parties entered into that doesn't reference

19     that specifically, but just simply says at some point in time

20     in the future if the rules of the AAA are changed by the AAA,

21     and the AAA can change its rules for whatever reason it wants

22     to, and for example, I gave some perhaps preposterous examples,

23     but let's say the AAA decides that none of its arbitrators have

24     to give a written decision that states a reason for their

25     decision.

 1         They can say you win and you lose.  Does that mean the

 2    parties unmistakably agreed to that and are bound by that

 3    because it's a clear indication of their agreement?

 4         What happens if the AAA says if you lose in front of us,

 5    not only does the loser has to pay the obviously -- attorney's

 6    fees or whatever and the damages of the prevailing party, but

 7    it also has to throw in a half million dollars to the AAA for

 8    the insult of AAA of having to deal with a bad type of claim.

 9         Has that loser agreed?  "Oh yes, I did agree to give the

10    AAA a half million dollars if I lose."

11              MR. STEINSAPIR:  Well, to address your two specific

12    examples, if the AAA were to purport to repeal the rule that

13    would violate the California Arbitration Act and the Federal

14    Arbitration Act so it would be unlawful, they both require

15    decisions from the arbitrator.

16         Certainly, the California Arbitration Act does, which is

17    -- there is a choice of law clause.

18              THE COURT:  But can't you waive that?

19              MR. STEINSAPIR:  I don't --

20              THE COURT:  You are sophisticated parties, can't you

21    waive that?

22              MR. STEINSAPIR:  I don't know.

23              THE COURT:  That is the issue.

24              MR. STEINSAPIR:  Let me get back to delegation.

25         The point is here and the case is -- I understand that

1   Your Honor is not bound by any of the cases, but I don't think

2   it's noteworthy but at least the overwhelming majority of other

3   district judges across the nation and the Second Circuit in an

4   unpublished decision, have gone my way on this issue.

5        One of the things they have said is a sophisticated party

6   HBO, you know what Rule 1 says, and you can opt out of it.

7        You can say we don't want that.

8        And let me just finish my thought, because I see where

9   Your Honor is going, but they have clearly and unmistakably

10  delegated the issue of what the rules of the arbitration are to

11  the arbitrator -- to the arbitration service, AAA.

12       They are clearly on notice that AAA changes its rules

13  because they change its rules all of the time.

14       AAA wasn't some new organization in 1992.  We have cases

15  here talking about arbitration clauses from the AAA from the

16  '70s, in fact AAA goes back to the '30s.  They have also always

17  changed their rules.

18       So HBO was certainly on notice as were we that it could

19  change this rule, and they certainly clearly and unmistakably

20  delegated the rules of the arbitration to the AAA.

21            THE COURT:  In that recent Supreme Court case, the

22  *Henry Schein*, I think that is the case, that case wasn't a AAA.

23       The Supreme Court remanded it, and it was so clear that

24  the AAA rules would apply, and you would have to consider that

25  in and of itself to be clear and unmistakable, I don't

1    understand why the Supreme Court sent anything back.

2         The Supreme Court should have reached its decision because

3    it is clear as to what the language was.

4              MR. STEINSAPIR:  Why they sent it back -- it was AAA

5    rules, wasn't it, or JAMS -- same thing.

6              THE COURT:  Yes.

7              MR. STEINSAPIR:  They sent it back simply as -- I

8    think Mr. Boutrous would know the rules of the Supreme Court

9    better than I, but they didn't grant cert on the issue of that

10   issue.

11        They took it as assumed, and because that issue had not

12   been addressed by the Appeals Court, I believe it was for the

13   Appeals Court to address in the first instance, so that is a

14   procedural issue.

15             THE COURT:  That's what I think, too.

16        This issue really has to be addressed by Appeals Court or

17   by the Supreme Court.

18        I understand your point, and I'm not saying that you are

19   necessarily wrong, it just seems to me there is a conflict

20   between a requirement that requires the assent of the parties

21   to be clear and unmistakable as a requirement -- as the first

22   step to saying that this important decision has been decided by

23   the parties versus a situation where, well, if the AAA decides

24   to do it later on, you know, that is clear and unmistakable no

25   matter what the AAA decides to do, because it was possible that

1    the AAA could have done it.

2         If that is all you need to have clear and unmistakable,

3    then okay, then it seems to me that clear and unmistakable

4    means you could get -- if you forget to, you know, to not

5    include something of that sort, that you are bound.

6         It's just, to my mind, is kind of flaky.

7              MR. STEINSAPIR:  It's kind of flaky.

8         I mean, these are sophisticated parties that have

9    delegated the rules of the arbitration to AAA.

10        They know that those rules can change.  They clearly and

11   unmistakably delegated the rules to AAA.  There is no doubt

12   about that.

13        The question is whether they have clearly and unmistakably

14   delegated arbitrability.

15             THE COURT:  The problem is that there are certain

16   types of areas that Supreme Court has said, and this is one of

17   them that has to be clear and unmistakable.

18        There are other types of changes that you could do, for

19   example, purely procedural rules.  There is no requirement that

20   an agreement to purely procedural rules have to be shown by

21   clear and unmistakable evidence, but this is one area where it

22   does, and that is my problem.

23        I don't understand how I could find clear and unmistakable

24   in this context.

25             MR. STEINSAPIR:  Well, I think you could find it by

1    citing all of the cases that we cited that did find it.

2           THE COURT:  The problem is I look at those cases and

3    I don't understand why they say that.

4        I mean, you know, again, sometimes there is certain

5    fiction that come up and people just assume something and they

6    don't really analyze it.  I don't understand how these other

7    Courts say it is clear and unmistakable.

8        I can say that they want some sort of rule that is easy to

9    follow, and therefore, okay, just do it.  I suppose you could

10   do that, but again, to my mind it's not clear and unmistakable.

11       But I'm perfectly willing to accept if the Ninth Circuit

12   or Supreme Court tells me that, yes, this is clear and

13   unmistakable, I would say, fine, I have done my duty.  I have

14   done the analysis that you forced me to make, and I'm saying

15   that a person can agree clearly and unmistakably to a very

16   important issue by simply not saying anything about it, okay,

17   that is fine, I'm willing to do that.

18          MR. STEINSAPIR:  Well, Your Honor, I don't think

19   we're going to need the Ninth Circuit or Supreme Court to do

20   that in this case because I think once we get to the second

21   question on the arbitrability, it's going to be an easy issue

22   for you.

23       So then the question I have for Your Honor since you are

24   not prepared to address the issue now, is when we come back to

25   address that issue, which is fully briefed, and I don't think

```
 1   we need any further briefing, there has been enough on it.
 2           THE COURT:  What I would do is this:  If I ruled the
 3   way of my tentative, I will send out to the parties an
 4   indication as to whether or not I want any further briefing on
 5   that issue.  And obviously, if I do, I will give you both sides
 6   time to brief it.
 7       But if I decide it is sufficiently briefed enough, I will
 8   simply have you guys back and we will argue it on a new day.
 9           MR. STEINSAPIR:  Okay, that is fine.
10           THE COURT:  Let me hear from the defense.
11       Did you decide to split up the argument or is it just you?
12       He hogged his entire side.
13           MR. PETROCELLI:  For this issue, it is just me
14   unless Mr. Boutrous decides to sit me down because I am not
15   doing a good job.
16           MR. BOUTROUS:  I may not be able to resist, but we
17   will let him start.
18           MR. PETROCELLI:  Your Honor, without repeating what
19   you wrote on your tentative and your discussion that just
20   ensued, there might be a case where this could be a closer call
21   given the authorities on both sides of the issue.
22       But I would submit, Your Honor, that this is not such a
23   case.
24       The reason I say that is because obviously --
25           THE COURT:  Before you go any further, are all of
```

```
 1    the other judicial officers just idiots?

 2         Is that what you are saying?

 3              MR. PETROCELLI:  Your Honor, to be frank, I can't

 4    fathom the logic of those cases.  I can't imagine that anybody

 5    could be bound by something that did not exist except if it was

 6    a mere procedural addition or improvement or change.

 7              THE COURT:  Let's be charitable.

 8         I think what it is, is that there has been such a swing in

 9    the Supreme Court insofar as arbitration is concerned that

10    pretty much, you know, whatever is a pro-arbitration

11    determination seems to be automatically agreed upon by the

12    Supreme Court.

13         So, it could very well be in light of the last maybe

14    decade or two decades of Supreme Court precedent that people

15    are willing to say, okay, it seems that this is something they

16    will agree to.

17         But the problem is that the Henry Schein case --

18              MR. PETROCELLI:  Actually, Your Honor, even more

19    recently than that, just several weeks ago, you have the U.S.

20    Supreme Court decision in Lamps Plus, perhaps that was the case

21    Your Honor had in mind, but in Lamps Plus which refused to find

22    a class action arbitrable because of failure to -- because the

23    refusal to infer consent.

24         The Court said, although parties are free to authorize

25    arbitrators to resolve such questions, referring to the very
```

1    kind of gateway questions we're now addressing, we will not

2    conclude that they have done so based on silence or ambiguity

3    in their agreements, which is precisely the comment Your Honor

4    made.

5         Now that phrase, "silence or ambiguity" happens to be,

6    although they didn't cite to it, the precise language that the

7    California Court in *Gilbert Street* used.

8         So, ten years earlier in 2009, *Gilbert Street* says you

9    can't incorporate, because we don't have clear and unmistakable

10   consent, particularly, and we're not going to infer consent

11   where there is silence or ambiguity.

12        And ten years later, just several weeks ago, the Supreme

13   Court says exactly that same thing.

14        And here, Your Honor, the one thing I do want to emphasize

15   which may not have been so apparent from our papers, although

16   it's in there, the arbitration clause that is bringing us here

17   is a general arbitration clause in the body of the agreement.

18        I'm looking at the exhibit to Mr. Steinsapir's

19   declaration, I think it's Exhibit D.

20        But the sentence in the document that is alleged to have

21   been violated, this non disparagement sentence is not in the

22   body of the agreement.  It is in the attachment to the

23   agreement, which is incorporated by reference.

24        But, Your Honor, in this attachment, this confidentiality

25   provision which is the sole basis of their claim, there is in

1  the final paragraph a provision assigning disputes to the Court

2  having jurisdiction.

3          THE COURT:  I quote that.

4          MR. PETROCELLI:  You did quote that, Your Honor.

5      In the face of this, I would suggest, and we can deal with

6  this in Part 2, that we don't even have an arbitration

7  provision that applies to this dispute, we have a Court

8  provision that applies to the dispute.

9      But at the very least for purposes of Issue 1, who is the

10  decision-maker, we have absolute ambiguity because we have two

11  directly conflicting provisions.

12     And I would say the only way that that conflict can be

13  resolved is because -- is by the principle that the specific

14  overrides the general, and here we have a very specific court

15  adjudication provision, not an arbitration provision, so that's

16  why I say while there is an interesting debate on perhaps a

17  different record, it's not this record.

18     Getting past that, Your Honor, as Your Honor has pointed

19  out, there is absolutely nothing even in the generic

20  arbitration provision, even assuming that were to apply to this

21  dispute, that suggests that has been delegated.

22     We're talking about not some mere procedural issue.

23     This is a fundamental issue of who is going to make these

24  threshold critical decisions.  An arbitration is a matter of

25  consent and it's pure contract interpretation.

1          However, in this case the Courts have made clear that the

2     default is to the Court being the decision-maker.  That is

3     right out of Section 2 of the Federal Arbitration Act.

4          If we go to the *Schein* case, Your Honor, which is the

5     other recent Supreme Court decision, the Court says that to be

6     sure before referring a dispute to the arbitrator the Court

7     determines rather a valid arbitration agreement exists.

8          And it goes on to say, that only if you have a valid

9     arbitration agreement do we start talking about issues of

10    arbitrability.

11         But the default is always to the Court unless there is

12    clear and unmistakable evidence that the parties assigned this

13    to the arbitrator.

14         We have no such evidence in this case, and we have direct

15    evidence of the opposite because of the presence of the Court

16    provision in this document.

17         At the very minimum, we have silence.

18         If we have silence, we're right in the throes of these

19    competing cases, and I would suggest that the winner is the

20    Supreme Court's most recent pronouncement just a couple of

21    weeks ago, Your Honor, in the *Lamps Plus* case.

22         There is no dispositive Ninth Circuit case on this issue.

23         We have the California case, which, by the way, the

24    California case while applying California law relied on Federal

25    law because the whole discussion in the California case, the

1    *Gilbert Street* case started with the language from the *AT&T*

2    case back in 1986, where the Supreme Court laid down this

3    principle that there has to be evidence of clear and

4    unmistakable delegation.

5         So we're really looking at the same law here.

6         Beyond all of that, it just doesn't make any sense to

7    incorporate something that doesn't exist.  It makes no sense.

8         I mean, maybe at the margins, Your Honor, but not as a

9    fundamental proposition as to this.

10         I don't want to waive our argument, Your Honor, that we

11    don't even have the question of who the decision-maker is under

12    the Supreme Court law -- under the Federal Arbitration Act with

13    respect to the question of the validity of the arbitration

14    agreement.

15         There has to be a valid agreement, otherwise what are we

16    doing here?

17         The question that we're tackling really deals with

18    arbitrability.

19         Once it's been established that we have a valid

20    arbitration agreement -- you can imagine a situation, for

21    example, extreme hypo, where the plaintiff files a motion to

22    compel arbitration and there is no arbitration agreement, or,

23    one that said that this arbitration agreement applies only for

24    three days, 25 years ago.

25         In that case, the Court would have the threshold

1    responsibility as it has in all cases, to look and see if we

2    have an arbitration agreement that even brings us here.

3         Now, this argument spills over on the merits, but it also

4    has relevance to your threshold determination.

5         We don't have to reach it, Your Honor, because even if you

6    assume there is a valid arbitration agreement because of the

7    generic provision, we don't have the clear and unmistakable

8    delegation of authority.

9              THE COURT:  All right.  Anything else for me to

10   decide?

11             MR. STEINSAPIR:  Just very briefly.

12        First of all, just to correct the record, we did cite the

13   *Gilbert Street* case.  They didn't.

14        We brought it to your attention as part of our duty of

15   candor to bring contrary authority to your attention, it was us

16   who cited it.

17        But more importantly on this question of whether Exhibit I

18   is part of the arbitration agreement, it is by -- right above

19   the arbitration agreement it says:  It is understood that HBO

20   shall comply with the confidentiality provisions set forth in

21   Exhibit I, attached hereto and incorporated herein by this

22   reference.  So clearly it is subject to the arbitration

23   provision.

24        Now, with the respect to the Court provision, that is very

25   easily explained.

1          There is a provision in Exhibit I which allows for

2     injunctive relief.  We didn't bring that, but in that case you

3     would need to go to a Court, not an arbitrator, most likely.

4     Arbitrators can recommend injunctions, they certainly can't

5     enter them.

6          Secondly, as to the substantive question of arbitrability,

7     which we are not here for, but I just want to make this

8     absolutely clear, the case that Mr. Petrocelli is referring to,

9     he says it is the *AT&T* case, it is actually the *First Options*

10    case, which holds it has to be clear and unmistakable.

11         But Justice Breyer in that case for a unanimous court,

12    makes it very clear that although delegation is governed by

13    this clear and unmistakable rule, the question of arbitrability

14    when a Court is determining it, is governed by the exact

15    opposite rule.  All doubts and all ambiguities, and

16    Mr. Petrocelli just admitted there was an ambiguity, all

17    ambiguities are construed in favor of arbitration, unless the

18    Court can say with positive assurances that it is not

19    arbitrable, and there is no way that just because there is one

20    little reference to a Court in Exhibit I that you could say

21    with positive assurances that it's not arbitrable, but that

22    goes to the Phase 2 issue.

23         With that, we would submit.

24              THE COURT:  I do want a response from defense to his

25    two points that he just raised.

**UNITED STATES DISTRICT COURT**

1          MR. PETROCELLI:  I'm not sure I understood what the

2     two points were.

3          THE COURT:  The first point was you were arguing the

4     reference to other Courts in the confidentiality provisions,

5     and he's making an argument that was not necessarily a

6     demonstration that the parties were taking it outside of an

7     arbitration -- arbitration situation.

8        It was simply to recognize if injunctive relief was called

9     for as a remedy or whatever, that that would have to be sought

10    by the Courts because an arbitrator cannot issue injunctive

11    relief.

12         MR. PETROCELLI:  We disagree with that, Your Honor,

13    you have to understand this is a document that -- this is their

14    document attached to our document.  These were two documents.

15    They were not created in --

16         THE COURT:  Well, one references the other, though.

17         MR. PETROCELLI:  Well, but to be clear, if we want

18    to get precise about it -- first of all, there is nothing in

19    this document which says it applies only to injunction actions.

20       Okay, I mean you can read it, Your Honor, we will read it.

21       And secondly, all that is incorporated is the

22    confidentiality provisions, and there is nothing in the

23    incorporation statement that says they are incorporating the

24    nondisparagement statement or sentence in the confidentiality

25    document.

1        At the very minimum we have absolute ambiguity, and

2   counsel is dead wrong about the second point on this issue on

3   the delegation issue that there has to be clear and

4   unmistakable evidence of delegation.

5           THE COURT:  He's admitted that it is clear and

6   unmistakable.  But insofar as the issue of arbitrability

7   itself, not who decides the arbitrability, the issue of

8   arbitrability or the -- I can't remember how you phrased it.

9           MR. PETROCELLI:  I think what he is saying once it's

10   determined that the Court is the decision-maker here in round

11   one, and we're now in round two, and we're dealing with

12   arbitrability, where you have an arbitration provision that is

13   clearly free from any kind of challenge, and we challenge it,

14   the Court put in a footnote and they prominently featured in

15   his opening argument that we're only challenging the overall

16   agreement.

17        No, that is not true, Your Honor.

18        We're challenging the over -- we're challenging the

19   arbitration provision that is included in the overall

20   agreement.

21        You can't divorce the two.  The cases that they are

22   talking about and that Your Honor probably had in mind in the

23   footnote, are cases where someone is trying to get out of an

24   arbitration clause in an agreement because there is some

25   usurious provision in the agreement or there is some defect in

1   some substantive provision where they say it's induced by

2   fraud and all of those other arguments.  That is not what we're

3   saying here.

4           THE COURT:  Also that gets to the subject that we

5   will be discussing later on anyway if I make a determination as

6   to who decides the issue of arbitrability.

7           MR. PETROCELLI:  I would suggest, Your Honor, that

8   if you do decide to stick with your tentative, it might make

9   more sense to have a rebriefing of the arbitrability issue.

10          THE COURT:  Let me put it this way:  I will take a

11  look at it.  I understand the plaintiff would not prefer that.

12     But let me just stop you.  It doesn't make any difference

13  what you say, I'm going to make the decision myself.

14          MR. PETROCELLI:  I just thought that we could clean

15  and refine the arguments for Your Honor.

16          MR. STEINSAPIR:  Your Honor, if I could be precise

17  on why we are against that is because they did not raise the

18  issue.  They have waived it.  They did not make a single

19  argument challenging the arbitration clause.

20     I read their brief 15 times.  They don't do it, and they

21  want a do-over.  They blew it on that.

22          THE COURT:  Let me stop you again.  He doesn't say

23  anything, he just passes you paper.  That is funny, his lips

24  don't move.

25          MR. WEITZMAN:  Your Honor, for purposes of the

```
 1   record, the arbitration clause that we're talking about is on

 2   page 9 of the body of the agreement itself.

 3       Also on page 9 of the body agreement itself, right next to

 4   it, one paragraph above it, it says "confidential information.

 5   It's understood that HBO shall comply with the confidentiality

 6   provision set forth in Exhibit 1 attached hereto and

 7   incorporated herein by reference."

 8       The confidentiality provisions are the entire exhibit.

 9       It's what it's titled, it's what is here, it's where the

10   disparagement clause comes from.

11           THE COURT:  Thank you very much, everybody.  I will

12   think about this, and I will have something out hopefully by no

13   later tomorrow one way or the other.

14           MR. STEINSAPIR:  Thank you, Your Honor.

15           MR. BOUTROUS:  Thank you, Your Honor.

16

17           (The proceedings concluded at 10:32 a.m.)

18                           * * *

19

20

21

22

23

24

25
```

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )

        I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date:  May 29,2019

                /s/ TERRI A. HOURIGAN
              _____
           TERRI A. HOURIGAN, CSR NO. 3838, CCRR
             Federal Official Court Reporter

**'**

**'30s** [1] - 10:17
**'70s** [1] - 10:17

**/**

**/s** [1] - 26:19

**1**

**1** [4] - 7:19, 10:7, 17:9, 25:1
**10:32** [1] - 25:12
**15** [1] - 24:15
**19-1862-GW** [1] - 1:7
**1901** [1] - 2:5
**1986** [1] - 19:2
**1992** [2] - 7:1, 10:15
**1999** [1] - 2:18

**2**

**2** [3] - 17:6, 18:3, 21:20
**2009** [1] - 16:8
**2019** [2] - 1:13, 3:1
**213** [1] - 1:24
**23** [2] - 1:13, 3:1
**25** [1] - 19:23
**28** [1] - 26:9
**29,2019** [1] - 26:16

**3**

**333** [1] - 2:14
**350** [1] - 1:23
**3838** [2] - 1:22, 26:20
**3rd** [1] - 2:9

**4**

**4311** [1] - 1:23

**5**

**500** [1] - 2:5

**7**

**7** [1] - 5:5
**753** [1] - 26:9

**8**

**808** [1] - 2:9
**894-2849** [1] - 1:24
**8:30** [2] - 1:14, 3:2
**8th** [1] - 2:18

**9**

**9** [2] - 24:22, 24:23
**90012** [1] - 1:24
**90067** [2] - 2:6, 2:18
**90071** [1] - 2:15
**90401** [1] - 2:10

**A**

**a.m** [1] - 25:12
**A.M** [2] - 1:14, 3:2
**Aberton** [1] - 3:19
**ABERTON** [1] - 3:24
**able** [1] - 14:16
**above-entitled** [1] - 26:12
**absolute** [2] - 17:10, 22:22
**absolutely** [2] - 17:19, 21:5
**accept** [1] - 13:12
**Act** [5] - 9:14, 9:15, 9:17, 18:3, 19:12
**action** [1] - 15:22
**actions** [1] - 22:15
**actual** [1] - 6:21
**addition** [1] - 15:6
**address** [4] - 9:12, 11:15, 13:24, 13:25
**addressed** [3] - 5:18, 11:14, 11:18
**addressing** [1] - 16:1
**adjudication** [1] - 17:15
**admitted** [2] - 21:14, 23:1
**afterthought** [1] - 8:11
**ago** [4] - 15:19, 16:12, 18:21, 19:23
**agree** [3] - 9:10, 13:16, 15:16
**agreed** [4] - 7:15, 9:2, 9:10, 15:11
**agreement** [27] - 4:23, 5:8, 8:13, 8:15, 8:18, 9:3, 12:21, 16:17, 16:22, 16:23, 18:7, 18:9, 19:14, 19:15, 19:19, 19:21, 19:22, 20:1, 20:5, 20:16, 20:17, 23:12, 23:15, 23:19, 23:20, 24:22, 24:23
**agreements** [1] - 16:3
**al** [2] - 1:5, 1:8
**ALDISERT** [1] - 2:7
**alleged** [1] - 16:20

**allows** [1] - 20:24
**ambiguities** [2] - 21:13, 21:15
**ambiguity** [6] - 16:2, 16:5, 16:11, 17:10, 21:14, 22:22
**Amendment** [2] - 5:21, 6:5
**analysis** [1] - 13:15
**analyze** [1] - 13:7
**ANGELES** [4] - 1:14, 1:24, 3:1, 26:3
**Angeles** [2] - 2:6, 2:15, 2:18
**anyway** [1] - 23:25
**apparent** [1] - 16:15
**Appeal** [1] - 4:17
**Appeals** [4] - 8:1, 11:14, 11:15, 11:18
**APPEARANCES** [1] - 2:1
**applies** [4] - 17:7, 17:8, 19:22, 22:15
**apply** [3] - 7:20, 11:2, 17:20
**applying** [1] - 18:24
**arbitrability** [16] - 4:22, 5:4, 5:6, 6:15, 8:8, 12:15, 13:22, 18:10, 19:18, 21:4, 21:11, 23:2, 23:3, 23:8, 24:1, 24:4
**arbitrable** [3] - 15:22, 21:17, 21:19
**Arbitration** [5] - 9:14, 9:15, 9:17, 18:3, 19:12
**arbitration** [42] - 4:1, 4:16, 5:9, 5:18, 6:3, 7:15, 7:17, 7:21, 10:11, 10:12, 10:16, 10:21, 12:10, 15:9, 15:16, 16:16, 16:17, 17:6, 17:15, 17:20, 17:24, 18:7, 18:9, 19:13, 19:19, 19:21, 19:22, 20:1, 20:5, 20:16, 20:17, 20:20, 21:15, 22:4, 23:8, 23:14, 23:19, 24:14, 24:21
**arbitrator** [11] - 4:23, 5:9, 6:6, 6:7, 6:10, 8:7, 9:16, 18:6, 18:13, 21:1, 22:7
**arbitrators** [3] - 8:24, 15:25, 21:2
**area** [1] - 12:17
**areas** [1] - 12:17
**argue** [3] - 4:9, 4:24,

14:7
**arguing** [2] - 8:4, 21:25
**argument** [12] - 5:12, 5:13, 5:16, 5:17, 6:19, 14:11, 19:10, 20:2, 22:2, 23:11, 24:14
**arguments** [3] - 5:12, 23:22, 24:10
**assent** [1] - 11:21
**assets** [1] - 7:12
**assigned** [1] - 18:12
**assigning** [1] - 17:1
**assume** [2] - 13:6, 20:5
**assumed** [1] - 11:13
**assuming** [1] - 17:20
**assurances** [2] - 21:16, 21:19
**AT&T** [2] - 19:1, 21:7
**attached** [3] - 20:19, 22:10, 25:1
**attachment** [2] - 16:22, 16:24
**attention** [2] - 20:13, 20:14
**Attorney** [3] - 2:5, 2:14, 2:17
**attorneys** [1] - 9:6
**Attorneys** [1] - 2:9
**authorities** [1] - 14:21
**authority** [5] - 4:25, 5:1, 8:8, 20:7, 20:14
**authorize** [1] - 15:24
**automatically** [1] - 15:11
**Avenue** [3] - 2:5, 2:14, 2:18
**avoided** [1] - 6:24

**B**

**bad** [1] - 9:9
**based** [1] - 16:2
**basis** [1] - 16:25
**behalf** [2] - 3:8, 3:15
**best** [1] - 4:16
**between** [2] - 8:13, 11:21
**beyond** [1] - 19:6
**bfreedman@ftllp.com** [1] - 2:6
**biggest** [1] - 7:5
**billion** [2] - 7:3, 7:5
**binding** [1] - 4:25
**blew** [1] - 24:16
**body** [4] - 16:17, 16:22, 24:22, 24:23
**Boulevard** [1] - 2:9

**bound** [4] - 9:2, 10:2, 12:6, 15:5
**BOUTROUS** [2] - 14:16, 25:10
**Boutrous** [3] - 3:19, 9:11, 14:14
**BOX** [1] - 1:8
**Box** [2] - 3:18, 3:20
**Breyer** [1] - 21:9
**brief** [2] - 14:6, 24:15
**briefed** [2] - 13:25, 14:6
**briefing** [2] - 14:1, 14:4
**briefly** [1] - 20:10
**bring** [2] - 20:13, 20:25
**bringing** [1] - 16:16
**brings** [1] - 20:1
**broadest** [1] - 7:15
**brought** [1] - 20:12
**Bryan** [1] - 3:14
**BRYAN** [1] - 2:4
**BY** [4] - 2:4, 2:8, 2:13, 2:17

**C**

**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 3:1, 26:4
**California** [14] - 2:6, 2:10, 2:15, 2:18, 4:17, 6:2, 9:14, 9:17, 16:7, 18:23, 18:24, 18:25, 26:8
**candor** [1] - 20:13
**cannot** [3] - 8:10, 22:7
**Case** [1] - 1:7
**case** [32] - 3:5, 4:16, 4:18, 6:8, 7:12, 8:1, 10:1, 10:23, 10:24, 13:21, 14:20, 14:23, 15:17, 15:20, 18:1, 18:4, 18:14, 18:21, 18:22, 18:23, 18:24, 18:25, 19:1, 19:2, 19:24, 20:12, 20:25, 21:6, 21:7, 21:9
**cases** [9] - 10:2, 10:16, 13:2, 13:3, 15:4, 18:19, 19:25, 23:16, 23:18
**CCRR** [2] - 1:22, 26:20
**Central** [1] - 26:8
**CENTRAL** [1] - 1:2
**cert** [1] - 11:12
**certain** [2] - 12:16,

13:5
**certainly** [6] - 6:19, 7:9, 9:17, 10:19, 10:20, 21:2
**CERTIFICATE** [1] - 26:1
**certify** [1] - 26:8
**challenge** [2] - 23:9
**challenges** [3] - 5:7, 5:9, 6:9
**challenging** [4] - 23:11, 23:13, 23:14, 24:14
**change** [5] - 8:21, 10:14, 10:20, 12:11, 15:6
**changed** [2] - 8:20, 10:18
**changes** [2] - 10:13, 12:19
**charitable** [1] - 15:7
**chief** [1] - 3:20
**choice** [1] - 9:18
**Circuit** [6] - 5:1, 7:16, 10:4, 13:12, 13:20, 18:22
**cite** [2] - 16:6, 20:11
**cited** [2] - 13:2, 20:14
**citing** [1] - 13:2
**claim** [3] - 6:10, 9:9, 16:25
**class** [1] - 15:22
**clause** [10] - 5:9, 5:18, 7:15, 9:18, 16:16, 16:17, 23:19, 24:14, 24:21, 25:5
**clauses** [1] - 10:16
**clean** [1] - 24:9
**clear** [28] - 8:9, 8:14, 9:3, 11:1, 11:3, 11:6, 11:22, 11:25, 12:3, 12:4, 12:18, 12:22, 12:24, 13:8, 13:11, 13:13, 16:9, 18:1, 18:12, 19:3, 20:6, 21:6, 21:8, 21:10, 21:11, 22:13, 22:24, 23:1
**clearly** [9] - 7:22, 10:10, 10:13, 10:20, 12:11, 12:14, 13:16, 20:20, 23:9
**clerks'** [1] - 4:5
**client** [1] - 3:21
**closer** [1] - 14:20
**Code** [1] - 26:9
**comment** [2] - 4:15, 16:3
**compel** [3] - 4:1, 6:3,

13:5
19:21
**competing** [1] - 18:19
**comply** [2] - 20:18, 24:25
**concede** [1] - 6:19
**conceding** [1] - 6:11
**concerned** [1] - 15:9
**conclude** [1] - 16:2
**concluded** [1] - 25:12
**conference** [1] - 26:13
**confidential** [1] - 24:24
**confidentiality** [7] - 16:24, 20:18, 22:1, 22:18, 22:20, 24:25, 25:3
**conflict** [2] - 11:20, 17:12
**conflicting** [1] - 17:11
**conformance** [1] - 26:13
**consent** [4] - 15:23, 16:10, 17:25
**consider** [1] - 11:2
**considered** [1] - 6:15
**construed** [1] - 21:15
**consumers** [1] - 7:2
**context** [1] - 12:25
**contract** [1] - 17:25
**contrary** [1] - 20:13
**corporation** [1] - 7:3
**correct** [2] - 20:11, 26:10
**correctly** [1] - 5:7
**COUNSEL** [1] - 2:1
**counsel** [2] - 3:20, 22:23
**COUNTY** [1] - 26:3
**couple** [1] - 18:20
**COURT** [39] - 1:1, 1:23, 3:5, 3:10, 3:13, 3:16, 3:22, 3:25, 4:7, 4:12, 4:14, 5:11, 5:20, 6:11, 7:7, 7:24, 8:2, 9:19, 9:21, 9:24, 10:23, 11:9, 11:17, 12:16, 13:3, 14:2, 14:10, 14:25, 15:7, 17:3, 20:8, 21:22, 21:25, 22:12, 23:1, 23:24, 24:5, 24:17, 25:6
**Court** [45] - 4:17, 5:1, 5:7, 8:1, 8:5, 10:23, 11:1, 11:4, 11:5,

11:11, 11:14, 11:15, 11:18, 12:17, 13:13, 13:20, 15:9, 15:12, 15:14, 15:20, 15:24, 16:7, 16:12, 17:1, 17:7, 18:2, 18:5, 18:6, 18:11, 18:15, 19:2, 19:12, 19:24, 20:22, 21:1, 21:12, 21:16, 21:18, 23:6, 23:10, 26:7, 26:20
**court** [3] - 4:18, 17:14, 21:9
**Court's** [1] - 18:20
**Courts** [6] - 6:2, 8:4, 13:8, 18:1, 22:1, 22:6
**created** [1] - 22:11
**critical** [1] - 17:24
**CRUTCHER** [1] - 2:13
**CSR** [2] - 1:22, 26:20
**CV** [1] - 1:7

**D**

**damages** [1] - 9:6
**dangle** [1] - 5:22
**DANIEL** [2] - 2:13, 2:17
**Daniel** [1] - 3:17
**Date** [1] - 26:16
**date** [1] - 6:14
**days** [1] - 19:23
**dead** [1] - 22:23
**deal** [2] - 9:8, 17:5
**dealing** [4] - 7:2, 7:3, 23:7
**deals** [1] - 19:17
**debate** [1] - 17:16
**decade** [1] - 15:14
**decades** [1] - 15:14
**decide** [7] - 6:12, 6:13, 8:8, 14:6, 14:11, 20:9, 24:3
**decided** [1] - 11:23
**decides** [7] - 5:6, 8:23, 11:25, 12:1, 14:14, 23:3, 24:1
**decision** [15] - 6:17, 8:6, 8:24, 8:25, 10:5, 11:5, 11:23, 15:20, 17:10, 18:2, 18:5, 19:11, 23:6, 24:8
**decision-maker** [4] - 17:10, 18:2, 19:11, 23:6
**decisions** [2] - 9:16, 17:24
**declaration** [1] - 16:19

**default** [2] - 18:2, 18:11
**defect** [1] - 23:20
**DEFENDANT** [1] - 2:12
**defendant** [1] - 3:18
**Defendants** [1] - 1:9
**defense** [1] - 14:10, 21:22
**defenses** [2] - 6:5, 6:7
**delegated** [8] - 4:22, 7:22, 10:11, 10:21, 12:9, 12:12, 12:15, 17:21
**delegation** [7] - 6:25, 9:25, 19:4, 20:7, 21:10, 22:24, 22:25
**demand** [1] - 7:21
**demonstration** [1] - 22:3
**determination** [4] - 6:17, 15:11, 20:3, 23:25
**determined** [1] - 23:6
**determines** [1] - 18:7
**determining** [1] - 21:12
**difference** [1] - 24:7
**different** [1] - 17:12
**direct** [1] - 18:14
**directly** [1] - 17:11
**disagree** [1] - 22:8
**discussed** [1] - 6:22
**discussing** [1] - 23:25
**discussion** [2] - 14:19, 18:25
**disparagement** [2] - 16:21, 25:5
**dispositive** [1] - 18:22
**dispute** [4] - 17:7, 17:8, 17:21, 18:6
**disputes** [1] - 17:1
**District** [2] - 26:7, 26:8
**DISTRICT** [3] - 1:1, 1:2, 1:3
**district** [1] - 10:4
**DIVISION** [1] - 1:2
**divorce** [1] - 23:16
**do-over** [1] - 24:16
**document** [7] - 16:20, 18:16, 22:9, 22:10, 22:15, 22:21
**documents** [1] - 22:10
**dollar** [1] - 7:3

**dollars** [2] - 9:7, 9:11
**done** [4] - 12:2, 13:14, 13:15, 16:2
**doubt** [1] - 12:13
**doubts** [1] - 21:13
**down** [2] - 14:14, 19:2
**dpetrocelli@omm. com** [1] - 2:19
**drippy** [1] - 4:7
**DUNN** [1] - 2:13
**duty** [2] - 13:14, 20:13

**E**

**easier** [1] - 7:11
**easily** [1] - 20:23
**easy** [2] - 13:9, 13:22
**either** [1] - 5:1
**emphasize** [1] - 16:14
**employees** [1] - 7:2
**ensued** [1] - 14:20
**enter** [1] - 21:12
**entered** [1] - 8:18
**entertain** [1] - 6:18
**entire** [2] - 14:12, 25:3
**entitled** [1] - 26:12
**established** [1] - 19:18
**estate** [1] - 7:8
**Estate** [1] - 3:8
**et** [2] - 1:5, 1:8
**evidence** [6] - 12:22, 18:12, 18:14, 18:15, 19:3, 22:25
**exact** [1] - 21:12
**exactly** [1] - 16:12
**example** [3] - 8:22, 12:20, 19:20
**examples** [2] - 8:23, 9:13
**excellent** [2] - 4:4, 4:5
**except** [2] - 8:4, 15:5
**exhibit** [2] - 16:18, 25:3
**Exhibit** [6] - 16:19, 20:15, 20:19, 20:24, 21:18, 25:1
**exist** [3] - 7:20, 15:5, 19:7
**exists** [1] - 18:7
**explain** [1] - 6:3
**explained** [1] - 20:23
**explicit** [1] - 8:11
**extreme** [1] - 19:20

## F

**face** [1] - 17:5
**fact** [2] - 8:4, 10:17
**failure** [1] - 15:22
**fathom** [1] - 15:4
**favor** [1] - 21:15
**featured** [1] - 23:10
**Federal** [6] - 9:15, 18:3, 18:24, 19:12, 26:6, 26:20
**FEDERAL** [1] - 1:23
**fees** [1] - 9:6
**fiction** [1] - 13:6
**files** [1] - 19:20
**final** [1] - 17:1
**fine** [3] - 13:14, 13:18, 14:9
**finish** [1] - 10:9
**First** [3] - 5:21, 6:5, 21:7
**FIRST** [1] - 1:23
**first** [6] - 6:20, 11:15, 11:22, 20:11, 21:25, 22:14
**flaky** [2] - 12:7, 12:8
**flesh** [1] - 5:21
**Floor** [2] - 2:9, 2:18
**follow** [1] - 13:10
**footnote** [2] - 23:10, 23:18
**Footnote** [1] - 5:5
**FOR** [2] - 2:3, 2:12
**forced** [1] - 13:15
**foregoing** [1] - 26:10
**forget** [1] - 12:5
**format** [1] - 26:12
**forth** [2] - 20:18, 25:1
**forward** [1] - 6:13
**frank** [1] - 15:3
**fraud** [1] - 23:22
**free** [2] - 15:24, 23:9
**Freedman** [1] - 3:15
**FREEDMAN** [25] - 2:4, 2:4, 3:14, 4:4, 4:10, 4:13, 4:15, 5:15, 6:1, 6:18, 7:9, 8:1, 9:12, 9:20, 9:23, 9:25, 11:7, 11:10, 12:8, 13:1, 13:19, 14:9, 20:10, 24:11, 25:9
**frivolous** [1] - 6:10
**front** [1] - 9:4
**fully** [1] - 13:25
**fundamental** [2] - 17:23, 19:9
**funny** [1] - 24:18
**future** [1] - 8:20

## G

**gateway** [1] - 16:1
**general** [2] - 16:17, 17:14
**generic** [2] - 17:19, 20:6
**GEORGE** [1] - 1:3
**GIBSON** [1] - 2:13
**Gilbert** [7] - 7:25, 8:1, 8:2, 16:7, 16:8, 19:1, 20:12
**given** [1] - 14:21
**governed** [3] - 7:17, 21:10, 21:12
**Grand** [1] - 2:14
**guys** [2] - 6:14, 14:7

## H

**half** [2] - 9:7, 9:11
**HBO** [5] - 3:6, 10:7, 10:19, 20:17, 24:25
**hear** [2] - 4:8, 14:10
**HEARING** [1] - 1:13
**held** [1] - 26:11
**Henry** [4] - 6:8, 6:9, 10:24, 15:17
**hereby** [1] - 26:8
**herein** [2] - 20:19, 25:2
**hereto** [1] - 25:1
**hogged** [1] - 14:12
**holds** [1] - 21:8
**HOME** [1] - 1:8
**Home** [2] - 3:18, 3:20
**Honor** [42] - 3:7, 3:11, 3:14, 3:17, 3:24, 4:10, 4:20, 5:2, 5:3, 5:7, 5:10, 6:21, 10:1, 10:10, 13:19, 13:23, 14:18, 14:22, 15:3, 15:18, 15:21, 16:3, 16:14, 16:24, 17:4, 17:18, 18:4, 18:21, 19:8, 19:10, 20:4, 22:8, 22:16, 23:13, 23:17, 24:2, 24:10, 24:11, 24:20, 25:9, 25:10
**Honor's** [1] - 5:5
**HONORABLE** [1] - 1:3
**hopefully** [1] - 25:7
**HOURIGAN** [4] - 1:22, 26:6, 26:19, 26:20
**house** [1] - 3:20
**HOWARD** [1] - 2:8
**Howard** [1] - 3:7

**hypo** [1] - 19:20

## I

**identified** [1] - 4:21
**idiots** [1] - 15:1
**imagine** [2] - 15:4, 19:19
**important** [2] - 11:23, 13:17
**importantly** [1] - 20:15
**improvement** [1] - 15:6
**in-house** [1] - 3:20
**Inc** [1] - 3:18
**include** [1] - 12:5
**included** [1] - 23:15
**incorporate** [2] - 16:9, 19:7
**incorporated** [4] - 16:23, 20:19, 22:17, 25:2
**incorporating** [1] - 22:19
**incorporation** [1] - 22:19
**indication** [2] - 9:3, 14:3
**individual** [1] - 7:11
**induced** [1] - 23:21
**infer** [2] - 15:23, 16:10
**information** [1] - 24:24
**injunction** [1] - 22:15
**injunctions** [1] - 21:2
**injunctive** [3] - 20:25, 22:5, 22:7
**insofar** [2] - 15:9, 23:2
**instance** [1] - 11:15
**insult** [1] - 9:8
**interesting** [1] - 17:16
**interpretation** [1] - 17:25
**ISER** [1] - 2:7
**issue** [42] - 4:16, 4:20, 4:22, 4:24, 5:6, 6:5, 6:12, 6:19, 6:20, 6:22, 6:23, 6:25, 7:12, 7:19, 8:14, 9:24, 10:5, 10:11, 11:12, 11:13, 11:16, 11:17, 13:17, 13:22, 13:24, 13:25, 14:4, 14:13, 14:21, 17:22, 17:23, 18:22, 21:20, 22:7, 22:23, 22:24, 23:2, 24:1,

24:4, 24:13
**Issue** [1] - 17:9
**issued** [1] - 4:2
**issues** [4] - 5:20, 5:21, 8:8, 18:9
**itself** [7] - 8:9, 8:13, 8:15, 11:3, 23:3, 24:22, 24:23

## J

**Jackson** [2] - 3:9, 7:4
**JAMS** [1] - 11:8
**job** [1] - 14:15
**Jonathan** [1] - 3:11
**JONATHAN** [1] - 2:8
**jsteinsapir@ kwikalaw.com** [1] - 2:10
**JUDGE** [1] - 1:3
**judges** [1] - 10:4
**judicial** [2] - 15:1, 26:13
**jurisdiction** [2] - 8:7, 17:2
**Justice** [1] - 21:9

## K

**kind** [5] - 5:22, 12:7, 12:8, 16:1, 23:9
**KINSSELLA** [1] - 2:7
**KUMP** [1] - 2:7

## L

**laid** [1] - 19:2
**Lamps** [3] - 15:20, 15:21, 18:21
**language** [4] - 8:15, 11:6, 16:6, 19:1
**last** [1] - 15:13
**Law** [4] - 2:5, 2:9, 2:14, 2:17
**law** [4] - 4:5, 9:18, 18:24, 18:25, 19:5, 19:12
**lawyers** [1] - 7:14
**least** [2] - 10:3, 17:9
**light** [1] - 15:13
**likely** [1] - 21:1
**lips** [1] - 24:18
**litigation** [1] - 3:20
**LLP** [3] - 2:4, 2:7, 2:13
**logic** [1] - 15:4
**look** [5] - 5:5, 8:12, 13:3, 19:25, 24:6
**looking** [2] - 16:18,

19:5
**looks** [1] - 4:16
**LOS** [4] - 1:14, 1:24, 3:1, 26:3
**Los** [3] - 2:6, 2:15, 2:18
**lose** [3] - 9:1, 9:4, 9:11
**loser** [2] - 9:5, 9:10

## M

**majority** [1] - 10:3
**maker** [4] - 17:10, 18:2, 19:11, 23:6
**margins** [1] - 19:8
**matter** [3] - 12:1, 17:24, 26:12
**matters** [1] - 4:2
**MAY** [2] - 1:13, 3:1
**mean** [4] - 9:1, 13:5, 19:8, 22:16
**means** [1] - 12:5
**mere** [2] - 15:6, 17:22
**merits** [2] - 6:9, 20:2
**message** [1] - 6:23
**Michael** [2] - 3:9, 7:3
**might** [3] - 4:17, 14:20, 24:3
**million** [2] - 9:7, 9:11
**mind** [4] - 12:7, 13:11, 15:21, 23:17
**minimum** [2] - 18:17, 22:22
**mistakable** [1] - 12:1
**money** [2] - 7:4, 7:11
**Monica** [1] - 2:10
**morning** [4] - 3:7, 3:11, 3:14, 3:17
**most** [2] - 18:20, 21:1
**MOTION** [1] - 1:13
**motion** [7] - 3:25, 4:1, 4:10, 5:23, 5:25, 6:3, 19:20
**move** [2] - 6:21, 24:19
**MR** [40] - 3:7, 3:11, 3:14, 3:17, 4:4, 4:10, 4:13, 4:15, 5:15, 6:1, 6:18, 7:9, 8:1, 9:12, 9:20, 9:23, 9:25, 11:7, 11:10, 12:8, 13:1, 13:19, 14:9, 14:13, 14:16, 14:18, 15:3, 15:18, 17:4, 20:10, 21:24, 22:8, 22:13, 23:5, 24:2, 24:9, 24:11, 24:20, 25:9,

25:10
**MS** [1] - 3:24
**multi** [1] - 7:3
**multi-billion** [1] - 7:3
**MYERS** [1] - 2:16

## N

**nation** [1] - 10:4
**necessarily** [2] - 11:20, 22:2
**need** [4] - 12:3, 13:20, 14:1, 21:1
**new** [2] - 10:15, 14:7
**next** [1] - 24:23
**nice** [1] - 3:22
**Ninth** [5] - 5:1, 7:16, 13:12, 13:20, 18:22
**NO** [2] - 1:22, 26:20
**non** [1] - 16:21
**nondisparagement** [1] - 22:20
**none** [1] - 8:24
**noteworthy** [1] - 10:3
**nothing** [3] - 17:19, 22:14, 22:18
**notice** [2] - 10:13, 10:19

## O

**O'MELVENY** [1] - 2:16
**obviously** [3] - 9:5, 14:5, 14:24
**OF** [6] - 1:2, 1:12, 2:1, 26:1, 26:3, 26:4
**Office** [2] - 3:18, 3:20
**OFFICE** [1] - 1:8
**officers** [1] - 15:1
**Official** [2] - 26:6, 26:20
**OFFICIAL** [2] - 1:23, 26:1
**once** [3] - 13:21, 19:18, 23:5
**one** [14] - 5:12, 5:17, 5:19, 7:10, 10:6, 12:17, 12:22, 16:14, 19:22, 21:17, 22:12, 23:7, 24:24, 25:8
**oOo** [1] - 3:3
**opening** [1] - 23:11
**opposite** [2] - 18:15, 21:13
**opposition** [1] - 5:10
**opt** [1] - 10:7
**OPTIMUM** [1] - 1:5
**Optimum** [2] - 3:5,

3:8
**Options** [1] - 21:7
**organization** [1] - 10:15
**otherwise** [1] - 19:15
**outside** [1] - 22:3
**overall** [2] - 23:11, 23:15
**overrides** [1] - 17:14
**overwhelming** [1] - 10:3
**own** [1] - 6:8

## P

**page** [3] - 24:22, 24:23, 26:12
**paper** [1] - 24:18
**papers** [2] - 5:10, 16:15
**paragraph** [2] - 17:1, 24:24
**part** [2] - 20:13, 20:16
**Part** [1] - 17:6
**particularly** [1] - 16:10
**parties** [15] - 3:15, 7:1, 7:13, 8:7, 8:13, 8:18, 9:2, 9:21, 11:21, 11:24, 12:9, 14:3, 15:24, 18:12, 22:3
**party** [2] - 9:7, 10:6
**passed** [1] - 7:7
**passes** [1] - 24:18
**past** [1] - 17:18
**pay** [1] - 9:5
**people** [2] - 13:6, 15:14
**perfectly** [1] - 13:12
**performer** [1] - 7:5
**perhaps** [3] - 8:22, 15:20, 17:16
**person** [1] - 13:16
**persuasive** [1] - 8:3
**petition** [1] - 6:3
**petitioners** [1] - 3:12
**PETRECELLI** [1] - 24:9
**Petrocelli** [3] - 3:18, 21:6, 21:14
**PETROCELLI** [13] - 2:13, 2:17, 3:17, 14:13, 14:18, 15:3, 15:18, 17:4, 21:24, 22:8, 22:13, 23:5, 24:2
**Phase** [1] - 21:20
**phrase** [1] - 16:5
**phrased** [1] - 23:4

**Plaintiff** [1] - 1:6
**plaintiff** [4] - 3:12, 6:11, 19:20, 24:6
**PLAINTIFF** [1] - 2:3
**Plus** [3] - 15:20, 15:21, 18:21
**point** [8] - 5:14, 6:12, 7:13, 8:19, 10:1, 11:19, 21:25, 22:23
**pointed** [1] - 17:18
**points** [1] - 21:23
**positive** [2] - 21:16, 21:19
**possible** [2] - 7:15, 12:2
**precedent** [3] - 5:7, 7:16, 15:14
**precise** [3] - 16:6, 22:14, 24:11
**precisely** [1] - 16:3
**prefer** [1] - 24:6
**prepared** [1] - 13:24
**preposterous** [1] - 8:23
**presence** [1] - 18:15
**preserve** [1] - 7:11
**presume** [1] - 4:2
**pretty** [1] - 15:10
**prevailing** [1] - 9:6
**principle** [2] - 17:13, 19:3
**pro** [1] - 15:10
**pro-arbitration** [1] - 15:10
**problem** [6] - 5:11, 8:3, 12:16, 12:23, 13:3, 15:17
**procedural** [5] - 11:16, 12:20, 12:21, 15:6, 17:22
**proceedings** [2] - 25:12, 26:11
**PRODUCTIONS** [1] - 1:5
**Productions** [2] - 3:6, 3:8
**prominently** [1] - 23:10
**pronouncement** [1] - 18:20
**proposition** [1] - 19:9
**provision** [17] - 16:25, 17:1, 17:7, 17:8, 17:15, 17:20, 18:16, 20:6, 20:21, 20:22, 20:24, 23:8, 23:14, 23:20, 23:21, 25:1
**provisions** [5] -

17:11, 20:18, 22:1, 22:18, 25:3
**pure** [1] - 17:25
**purely** [2] - 12:20, 12:21
**purport** [1] - 9:13
**purposes** [2] - 17:9, 24:20
**pursuant** [1] - 26:9
**put** [3] - 7:24, 23:10, 24:5

## Q

**questions** [2] - 15:25, 16:1
**quote** [2] - 17:3, 17:4

## R

**raise** [1] - 24:12
**raised** [1] - 21:23
**raising** [2] - 5:20, 5:21
**rather** [1] - 18:7
**reach** [1] - 20:4
**reached** [1] - 11:5
**read** [4] - 5:10, 22:16, 24:15
**really** [4] - 8:11, 13:7, 19:5, 19:17
**Realtime** [1] - 26:6
**reason** [3] - 8:22, 8:25, 14:24
**reasons** [1] - 7:10
**rebriefing** [1] - 24:4
**recent** [3] - 10:23, 18:5, 18:20
**recently** [2] - 8:5, 15:19
**recognize** [1] - 22:5
**recognizes** [1] - 5:2
**recommend** [1] - 21:2
**record** [4] - 17:17, 20:11, 24:21
**reference** [6] - 8:18, 16:23, 20:20, 21:18, 22:1, 25:2
**references** [1] - 22:12
**referring** [3] - 15:25, 18:6, 21:6
**refine** [1] - 24:10
**refusal** [1] - 15:23
**refused** [1] - 15:21
**regulations** [1] - 26:13
**relevance** [1] - 20:3
**relied** [1] - 18:24

**relief** [3] - 20:25, 22:5, 22:7
**remand** [2] - 4:1, 4:11
**remanded** [1] - 11:1
**remedy** [1] - 22:5
**remember** [1] - 23:4
**rent** [1] - 11:12
**repeal** [1] - 9:13
**repeating** [1] - 14:18
**reported** [1] - 26:11
**Reporter** [2] - 26:7, 26:20
**REPORTER** [2] - 1:23, 26:1
**REPORTER'S** [1] - 1:12
**represented** [1] - 7:14
**require** [1] - 9:16
**requirement** [3] - 11:21, 11:22, 12:20
**requires** [1] - 11:21
**resist** [1] - 14:16
**resolve** [1] - 15:25
**resolved** [1] - 17:13
**respect** [2] - 19:13, 20:22
**response** [1] - 21:22
**responsibility** [1] - 19:25
**ROOM** [1] - 1:23
**round** [2] - 23:6, 23:7
**rule** [5] - 9:13, 10:20, 13:9, 21:11, 21:13
**Rule** [2] - 7:19, 10:7
**ruled** [1] - 14:2
**Rules** [1] - 7:18
**rules** [16] - 7:20, 8:20, 8:21, 10:11, 10:13, 10:14, 10:18, 10:21, 11:2, 11:7, 11:11, 12:10, 12:11, 12:12, 12:20, 12:21
**rvoureoua@ gibsondunn.com** [1] - 2:15

## S

**Santa** [1] - 2:10
**Schein** [5] - 6:8, 6:9, 10:24, 15:17, 18:4
**Second** [1] - 10:4
**second** [2] - 13:21, 22:23
**secondly** [2] - 21:4, 22:17
**Section** [2] - 18:3, 26:9

see [2] - 10:9, 19:25
send [1] - 14:3
sense [3] - 19:6, 19:7, 24:4
sent [2] - 11:4, 11:10
sentence [3] - 16:20, 16:21, 22:20
service [1] - 10:12
set [2] - 20:18, 25:1
several [2] - 15:19, 16:12
shall [2] - 20:18, 24:25
shown [1] - 12:21
side [2] - 7:12, 14:12
sides [3] - 4:3, 14:5, 14:21
silence [6] - 8:10, 16:2, 16:5, 16:11, 18:17, 18:18
simply [5] - 8:19, 11:10, 13:17, 14:7, 22:4
single [4] - 5:17, 5:19, 24:13
sit [1] - 14:14
situation [3] - 11:24, 19:19, 22:4
skip [1] - 5:3
SLAP [3] - 5:23, 5:24, 6:2
sole [3] - 5:13, 5:15, 16:25
someone [1] - 23:18
sometimes [1] - 13:5
somewhat [1] - 8:2
sophisticated [6] - 7:1, 7:13, 7:14, 9:21, 10:6, 12:9
sort [2] - 12:6, 13:9
sought [1] - 22:6
South [1] - 2:14
specific [3] - 9:12, 17:13, 17:14
specifically [1] - 8:19
spend [1] - 7:11
spills [1] - 20:2
split [2] - 4:25, 14:11
Stars [2] - 2:5, 2:18
start [2] - 14:17, 18:9
started [1] - 19:1
state [1] - 4:18
STATE [1] - 26:4
statement [2] - 22:19, 22:20
states [1] - 8:25
States [3] - 26:7, 26:9, 26:14

STATES [1] - 1:1
STEINSAPIR [3] - 2:8, 3:11, 24:20
Steinsapir [1] - 3:12
Steinsapir's [1] - 16:18
stenographically [1] - 26:11
step [2] - 7:16, 11:23
Stephanie [1] - 3:19
stick [1] - 24:3
stop [2] - 24:7, 24:17
STREET [1] - 1:23
Street [4] - 16:7, 16:8, 19:1, 20:12
subject [2] - 20:20, 23:24
submit [3] - 4:13, 14:22, 21:21
substantive [2] - 21:4, 23:21
sufficiently [1] - 14:6
suggest [3] - 17:5, 18:19, 24:2
suggests [1] - 17:21
Suite [1] - 2:5
suppose [1] - 13:10
supposed [1] - 8:17
Supreme [21] - 5:1, 5:7, 8:5, 10:23, 11:1, 11:4, 11:5, 11:11, 11:18, 12:17, 13:13, 13:20, 15:9, 15:12, 15:14, 15:20, 16:12, 18:5, 18:20, 19:2, 19:12
swing [1] - 15:8

**T**

tackling [1] - 19:17
TAITELMAN [1] - 2:4
talks [1] - 8:16
ten [2] - 16:8, 16:11
tentative [7] - 4:2, 4:13, 5:5, 6:22, 14:3, 14:19, 24:3
TERRI [4] - 1:22, 26:6, 26:19, 26:20
THE [39] - 2:3, 2:12, 3:5, 3:10, 3:13, 3:16, 3:22, 3:25, 4:7, 4:12, 4:14, 5:11, 5:20, 6:11, 7:7, 7:24, 8:2, 9:19, 9:21, 9:24, 10:23, 11:9, 11:17, 12:16, 13:3, 14:2, 14:10, 14:25, 15:7, 17:3, 20:8, 21:22, 21:25, 22:12, 23:1, 23:24,

24:5, 24:17, 25:6
Theodore [1] - 3:19
therefore [2] - 7:22, 13:10
three [1] - 19:23
threshold [3] - 17:24, 19:24, 20:3
throes [1] - 18:18
throw [1] - 9:7
THURSDAY [2] - 1:13, 3:1
Title [1] - 26:9
titled [1] - 25:4
together [1] - 3:18
tomorrow [1] - 25:8
took [2] - 7:16, 11:13
transcript [2] - 26:10, 26:12
TRANSCRIPT [1] - 1:12
tricky [1] - 4:24
Triple [26] - 7:18, 7:20, 7:23, 8:20, 8:21, 8:23, 9:4, 9:8, 9:11, 9:13, 10:12, 10:13, 10:15, 10:16, 10:17, 10:22, 10:25, 11:2, 11:7, 11:24, 12:1, 12:2, 12:10, 12:12
true [2] - 23:13, 26:10
trying [1] - 23:18
turn [1] - 4:20
two [9] - 7:1, 7:13, 9:12, 15:14, 17:10, 21:23, 22:10, 23:7, 23:16
type [1] - 9:9
types [2] - 12:17, 12:19

**U**

U.S [2] - 1:3, 15:19
unanimous [2] - 8:6, 21:9
under [5] - 4:23, 5:7, 7:16, 19:11, 19:12
understood [3] - 20:17, 21:24, 24:25
UNITED [1] - 1:1
United [3] - 26:7, 26:9, 26:14
unlawful [1] - 9:15
unless [4] - 6:16, 14:14, 18:11, 21:15
unmistakable [20] - 8:9, 8:15, 11:3, 11:22, 12:3, 12:4, 12:18, 12:22, 12:24, 13:8,

13:11, 13:14, 16:9, 18:12, 19:4, 20:6, 21:8, 21:11, 22:25, 23:2
unmistakably [7] - 7:22, 9:2, 10:10, 10:21, 12:12, 12:14, 13:16
unpublished [1] - 10:5
up [2] - 13:6, 14:11
usorious [1] - 23:20

**V**

valid [5] - 18:7, 18:8, 19:15, 19:18, 20:5
validity [3] - 5:8, 5:18, 19:13
versus [2] - 3:6, 11:24
violate [1] - 9:14
violated [1] - 16:21
vs [1] - 1:7

**W**

waive [3] - 9:19, 9:22, 19:10
waived [1] - 24:13
wants [1] - 8:22
weeks [3] - 15:19, 16:12, 18:20
weird [1] - 5:23
WEITZMAN [3] - 2:7, 2:8, 3:7
Weitzman [1] - 3:8
WEST [1] - 1:23
WESTERN [1] - 1:2
whole [2] - 5:8, 18:25
willing [3] - 13:12, 13:18, 15:15
Wilshire [1] - 2:9
win [1] - 9:1
winner [1] - 18:19
words [2] - 7:7, 8:10
world [1] - 7:5
worth [2] - 7:4, 7:8
written [1] - 8:24
wrote [1] - 14:19
WU [1] - 1:3

**Y**

year [1] - 8:6
years [3] - 16:8, 16:11, 19:23

**UNITED STATES DISTRICT COURT**