KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (SBN 38723)
  hweitzman@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Zachary T. Elsea (SBN 279252)
  zelsea@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

FREEDMAN + TAITELMAN LLP
Bryan J. Freedman (SBN 151990)
  bfreedman@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: 310.201.0005
Facsimile: 310.201.0045

Attorneys for Petitioners/Plaintiffs
Optimum Productions and for the Co-
Executors of the Estate of Michael J.
Jackson

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPTIMUM PRODUCTIONS, a California corporation; and JOHN BRANCA and JOHN MCCLAIN, in the respective capacities as CO-EXECUTORS OF THE ESTATE OF MICHAEL J. JACKSON, <br><br> Petitioners, <br><br> vs. <br><br> HOME BOX OFFICE, a Division of TIME WARNER ENTERTAINMENT, L.P., a Delaware Limited Partnership, and HOME BOX OFFICE, INC., a Delaware corporation, and DOES 1 through 5, business entities unknown, and DOES 6 through 10, individuals unknown, <br><br> Respondents. | Case No. 2:19-cv-01862 GW(PJWx) <br><br> **THE JACKSON ESTATE'S OPPOSITION TO HBO's ANTI-SLAPP MOTION AND FURTHER REQUEST TO COMPEL ARBITRATION FORTHWITH** <br><br> Filed Concurrently With Request for Judicial Notice and Declarations of Howard Weitzman and Jonathan Noyes <br><br> Judge: Hon. George H. Wu <br><br> Date:  September 19, 2019 <br> Time:  8:30 a.m. <br> Ctrm:  9D |

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.    INTRODUCTION .................................................................................. 1

II.   THE ANTI-SLAPP STATUTE DOES NOT APPLY HERE ........................ 3

    A.    Plaintiffs' Petition Is Governed by the Federal Arbitration Act; and the California Anti-SLAPP Statute Is Inapplicable in Federal Court to Claims Based on Federal Law .................................................... 3

    B.    The FAA Preempts the Anti-SLAPP Statute in Cases Seeking an Order to Compel Arbitration Under the FAA ...................................... 6

    C.    Even Setting Aside the FAA, California Law Provides that the Anti-SLAPP Statute Does Not Apply to Petitions To Compel Arbitration ............................................................................................ 10

III.  HBO'S MOTION FAILS ON THE "MERITS" .......................................... 12

    A.    HBO's Refusal To Submit To Arbitration Is Not A Constitutionally Protected Activity .................................................... 12

    B.    The Jackson Estate Is Likely To Prevail On Its Motion To Compel Arbitration ............................................................................. 18

IV.   CONCLUSION ..................................................................................... 20

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*AT& T Technologies, Inc. v. Communications Workers*
475 U.S. 643 (1986) ................................................................. 10

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ....................................................... 2, 8, 15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
475 U.S. 643 (1986) ................................................................. 18

*Batzel v. Smith*
333 F.3d 1018 (9th Cir. 2003) .................................................. 7

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006) ....................................................... 7, 8, 13

*Bulletin Displays, LLC v. Regency Outdoor Advertising*
448 F.Supp.2d 1172 (C.D. Cal. 2006) .................................. 5, 6

*Carbone v. Cable News Network, Inc.*
910 F.3d 1345 (11th Cir. 2018) ............................................... 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) ............................................... 14

*Cox v. Ocean View Hotel Corp.*
533 F.3d 1114 (9th Cir. 2008) ............................................ 1, 3

*CPR for Skid Row v. City of Los Angeles*
779 F.3d 1098 (9th Cir.2015) ............................................ 2, 12

*Daugherty v. Experian Info. Solutions, Inc.*
847 F. Supp. 2d 1189 (N.D. Cal. 2012) ................................ 14

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) ....................................................... 1, 4, 9

*Doctor's Assocs., Inc. v. Casarotto*
517 U.S. 681 (1996) ................................................................. 7

*Doe v. Gangland Prods., Inc.*
730 F.3d 946 (9th Cir. 2013) ................................................ 1, 5

*eDrop-Off Chicago LLC v. Burke*
No. CV 12-4095 GW, 2013 WL 12131186 (C.D. Cal. Aug. 9, 2013) ........... 17

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*
63 F.Supp.2d 1127 (N.D. Cal. 1999) ...................................... 5

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Hilton v. Hallmark Cards*
    599 F.3d 894 (9th Cir. 2010) ........................................................................ 4, 5, 6

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................................................ 17

*In re Bah*
    321 B.R. 41 (B.A.P. 9th Cir. 2005) ................................................................... 5

*Macias v. Excel Bldg. Servs. LLC*
    767 F.Supp.2d 1002 (N.D. Cal. 2011) ............................................................ 14

*Makaeff v. Trump University, LLC*
    736 F.3d 1180 (9th Cir.2013) ............................................................................. 5

*Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*
    348 F.2d 693 (2d Cir. 1965) ............................................................................... 3

*Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*
    711 F.3d 1136 (9th Cir. 2013) ........................................................................... 9

*Perry v. Thomas*
    482 U.S. 483 (1987) .................................................................................... passim

*Planned Parenthood v. Center for Medical Progress*
    735 Fed. Appx. 241 (9th Cir. 2018) .................................................................. 5

*Preston v. Ferrer*
    552 U.S. 346 (2008) ................................................................................ 1, 2, 7, 8

*Rhodes v. Turner*
    No. CV 17-3632-GW, 2018 WL 6016165 (C.D. Cal. 2018) ............................ 5

*Roberts v. AT&T Mobility LLC*
    877 F.3d 833 (9th Cir. 2017) ........................................................................... 15

*Southland Corp. v. Keating*
    465 U.S. 1 (1984) ............................................................................................... 8

*Travelers Cas. Ins. Co. of Am. v. Hirsh*
    831 F.3d 1179 (9th Cir. 2016) ........................................................................... 5

*United States v. Rodriguez*
    100 F.Supp.3d 905 (C.D. Cal. 2015) ................................................................. 2

*Verizon Delaware, Inc. v. Covad Commc'ns Co.*
    377 F.3d 1081 (9th Cir. 2004) ......................................................................... 17

**STATE CASES**

*A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*
    137 Cal.App.4th 1118 (2006) .......................................................................... 17

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Century 21 Chamberlain & Assocs. v. Haberman*
  173 Cal.App.4th 1 (2009)..........................................................................passim

*City of Cotati v. Cashman*
  29 Cal. 4th 69 (2002)...........................................................................................12

*Sahlolbei v. Montgomery*
  No. E047099, 2010 WL 197298 (Cal. Ct. App. Jan. 21, 2010)...............passim

*Sheppard v. Lightpost Museum Fund*
  146 Cal. App. 4th 315 (2006).............................................................................11

*Spear v. California State Auto. Assn.*
  2 Cal. 4th 1035, 1040 (1992)..............................................................................12

*Thomas v. Quintero*
  126 Cal. App. 4th 635 (2005)..............................................................................13

*Wagner Constr. Co. v. Pac. Mech. Corp.*
  41 Cal.4th 19 (2007)..............................................................................................3


## **STATUTES**

9 U.S.C. § 1.............................................................................................................1, 4

9 U.S.C. § 2.......................................................................................................4, 6, 9

Cal. Code Civ. Proc. § 425.16 .............................................................................7

Cal. Lab. Code §1700 .........................................................................................1, 7


## **RULES**

Fed. R. Civ. P. 12...................................................................................................5

Fed. R. Civ. P. 15...................................................................................................5

Fed. R. Civ. P. 26...................................................................................................5

Fed. R. Civ. P. 56...................................................................................................5

Fed. R. Civ. P. 8....................................................................................................5

THE JACKSON ESTATE'S OPPOSITION TO HBO'S ANTI-SLAPP MOTION

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

# I.     INTRODUCTION

HBO's anti-SLAPP motion is without merit. First, the *only* relief sought in this Court is an order compelling arbitration. The only "claim for relief" is therefore a request for specific performance of the parties' arbitration agreement. *Cox v. Ocean View Hotel Corp*., 533 F.3d 1114, 1125 (9th Cir. 2008). Whether Petitioners are entitled to that relief turns exclusively on an issue of *federal* law under the *Federal* Arbitration Act ("FAA"). 9 U.S.C. §§ 1, et. seq.; Dkt. 40, pp. 2-10 of 10. [1] California's anti-SLAPP statute does not apply in federal court to claims based on federal law. *Doe v. Gangland Prods., Inc*., 730 F.3d 946, 955 n.3 (9th Cir. 2013). That should be the beginning and end of the analysis here.

Second, even if the Ninth Circuit had not already held that anti-SLAPP motions are inapplicable to claims based on federal law, decades of Supreme Court precedent also makes clear that California cannot create "procedural or substantive" obstacles to enforcement of arbitration agreements governed by the FAA. *See, e.g., Preston v. Ferrer*, 552 U.S. 346, 354-56 (2008) (California law providing that Labor Commissioner must first exercise her "exclusive jurisdiction" to determine whether a contract is invalid under the California Talent Agencies Act, Cal. Lab. Code §§ 1700, et seq., before a claim arising under such a contract can be arbitrated is void as preempted by the FAA). As this Court explained in connection with the motion to compel arbitration, "[b]y its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dkt. 40, pp. 2-3 of 10, quoting *Dean Witter Reynolds,*

---

[1] We use the same naming convention as in the motion to compel arbitration: "HBO" refers to Respondent/Defendant Home Box Office, Inc.; "the Jackson Estate" refers collectively to Petitioners/Plaintiffs Optimum Productions and the Co-Executors of the Estate of Michael J. Jackson; and "the Agreement" refers to the 1992 agreement at issue, Steinsapir Decl., Ex. B (Dkt. 18, pp. 25-40 of 42).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   *Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). A state statute cannot

2   withdraw this "mandate" of federal law.

3   Third, even setting aside federal preemption issues, California law itself is

4   clear that that "a demand commencing private contractual arbitration does not 'fit[ ]'

5   any of the four anti-SLAPP categories" and, thus, does not give rise to an anti-

6   SLAPP motion. *Century 21 Chamberlain & Assocs. v. Haberman*, 173 Cal.App.4th

7   1, 8 (2009). Parties have a "right to a judicial determination on arbitrability" and

8   courts cannot "strike their means for obtaining that determination before

9   arbitration." *Id.* at 10. In other words, there is "no authority [for] applying the anti-

10   SLAPP statute to a petition to compel arbitration." *Sahlolbei v. Montgomery*, No.

11   E047099, 2010 WL 197298, at *2 (Cal. Ct. App. Jan. 21, 2010).[2]

12   HBO cannot be surprised that these issues are front-and-center in this brief.

13   At the July 15, 2019 hearing, the Court and counsel for Petitioners engaged in a

14   detailed discussion of whether an anti-SLAPP motion could be applied to petitions

15   governed by the FAA. Dkt. 46-2, Ex. B (Tr. of July 15 Hearing), pp. 70-80 of 88.

16   Even though the issue had not even been briefed, Petitioners' counsel cited specific

17   authority from the Supreme Court that the FAA preempts California public policy

18   that stands in its way. *Id.*, pp. 71, 74-75 of 88 (discussing *AT&T v. Concepcion*

19   discussed below at § II.B). At the hearing, HBO's only "response" to this discussion

20   was that it would "save [its] response to that for an anti-SLAPP motion." *Id.*, p. 80

21   of 88. HBO then ignored the issue altogether in its motion.

22   Finally, even if the Court were to reach the "merits" of HBO's motion, such

23   as they are, the Court would still be required to deny the motion. The only relief

24

25   [2] As HBO implicitly recognized in its brief opposing the motion to compel

26   arbitration, Dkt. 22, p. 17 of 28, ll. 17-21, "unpublished opinions of the California
    Court of Appeal may be considered [by federal courts] as persuasive authority."

27   *United States v. Rodriguez*, 100 F.Supp.3d 905, 922 n. 12 (C.D. Cal. 2015), citing
    *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098, 1117 (9th Cir.2015).

28

1  requested from this Court is an order to compel arbitration. "Therefore, [the Jackson

2  Estate's only] 'cause of action' is the demand for arbitration." *Sahlolbei*, 2010 WL

3  197298, at *4. That cause of action arises out of HBO's refusal to arbitrate.

4  Breaching an agreement by refusing to arbitrate is not constitutionally protected

5  activity. *Century 21*, 173 Cal.App.4th at 8. And even if it were, the Jackson Estate

6  has shown a probability of success on that claim, as the Court explained in detail in

7  its tentative order (where it definitively rejected all of HBO's arguments against

8  arbitration). Dkt. 40, pp. 2-9 of 10.

9      If the Jackson Estate's claims to be arbitrated are as frivolous as HBO would

10 have the Court believe, it should have no reason for concern. Petitioners respectfully

11 request that HBO's anti-SLAPP motion be denied, and that this Court's tentative

12 ruling respecting the motion to compel arbitration be made final and that arbitration

13 be compelled forthwith.

14 **II.      THE ANTI-SLAPP STATUTE DOES NOT APPLY HERE**

15     **A.      Plaintiffs' Petition Is Governed by the Federal Arbitration Act;**

16         **and the California Anti-SLAPP Statute Is Inapplicable in Federal**

17         **Court to Claims Based on Federal Law**

18     "An action to compel arbitration is in essence a suit in equity to compel

19 specific performance of a contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114,

20 1125 (9th Cir. 2008), quoting *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal.4th

21 19, 29 (2007). *See also Necchi S.p.A. v. Necchi Sewing Mach. Sales Corp.*, 348 F.2d

22 693, 696 (2d Cir. 1965) (T. Marshall, J.) ("An order under the Federal Arbitration

23 Act compelling a party to arbitrate is simply an order granting specific performance

24 of an arbitration provision").

25     Whether to grant specific performance of the arbitration agreement here—the

26 *only* relief sought in this Court—depends on a question of *federal* law: whether the

27 parties' dispute is arbitrable under the *Federal* Arbitration Act ("FAA"). *See, e.g.*,

28 Dkt. 18, p. 2 of 42 (moving to compel arbitration "pursuant to the Federal

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

3

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Arbitration Act, 9 U.S.C. § 1, et seq."). *See also* Request for Judicial Notice

2   ("RJN"), Ex. A, pp. 4:23-24, 5:4-13 (relying on the FAA as authority for requested

3   order to compel arbitration in state court motion filed the day before this case was

4   removed to this Court). [3]

5          "Section 2 [of the FAA] is a congressional declaration of a liberal federal

6   policy favoring arbitration agreements, notwithstanding *any* state substantive or

7   procedural policies to the contrary. The effect of the section is to create a body of

8   *federal* substantive law of arbitrability, applicable to any arbitration agreement

9   within the coverage of the Act." *Perry v. Thomas*, 482 U.S. 483, 489 (1987)

10  (emphasis added). If the dispute falls within the scope of a valid arbitration

11  agreement—as this Court has already (tentatively) held, *see* Dkt. 40, pp. 4-5 of 10—

12  the *federal* substantive law of arbitrability "leaves no room for the exercise of

13  discretion by a district court, but instead mandates that district courts *shall* direct the

14  parties to proceed to arbitration on issues as to which an arbitration agreement has

15  been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

16  (emphasis in original).

17         Because the claim here rests on federal law, the anti-SLAPP statute is

18  inapplicable. A "federal court can only entertain anti-SLAPP special motions to

19  strike in connection with state law claims." *Hilton v. Hallmark Cards*, 599 F.3d 894,

20  901 (9th Cir. 2010). As noted above, the *only* relief to which the Jackson Estate

21  asserts a claim is an order compelling arbitration. That claim for relief is based on

22  _____

23         [3] The arbitration agreement here is part of "a contract evidencing a transaction

24  involving commerce," 9 U.S.C. § 2, and is thus within the scope of the FAA. The
    contract is between a California corporation (TTC Touring, which has since been

25  merged into Petitioner Optimum Productions, *see* Dkt. 18, p. 12 of 42 ¶ 7) and a
    New York company (HBO) relating to the first United States television broadcast of

26  a Michael Jackson concert, which took place in Bucharest, Hungary. This fits easily
    within "the pre-emptive effect of the Federal Arbitration Act, a statute that embodies

27  Congress' intent to provide for the enforcement of arbitration agreements within the
    full reach of the Commerce Clause." *Perry*, 482 U.S. at 491.

28

the FAA, a *federal* statute.

The Ninth Circuit has *repeatedly* held that California's anti-SLAPP statute does not apply to claims based on federal law. *See, e.g., Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3 (9th Cir. 2013) ("the anti-SLAPP statute does not apply to federal law causes of action"), quoting *Hilton*, 599 F.3d at 901; *Planned Parenthood v. Center for Medical Progress*, 735 Fed. Appx. 241, 247 (9th Cir. 2018) ("We stress that a defendant cannot use an anti-SLAPP motion to strike federal causes of action."). *See also Rhodes v. Turner*, No. CV 17-3632-GW, 2018 WL 6016165, at *1 (C.D. Cal. 2018) (Wu, J.) ("[A]n anti-SLAPP motion does not lie against a federal cause of action in federal court."); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F.Supp.2d 1127, 1130 (N.D. Cal. 1999) ("the anti-SLAPP statute is not applicable to the federal claims asserted"); *In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("the anti-SLAPP statute may not be applied to matters involving federal questions"). [4]

As the district court explained in *Bulletin Displays, LLC v. Regency Outdoor Advertising*, 448 F.Supp.2d 1172 (C.D. Cal. 2006)—the case that the Ninth Circuit

---

[4] As explained by several Judges on the Ninth Circuit and other federal courts, "an anti-SLAPP motion has no proper place in federal court" regardless of whether the claims are based on state or federal law. *Travelers Cas. Ins. Co. of Am. v. Hirsh*, 831 F.3d 1179, 1186 (9th Cir. 2016) (Gould, J., concurring) (expressing regret for joining the Ninth Circuit's opinion in *Batzel v. Smith*). *See also Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1356 (11th Cir. 2018) (discussing entrenched circuit split on issue); *Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1188 (9th Cir.2013) (Watford, J., dissenting from denial of rehearing en banc) (explaining why Ninth Circuit was wrong to conclude that anti-SLAPP statute applied at all in federal court). As anyone who has litigated anti-SLAPP motions in both the state and federal courts can advise, the Ninth Circuit's attempts to harmonize the anti-SLAPP statute with conflicting provisions of Federal Rules of Civil Procedure 8, 12, 15, 26, 56, etc., have resulted in a haphazard process that has little in common with the orderly anti-SLAPP procedure in state court designed by the California Legislature as a set of rules for *state* trial courts (consistent with the California Rules of Court, the California Code of Civil Procedure, and other applicable *California* procedure). That said, the Ninth Circuit's mistakes can only be rectified by an en banc panel of that Court, or by the Supreme Court, so we will not further dwell on the point. We raise the issue only to preserve it for any proceedings down the road (in the unlikely event that the issue would ever need to be reached).

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

relied upon in *Hilton*, 599 F.3d at 901—application of the anti-SLAPP statute to claims based on federal law in federal court "would frustrate substantive federal rights." *Bulletin Displays*, 448 F.Supp.2d at 1180. "While the anti-SLAPP statute furthers 'important, substantive state interests,' California has no interest in dictating rules of procedure or substance applicable to federal claims brought in federal court." *Id.* at 1182 (internal citations omitted).

For this reason alone, HBO's anti-SLAPP motion must be denied. Instead, the motion to compel arbitration should be granted for the reasons this Court has already explained in its tentative ruling. Dkt. 40.

## B.   The FAA Preempts the Anti-SLAPP Statute in Cases Seeking an Order to Compel Arbitration Under the FAA

Even if the Ninth Circuit had not already held that the anti-SLAPP statute is inapplicable to claims based on federal law, this California statute could not apply to a petition to compel arbitration governed by the FAA. Extensive case law from the United States Supreme Court makes clear that California, and other States, *cannot* create "substantive or procedural" obstacles to enforcing arbitration agreements governed by the FAA. *Perry*, 482 U.S. at 489.

The FAA is a duly-enacted federal law. It is therefore "the supreme law of the land" notwithstanding "anything in the Constitution or laws of any State to the contrary." U.S. Const., art. vi, cl. 2. Section 2 of the FAA is unambiguous. "A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Thus, the *only* role that State law may play in an analysis under the FAA is in providing "grounds … at law or in equity for the revocation of any contract," such as duress, fraud, or unconscionability. 9 U.S.C. § 2. Moreover, any revocation defense to arbitration grounded in State law must be specific to revocation of the

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

*arbitration provision alone*, rather than the contract as a whole. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract" and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance").

The anti-SLAPP statute does not fit within this narrow role for California law under the FAA. The anti-SLAPP statute does not render *any* contracts revocable, unlike "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Instead, the plain language of the anti-SLAPP statute creates a procedure for striking certain "causes of action" filed in courts. *See generally* Cal. Code Civ. Proc. § 425.16. As the Ninth Circuit has explained, the anti-SLAPP statute creates a qualified, "substantive immunity from suit" for certain claims arising out of petitioning and related activities within the scope of the statute. *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003).

The FAA leaves no room for States to interpose substantive or procedural obstacles to the enforcement of a valid arbitration agreement. The Supreme Court has accordingly held, time-and-again, that California and other States' laws—both statutes and judge-made common law—that purport to render certain types of causes of action unsuitable for arbitration are void as preempted by the FAA. *See, e.g., Preston*, 552 U.S. at 354-56 (California law providing that Labor Commissioner must first exercise "exclusive jurisdiction" to determine whether a contract is invalid under the California Talent Agencies Act, Cal. Lab. Code §§ 1700, et seq., before a claim arising under such a contract can be arbitrated is void as preempted by the FAA); *Buckeye*, 551 U.S. at 443, 449 (Florida rule purporting to give courts authority to decline to order arbitration of claims arising under a contract that the court deems "criminal on its face" is void as preempted by the FAA); *Perry*, 482 U.S. at 491 (California law providing that claims for unpaid wages cannot be

arbitrated, but must be litigated in a "judicial forum," is void as preempted by the FAA); *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 16 (1984) (California law requiring that claims arising under the California Franchise Investment Law cannot be arbitrated is void as preempted by the FAA). *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011) (California rule that contracts requiring claims to be arbitrated individually, and not on a class basis, are unenforceable is void as preempted by the FAA).

Just as California cannot mandate that a Labor Commissioner must first affirm the validity of a contract raising issues under California's Talent Agencies Act before an arbitration is ordered in a case governed by the FAA, *Preston*, 552 U.S. at 356, California cannot mandate that a court must first affirm that a claim does not implicate anti-SLAPP concerns before an arbitration is ordered in a case governed by the FAA. Or, stated differently, California law cannot purport to authorize a court, much less a federal court, to refuse to order arbitration under the FAA of a claim because it raises anti-SLAPP concerns any more than Florida law can permit courts to refuse to order arbitration of a claim because a judge finds that a consumer contract with an arbitration clause may be "criminal on its face." *Buckeye*, 551 U.S. at 443, 449.

Here, the parties agreed to arbitrate "[a]ny dispute arising out of, in connection with or relating to" the parties' Agreement. Dkt. 18, pp. 33-34 of 42. "When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Preston*, 552 U.S. at 359. The FAA does not permit California or any other State to create "substantive or procedural policies to the contrary." *Perry*, 482 U.S. at 489. Thus, any First Amendment challenges to the parties' contract as a whole, and the underlying claims to be arbitrated, must be adjudicated by the arbitrator and not by a Court. *Buckeye*, 551 U.S. at 445-46. The federal courts "have never recognized that an immunity *from suit* was necessary to

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᵈ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  prevent an unacceptable chill of … First Amendment rights." *Nunag-Tanedo v. E.*

2  *Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1141 (9th Cir. 2013) (emphasis original

3  but ellipses and quotation marks omitted). And the States cannot create such an

4  immunity for the federal courts to apply with respect to claims for relief based on

5  federal law.

6      As noted above in section II.A, and as this Court explained in its tentative

7  order respecting the motion to compel arbitration, "[b]y its terms, the [FAA] leaves

8  no room for the exercise of discretion by a district court, but instead mandates that

9  district courts *shall* direct the parties to proceed to arbitration on issues as to which

10  an arbitration agreement has been signed." Dkt. 40, pp. 2-3 of 10, quoting *Dean*

11  *Witter*, 470 U.S. at 213 (emphasis in original). That is all that needs to be said about

12  whether a State anti-SLAPP statute can be used to strike a petition to compel

13  arbitration governed by the FAA. The State of California cannot grant federal

14  district courts authority to decide issues of federal law in a manner contrary to

15  Congress's statutory scheme as interpreted by the Supreme Court of the United

16  States. The Supreme Court has spoken enough on these issues. The FAA requires

17  this Court to compel this matter to arbitration, once it finds that there is a valid

18  arbitration agreement encompassing the issues in dispute between the parties. *See*

19  Dkt. 40, pp. 4-9 of 10 (holding that the arbitration agreement is valid and that the

20  issues to be arbitrated fall within the scope of that agreement, and rejecting HBO's

21  arguments to the contrary). Courts have "no room for the exercise of discretion" to

22  do otherwise. *Dean Witter*, 470 U.S. at 213.

23      For all these reasons, California's anti-SLAPP statute does not apply to the

24  sole claim for relief here—a claim seeking only one form of relief, an order to

25  compel arbitration under the FAA—and this motion must be denied. Instead, the

26  Court's tentative order respecting Petitioner's motion to compel arbitration should

27  be made final and this controversy should be compelled to arbitration forthwith. 9

28  U.S.C. §§ 2, 4; Dkt. 40.

9

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

### C.   Even Setting Aside the FAA, California Law Provides that the Anti-SLAPP Statute Does Not Apply to Petitions To Compel Arbitration

As explained above, California *cannot* create "substantive or procedural policies" barring application of the Federal Arbitration Act in the manner that the Supreme Court has prescribed. *Perry*, 482 U.S. at 489. But even if it *could* do so, it would not matter because it did not do so. California law itself is clear that the anti-SLAPP does not apply to petitions to compel arbitration.

In *Century 21 Chamberlain & Assocs. v. Haberman*, 173 Cal.App.4th 1 (2009), defendant alleged that plaintiffs had negligently marketed her house and filed an arbitration demand with a realtors' association. *Id.* at 6. Plaintiffs responded by filing a civil action seeking, among other things, a declaratory judgment that no arbitration agreement existed between the parties. Defendant responded by filing an anti-SLAPP motion against the claim, which the trial court denied. *Ibid.* The Court of Appeal affirmed, holding that "a demand commencing private contractual arbitration does not 'fit[ ]' any of the four anti-SLAPP categories" and, thus, does not give rise to an anti-SLAPP motion. *Id.* at 8. Pointing to FAA cases, the Court of Appeal explained that "[g]enerally, the court must determine whether a dispute is subject to contractual arbitration, unless the parties clearly and unmistakably agree otherwise." *Id.* at 10, citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). "It would provide cold comfort to parties resisting arbitration to recognize their right to a judicial determination on arbitrability, yet strike their means for obtaining that determination before arbitration." *Century 21*, 173 Cal.App.4th at 10.

Though the relief sought by plaintiffs in *Century 21* was the mirror-image of what the Jackson Estate seeks here—a judicial determination that arbitration *is* required—the distinction is immaterial. The Court was clear in *Century 21* that its holding addressed the question of whether a demand for contractual arbitration is

THE JACKSON ESTATE'S OPPOSITION TO HBO'S ANTI-SLAPP MOTION

subject to anti-SLAPP motions. The key point the Court made was that parties have a "right to a judicial determination on arbitrability" and courts cannot "strike their means for obtaining that determination before arbitration." *Century 21*, 173 Cal.App.4th at 10. *See also Sheppard v. Lightpost Museum Fund*, 146 Cal. App. 4th 315, 324 (2006) (reversing trial court's  partial grant of anti-SLAPP motion against claims pending in an arbitration; anti-SLAPP statute does not apply to claims pending in arbitrations).

Not surprisingly, the Court of Appeal has since relied on *Century 21* to squarely hold that petitions to compel arbitration are also not subject to anti-SLAPP motions. In *Sahlolbei v. Montgomery*, No. E047099, 2010 WL 197298, at *4 (Cal. Ct. App. Jan. 21, 2010), plaintiff and defendant agreed to arbitrate any disputes arising out of a non-disparagement agreement. *Id.* at *1. Like the Jackson Estate here, plaintiff alleged that defendant breached a non-disparagement agreement and filed a petition to compel arbitration of the dispute in superior court.  *Ibid*. Like the Jackson Estate here, plaintiff's counsel wrote to defendant and demanded arbitration but defendant refused. *Id.* at *2; Weitzman Decl., ¶ 2; Dkt. 1-1, p. 19 of 54 ¶ 64, p. 21 of 54 ¶ 72. Defendant thereafter filed an anti-SLAPP motion, arguing that the alleged breaches of the non-disparagement agreement "were made in connection with official hospital proceedings." *Sahlolbei*, 2010 WL 197298, at *2. Defendant "argued that, as an elected Board member [of the hospital], his statements were protected from lawsuits, pursuant to the 'official proceedings' exception, because the statements concerned [defendant's] performance as a surgeon at Palo Verde Hospital." *Ibid*. The trial court denied the motion for several reasons, the principal one being that there was "no authority [for] applying the anti-SLAPP statute to a petition to compel arbitration." *Ibid*.

The Court of Appeal affirmed with the following straightforward reasoning:

A petition to compel arbitration is, in form, a law and motion proceeding; however, in substance, it is a suit in equity seeking specific performance of a contract that contains an arbitration clause. [Citations

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  omitted.] Therefore, [plaintiff's] "cause of action" is the demand for
2  arbitration. "A demand for commencing private, contractual arbitration
   does not fit any of the four anti-SLAPP categories." [*Century 21*, 173
3  Cal.App.4th at 7-8]. … [Plaintiff's] demand to arbitrate his dispute with
   [defendant] is neither a public issue nor an issue of public interest.
4  [Plaintiff's] breach of contract claim concerns a *confidential* settlement
   agreement, i.e ., a private contract, not a public issue. Accordingly, we
5  conclude that the anti-SLAPP statute (§ 425.16) is not applicable to
   [plaintiff's] petition to arbitrate, because the petition is not based upon
6  an act that furthers [defendant's] rights of petition or free speech.
   Therefore, the trial court did not err.

7  *Id.* at *4 (punctuation cleaned up, brackets added, and emphasis in original).

8  Because "the Court of Appeal's unpublished decision" in *Sahlolbei* "is persuasive

9  authority further illustrating the way in which California courts apply" the law in

10 this area, *CPR for Skid Row*, 779 F.3d at 1117, this Court should follow it.

11      In short, there is no conflict between the anti-SLAPP statute and the Federal

12 Arbitration Act, because the California courts hold that the anti-SLAPP statute does

13 not apply to petitions to compel arbitration.

14 **III.    HBO'S MOTION FAILS ON THE "MERITS"**

15      **A.    HBO's Refusal To Submit To Arbitration Is Not A Constitutionally**

16          **Protected Activity**

17      The party bringing an anti-SLAPP motion "bears the initial burden of

18 establishing the causes of action in the complaint arise from her protected activity."

19 *Century 21*, 173 Cal.App.4th at 7. "The statutory phrase 'cause of action . . . arising

20 from' means simply that the defendant's act underlying the plaintiff's cause of

21 action must *itself* have been an act in furtherance of the right of petition or free

22 speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) .

23      The act underlying the Jackson Estate's petition to compel HBO to arbitrate is

24 HBO's refusal to arbitrate. *See Spear v. California State Auto. Assn.,* 2 Cal.4th 1035,

25 1041-42 (1992) ("cause of action to compel arbitration" accrues upon refusal to

26 arbitrate). It is not, as HBO argues, HBO's production and airing of *Leaving*

27 *Neverland*. Dkt. 46-1, p. 15 of 33. As explained above in section II.C, California

28 courts have held that, *irrespective of the substance of the underlying claims to be*

1  *arbitrated*, neither the demand to arbitrate nor the refusal to submit to arbitration is a

2  constitutionally protected act for purposes of the anti-SLAPP statute. *Century 21*,

3  173 Cal.App.4th 1; *Sahlolbei*, 2010 WL 197298, at *4. HBO's citation to *Thomas v.*

4  *Quintero*, 126 Cal. App. 4th 635, 646 (2005) for the proposition that  "facially the

5  anti-SLAPP statute applies to petitions [generally]" is irrelevant, as that case

6  involved a petition for injunctive relief under California's civil harassment statute.

7  And the Jackson Estate's Petition to Compel Arbitration was clear that it was *not*

8  seeking relief in court for the two causes of action to be arbitrated, expressly

9  pleading them as the "First [and] Second Cause[s] of Action To Be Arbitrated." Dkt.

10  1-1, pp. 22-23 of 54.[5]

11     HBO ignores this settled law and instead filed what is essentially an anti-

12  SLAPP Motion against a not-yet-pending breach of contract arbitration. (Dkt. 46-1,

13  pp. 15-16 of 33) ("Plaintiffs' Petition raises two causes of action: (1) breach of

14  contract based on alleged breach of a non-disparagement sentence, and (2) breach of

15  the covenant of good faith and fair dealing."). HBO's attempt to challenge the

16  claims to be arbitrated is contrary to what the Court advised in its tentative order:

> 17  The Court notes that Defendant's Opposition attacked the
> 18  Disparagement Clause rather than the Arbitration Provision. … The
>     Court will not consider any challenges to portions of the Agreement
> 19  *aside from the Arbitration Provision. See Buckeye Check Cashing, Inc.*
>     *v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("First, as a matter of
> 20  substantive federal law, an arbitration provision is severable
>     from the remainder of the contract. Second, unless the challenge is to
> 21  the arbitration clause itself, the issue of the contract's validity is
>     considered by the arbitrator in the first instance.").

22  Dkt. 40, p. 10 of 10, n. 6. The Court's holding here follows from fundamental

---

24  [5] HBO argues that it was unnecessary for the Jackson Estate to describe the
25  substance of the claims to be arbitrated in its Petition to Compel Arbitration, but
    HBO is wrong: how else would the Court determine whether the claims to be
26  arbitrated fall within the scope of the arbitration agreement? HBO made largely the
    same argument at the hearing on the Motion to Compel Arbitration, and the Court
27  rejected it. Dkt. 46-2, p. 60 of 80 (Court noting that "It doesn't get around what *they*
    *have to have asserted*, which was the disparagement – what the specific
28  disparagement was.") (emphasis added).

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

principles of federal law. As the Court explained its tentative order: "The court's role under the [FAA] is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." Dkt. 40, p. 3 of 10, quoting *Daugherty v. Experian Info. Solutions, Inc*., 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012), quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1130 (9th Cir. 2000). And "the Court may not review the merits of the underlying case" to be arbitrated." Dkt. 40, p. 3 of 10, quoting *Macias v. Excel Bldg. Servs. LLC*, 767 F.Supp.2d 1002, 1007 (N.D. Cal. 2011). It is unclear why HBO *continues* to ignore this Court's holdings in prior orders. *See, e.g.,* Dkt. 36, p. 10 of 12 (noting that HBO ignored the Court's holding in prior order that "[t]he continued validity of the Agreement as a whole is a question for the arbitrator"), quoting Dkt. 27 at 9-10 fn. 7; Dkt. 28 (adopting Dkt. 27 as final ruling).

Even setting aside this Court's prior order, and the body of settled federal jurisprudence on which it rests, the California courts also hold that courts do not have authority to apply the anti-SLAPP statute to claims pending in arbitration. *Sheppard* , 146 Cal.App.4th at 324. The simple fact is that the Jackson Estate has not yet filed a breach of contract claims in arbitration and cannot do so until this Court orders arbitration (or HBO quits its attempt to avoid its plain obligation to arbitrate). At the risk of sounding repetitive, the *only* thing the Jackson Estate has filed in *any* venue regarding the Agreement is a petition to compel HBO to arbitrate. "Therefore, [the Jackson Estate's only] 'cause of action' is the demand for arbitration." *Sahlolbei*, 2010 WL 197298, at *4.

Relatedly, HBO suggests that its refusal to arbitrate is somehow entitled to anti-SLAPP protection because the Jackson Estate "filed their Petition in court (when they could have filed privately in arbitration)." (Dkt. 46-1, p. 19 of 33; *see also id*., p. 14, 20 of 33). HBO thus argues that "Plaintiffs have deliberately

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    enmeshed this Court in an interpretive exercise that constitutes 'state action.'" Dkt.

2    46-1, p. 14 of 33. This argument continues to be as frivolous as it was when HBO

3    made it in the last round of briefing. First, it goes without saying that if HBO had

4    consented to arbitration, contested proceedings "enmeshing this Court" would be

5    unnecessary. And contrary to HBO's claims that it did not refuse to arbitrate, HBO

6    publicly stated that it would not even discuss *Leaving Neverland* with the Estate at

7    all in the month prior to its airing, and after the Jackson Estate requested that HBO

8    discuss the matter with the Estate. Dkt. 1-1, p. 19 of 54 ¶ 64, p. 21 of 54 ¶ 72. In any

9    event, HBO later affirmed its refusal to arbitrate before a contested motion was filed

10   "enmeshing this Court" with these issues. Weitzman Decl., ¶ 2; *see also* Dkt. 18, p.

11   10 of 42 ¶ 2.

12        Second, it is perplexing why HBO continues to beat the "state action" drum

13   when "[i]t is well established that judicially enforcing arbitration agreements does

14   not constitute state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 838 n. 1

15   (9th Cir. 2017).[6]  Or as the California courts have explained, "a demand

16   commencing private contractual arbitration does not 'fit[ ]' any of the four anti-

17   SLAPP categories." *Century 21*, 173 Cal.App.4th at 8.

18   _____

19        [6] The cited case (as many of the arbitration cases cited here are) was litigated
20   by affiliates of HBO's parent company, AT&T. Dkt. 5, 8, 10, 12 (noting AT&T
     ownership of HBO and recusals based thereon). In other words, it was AT&T who
21   successfully argued that orders to arbitrate are not "state action" for purposes of the
     First Amendment, in *direct contradiction* to its position here. The U.S. Reports and
22   the Federal Reporter are filled with cases where AT&T has successfully shaped
     FAA law as it exists today, compelling consumers to arbitrate under boilerplate
23   arbitration agreements with no exceptions. To say the least, it is rather ironic that
     AT&T is now fighting tooth-and-nail to avoid an arbitration clause in a negotiated
24   agreement between sophisticated parties, and making arguments that are directly
     contrary to positions it has successfully litigated throughout the state and federal
25   courts. Apparently, for AT&T, consumers can be required to arbitrate their rights as
     a *condition* of having a cellular phone with its service, *see generally AT&T v.*
26   *Concepcion*, 563 U.S. at 337-38, but AT&T itself cannot be forced to arbitrate, even
     after it agreed to do so in a negotiated agreement between highly sophisticated
27   parties, frivolously arguing that being required to arbitrate would violate AT&T's
     "due process" rights. Dkt. 46-1, pp. 24-25 of 33.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Setting both of those points aside, HBO's suggestion that the Jackson Estate

2   could have "fil[ed] a demand with the private arbitration association specified in

3   [the] arbitration agreement" is just plain wrong. Dkt. 46-1, p. 14 n. 4 of 33. The

4   arbitration agreement does not provide that the American Arbitration Association

5   ("AAA") would administer the arbitration, only that its rules would apply. The

6   Agreement requires arbitration before a retired judge of the Los Angeles Superior

7   Court to be chosen by a procedure requiring the involvement of *both* parties. Dkt.

8   18, p. 33 of 42.[7] We do not believe HBO means to suggest that, after HBO refused

9   to communicate with the Jackson Estate at all, the Estate was then free to select an

10  arbitrator of its own choosing and bind HBO in an arbitral judgment without HBO's

11  participation (but the Jackson Estate would happily stipulate to that).

12  HBO also repeatedly implies that the Estate has done something wrong by

13  requesting that the arbitration be "public," i.e., not confidential. As the Jackson

14  Estate explained in its Petition, it has litigated with the two subjects of the HBO film

15  for over six years in open court (from May 2013 through the present day where the

16  their appeals from two of their four dismissed actions remain pending), and has

17  nothing to hide. Dkt. 1-1, p. 21 of 54 ¶ 73. Given that HBO has claimed that its film

18  was meant to "expose" the truth, it is odd that HBO apparently wants the arbitration

19

20  [7] Although the Agreement requires that the AAA Rules be applied, it does not
    require that AAA administer the arbitration. *Id.*, p. 34 of 42 ("The retired judge so
21  selected shall conduct the Arbitration in conformity with the rules of, and *as if* it
    were conducted by, the American Arbitration Association.") (emphasis added). In
22  any event, as most practitioners in this geographic area will attest—including, we
    are sure, counsel for HBO—retired judges of the Los Angeles Superior Court (and
23  retired federal judges for that matter) who have chosen to be private neutrals are
    generally *not* affiliated with AAA but with other services (e.g., JAMS, ADR
24  Services, and Signature Resolution). All of these services prominently advertise who
    their arbitrators are on their websites with a list of their judicial experience (if any)
25  *except for* AAA. Specifically, it is not possible to find out who, if any, retired
    Superior Court judges are available through AAA on its website. Declaration of
26  Jonathan Noyes (filed concurrently) ¶ 3. Efforts to find out this information by
    calling AAA revealed that it requires parties to pay between $750 and $2000 to even
27  get a list of such names (if any). *Ibid.* AAA will not provide the list without
    payment and would not identify any retired Superior Court judges when asked. *Ibid.*

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

to be confidential. There is no reason that arbitration proceedings must be confidential. Although the 1992 AAA Rules require the arbitrator to "maintain the privacy of the hearing," the arbitrator also has discretion to allow persons other than the parties to attend. Dkt. 22-2, pp. 11 of 31 (1992 AAA Rule 25). Moreover, there is nothing requiring the record of the arbitration, information learned in it, and evidence produced in it, to be kept confidential. *Id.* pp. 11-12 of 31 (1992 AAA Rules 23, 31). (Of course, it is the 1992 rules that control as this Court expressly held at HBO's urging. Dkt. 27, p. 10 of 14, Dkt. 28.) In any event, these are all issues for an arbitrator and are of no relevance to this motion. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (unlike question of arbitrability itself, which is generally for courts, procedural issues relating to arbitration are to be decided by arbitrators).

Finally, HBO objects to various allegations in the Petition, taking particular offense to the banal allegation "that the arbitrator award punitive damages in the maximum amount permissible *if and when Petitioners show their entitlement to such damages*." Dkt. 1-1, p. 24 of 54 (emphasis added). "But the anti-SLAPP statute is targeted at causes of action, not 'particular allegations within a cause of action.'" *eDrop-Off Chicago LLC v. Burke*, No. CV 12-4095 GW, 2013 WL 12131186, at *14 (C.D. Cal. Aug. 9, 2013) (Wu, J.), quoting *A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*, 137 Cal.App.4th 1118, 1124 (2006). The mention of punitive damages "if and when" appropriate is not even within a cause of action but a statement at the end of the petition about what may lie in a future arbitration.[8]

In summary, HBO's attempts to reimagine both the Jackson Estate's Petition

---

[8] In any event, to the extent that HBO takes offense at particular allegations, and the Court finds merit in HBO's problems with them, they can be omitted in an amended petition. *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("granting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment").

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   and binding precedent must fail. There is only one "cause of action" before this

2   Court: a request for an order compelling arbitration under the FAA based on HBO's

3   refusal to arbitrate. Under settled California law, HBO's refusal to arbitrate is not a

4   protected activity under the anti-SLAPP statute.

5   **B.    The Jackson Estate Is Likely To Prevail On Its Motion To Compel**

6   **Arbitration**

7   HBO's devotes approximately 15 pages of its brief to arguing that "Plaintiffs

8   cannot establish that there is a reasonable probability they will prevail on their

9   breach of contract claims." Dkt. 46-1, p. 18 of 33; *see id*. pp. 17-32 of 33. HBO's

10  efforts are misdirected and premature. As noted above, the Jackson Estate has not

11  yet filed the underlying breach of contract claims that are to be decided by an

12  arbitrator. What the Jackson Estate *did* file was a petition to compel arbitration

13  under the FAA. (Dkt. 1-1). In that Petition, it included the "Cause[s] of Action *To*

14  *Be Arbitrated*" so that there was a basis for a court to conclude that the controversy

15  fell within the scope of arbitrable issues. *See* above at footnote 5. And for the

16  reasons set forth in pages 1-8 of the Court's tentative ruling on the merits of the

17  Estate's petition, Dkt. 40, pp. 2-9 of 10, the Jackson Estate is likely to succeed on

18  that petition. Indeed, with the exception of this anti-SLAPP issue, the Court has

19  definitively rejected all of HBO's arguments against arbitration.

20  It is well-settled that "where the contract contains an arbitration clause, there

21  is a presumption of arbitrability in the sense that '[a]n order to arbitrate the

22  particular grievance should not be denied unless it may be said with positive

23  assurance that the arbitration clause is not susceptible of an interpretation that covers

24  the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T*

25  *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

26  A court cannot conclude that the claims are arbitrable, as this Court has

27  tentatively held, *see* Dkt. 40, but then refuse to enforce the arbitration agreement

28  because it has doubts about the merits of the claims to be arbitrated. The Supreme

Court has emphatically held that "a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous. A court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal citation and quotation marks omitted). Thus, the Court has "no business" considering the merits of the grievances to be arbitrated here.[9]

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

---

[9] Where, as here, the claims are not challenged on factual grounds (e.g., with evidence), the motion must be analyzed under a Rule 12(b)(6) standard. "If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018). Here, there can be no doubt that the causes of action to be arbitrated are "plausible" under a Rule 12(b)(6) standard. HBO's arguments that the Agreement expired as a matter of law, or that the non-disparagement clause could not possibly apply, have already been addressed and rejected. Those arguments are for the arbitrator in any event, and they could not be resolved without discovery; HBO itself effectively asserts that the non-disparagement clause is "ambiguous." Dkt. 46-1, p. 21 of 33 (asserting that there is an "ambiguous standard for disparagement"). In order to resolve any ambiguity, extrinsic evidence would need to be introduced, and discovery taken. This just further highlights the impropriety of using the anti-SLAPP statute to "strike" petitions to compel arbitration. Federal law is clear that the scope of discovery, etc., in cases governed by the FAA are to be determined by arbitrators not courts. *Howsam*, 537 U.S. at 84

**IV.    CONCLUSION**

For the reasons stated, this anti-SLAPP motion should be rejected and the Jackson Estate's motion to compel arbitration should be granted.

DATED: August 29, 2019                Respectfully Submitted:

KINSELLA WEITZMAN ISER
KUMP & ALDISERT LLP


By:  _____/s/ Jonathan Steinsapir_____
     Jonathan Steinsapir
     Attorneys for Petitioners/Plaintiffs
     Optimum Productions and for the Co-
     Executors of the Estate of Michael J.
     Jackson

10386.00348/653835

THE JACKSON ESTATE'S OPPOSITION TO HBO'S ANTI-SLAPP MOTION