1   DANIEL M. PETROCELLI (S.B. #97802)
      dpetrocelli@omm.com
2   DREW E. BREUDER (S.B. #198466)
      dbreuder@omm.com
3   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 8th Floor
4   Los Angeles, CA  90067-6035
    Telephone:  (310) 553-6700
5   Facsimile:   (310) 246-6779

6   THEODORE J. BOUTROUS JR. (S.B. #132099)
      tboutrous@gibsondunn.com
7   NATHANIEL L. BACH (S.B. #246518)
      nbach@gibsondunn.com
8   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
9   Los Angeles, CA 90071-3197
    Telephone:  (213) 229-7804
10  Facsimile:   (213) 229-6804

11  *Attorneys for Home Box Office, Inc.*

12                    **UNITED STATES DISTRICT COURT**

13                 **CENTRAL DISTRICT OF CALIFORNIA**

14

15  OPTIMUM PRODUCTIONS, a          Case No. 2:19-cv-01862-GW-PJW
    California corporation; and JOHN
16  BRANCA and JOHN MCCLAIN, in     Hon. George H. Wu
    the respective capacities as CO-
    EXECUTORS OF THE ESTATE OF      **DEFENDANT HOME BOX**
17  MICHAEL J. JACKSON,             **OFFICE, INC.'S NOTICE OF**
                                    **APPEAL TO THE UNITED**
18                                  **STATES COURT OF APPEALS**
                   Plaintiffs,      **FOR THE NINTH CIRCUIT**
19                                  **NOTICE OF APPEAL**
             v.
20
    HOME BOX OFFICE, a Division of
21  TIME WARNER ENTERTAINMENT,
    L.P., a Delaware Limited Partnership;
22  HOME BOX OFFICE, INC., a
    Delaware corporation; DOES 1 through
23  5, business entities unknown; and
    DOES 6 through 10, individuals
24  unknown,

25                 Defendants.

26

27

28
                                    HBO'S NOTICE OF APPEAL
                                    CASE NO. 2:19-CV-01862-GW-PJW

1    Please take notice that Defendant Home Box Office, Inc. hereby appeals to

2 the United States Court of Appeals for the Ninth Circuit from this Court's order

3 granting Plaintiffs' Motion to Compel Arbitration (the "Order"), entered in this

4 action on September 20, 2019 (Dkt. 55), and attached hereto as Exhibit A; the

5 Court's reasoning for its Order is set forth in its July 15, 2019 civil minutes (Dkt.

6 40), and attached hereto as Exhibit B.

7    The Order is an appealable final decision under 9 U.S.C. § 16(a)(3). *See*

8 *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1302 (9th Cir. 1994) ("[I]f the

9 motion to compel arbitration in a given case is the only claim before the district

10 court, a decision to compel arbitration is deemed to dispose of the entire case, and

11 permit appellate review under 9 U.S.C. § 16(a)(3)[.]").  This Notice is timely

12 pursuant to Federal Rule of Appellate Procedure 4 and Federal Rule of Appellate

13 Procedure 26(a)(1)(C).

14

15 Dated: October 21, 2019          O'MELVENY & MYERS LLP
                                    GIBSON, DUNN & CRUTCHER LLP
16
                                    By: /s/ *Daniel M. Petrocelli*
17                                       Daniel M. Petrocelli

18                                  By: /s/ *Theodore J. Boutrous Jr.*
                                         Theodore J. Boutrous Jr.
19
20                                  *Attorneys for Home Box Office, Inc.*

21

22

23

24

25

26

27

28

1

2

**REPRESENTATION STATEMENT**
Ninth Circuit Rule 3-2(b)

3

**Attorneys for Defendant Home Box Office, Inc.:**

4

5

6

7

8

DANIEL M. PETROCELLI (S.B. #97802)
  dpetrocelli@omm.com
DREW E. BREUDER (S.B. #198466)
  dbreuder@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 8th Floor
Los Angeles, CA  90067-6035
Telephone:  (310) 553-6700
Facsimile:   (310) 246-6779

9

10

11

12

13

THEODORE J. BOUTROUS JR. (S.B. #132099)
  tboutrous@gibsondunn.com
NATHANIEL L. BACH (S.B. #246518)
  nbach@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7804
Facsimile:   (213) 229-6804

14

15

16

**Attorneys for Plaintiffs Optimum Productions and for the Co-Executors of the Estate of Michael J. Jackson:**

17

18

19

20

21

22

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (SBN 38723)
  hweitzman@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Zachary T. Elsea (SBN 279252)
  zelsea@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

23

24

25

26

FREEDMAN + TAITELMAN LLP
Bryan J. Freedman (SBN 151990)
  bfreedman@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: 310.201.0005
Facsimile: 310.201.0045

27

28

HBO'S NOTICE OF APPEAL
CASE NO. 2:19-CV-01862-GW-PJW

# Exhibit A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-1862-GW(PJWx) | Date | September 20, 2019 |
|---|---|---|---|
| Title | *Optimum Productions et al v. Home Box Office, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - CONSOLIDATED FINAL RULINGS ON:**

**PLAINTIFFS' MOTION TO COMPEL ARBITRATION [18]**

**HOME BOX OFFICE, INC.'S MOTION TO STRIKE PLAINTIFFS' PETITION (CAL. CODE CIV. PROC. § 425.16) [46]**

Attached hereto is the Court's Final Ruling. The Court sets a status conference for October 3, 2019 at 8:30 a.m. Counsel may appear telephonically provided advanced notice is given to the clerk.

_____ : _____

Initials of Preparer    JG

***Optimum Productions et al v. Home Box Office et al.***; Case No. 2:19-cv-01862-GW-(PJWx)
Consolidated Final Rulings


The Court has issued three tentative rulings in this matter.  First, on May 23, 2019, the Court issued a tentative ruling on Plaintiffs' Motion to Remand and Motion to Compel Arbitration.  *See* Docket No. 27.  Later that same day, the Court made its tentative ruling final in a separate minute order, but therein qualified the Court's ruling.  *See* Docket No. 28.  The Court denied the Motion to Remand and denied the Motion to Compel Arbitration "insofar as it contend[ed] that the gateway issue of arbitrability is to be decided by the arbitrator rather than the Court pursuant to clear and unmistakable evidence."  *Id.*

Thereafter, on July 15, 2019, the Court issued a second tentative ruling on the Motion to Compel Arbitration.  *See* Docket No. 40.  The Court indicated that it was inclined to find the claims arbitrable, but had outstanding questions on the First Amendment issue.  *Id.*  The Court thereby postponed its decision on the Motion to Compel Arbitration pending Defendants' filing an anti-SLAPP Motion.  *Id.*

On September 19, 2019, the Court heard argument on the anti-SLAPP Motion and tentatively ruled that it would deny the motion.

The Court now consolidates its previous rulings and finalizes its decision on the remaining issues.  The Court would rule as follows:

- The Court would **DENY** Plaintiffs' Motion to Remand for the reasons expressed on May 23, 2019.  *See* Docket No. 27.

- The Court would **DENY** Plaintiffs' Motion to Compel Arbitration to the extent it argued that the arbitrability question was for the arbitrator in the first instance. *See* Docket Nos. 27-28.

- The Court would **GRANT** Plaintiffs' Motion to Compel Arbitration for the reasons explained on July 15, 2019.  *See* Docket No. 40.

- The Court would **DENY** Defendants' anti-SLAPP Motion for the reasons described on September 19, 2019.

If either side wishes to seek an interlocutory appeal, any motion should be filed within thirty days of this ruling.  The Court sets a status conference for October 3, 2019, wherein the parties may appear telephonically with advanced arrangement with the clerk.  The parties are to submit a joint status conference report regarding any future dates to be scheduled in this matter.

# Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 19-1862-GW(PJWx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | *Optimum Productions et al v. Home Box Office, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Katie E. Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Bryan J. Freedman | Theodore J. Boutrous, Jr. |
| Jonathan P. Steinsapir | Daniel M. Petrocelli |
| Howard Weitzman | Drew E. Breuder |
| | Stephanie S. Abrutyn |

**PROCEEDINGS:    PLAINTIFFS' MOTION TO COMPEL ARBITRATION [18]**


The Court's Further Consideration of Motion to Compel following Supplemental Briefing is circulated and attached hereto. Court hears further argument. For reasons stated on the record, the Court will postpone the determination of this motion pending Defendant's filing of its proposed anti-Slapp motion. Motion is to be filed by August 15, 2019, Opposition to be filed by August 29, 2019, and Reply due on or before September 5, 2019. Hearing on the motion is set for September 16, 2019 at 8:30 a.m.

|  | : | 35 |
|---|---|---|

Initials of Preparer    JG

***Optimum Productions et al v. Home Box Office et al***; Case No. 2:19-cv-01862-GW-(PJWx)
Further Consideration of Motion to Compel Arbitration following Supplemental Briefing


I.      **Background**

        Plaintiffs Optimum Productions and the Estate filed a petition to compel arbitration against HBO[1] in Los Angeles County Superior Court.  *See generally* Petition, Docket No. 1-1.  The Petition seeks to arbitrate claims for breach of contract (disparagement clause) and breach of the covenant of good faith and fair dealing.  *See generally id.*  HBO removed the action claiming diversity jurisdiction.  *See* Notice of Removal, Docket No. 1, ¶ 4.  Plaintiffs then moved this Court to remand the action to the Superior Court or, alternatively, to compel arbitration.  *See* Motion to Remand, Docket No. 17; Arbitration Motion, Docket No. 18.

        On May 23, 2019, the Court denied Plaintiffs' Motion to Remand and denied in part Plaintiffs' Arbitration Motion.  *See* Minutes in Chambers – Ruling on Plaintiffs' Motion to Remand, Docket No. 28; Minutes of Plaintiffs' Motion to Remand ("Partial Ruling"), Docket No. 27.  Specifically, the Court denied Plaintiffs' Arbitration Motion to the extent it argued that the Agreement delegated the arbitrability question to the arbitrator.  *See* Partial Ruling at 12; Minutes in Chambers – Ruling on Plaintiffs' Motion to Remand, Docket No. 28 (making the Partial Ruling final and emphasizing that the Court would decide arbitrability).  The Court reserved judgment on whether Plaintiffs' claims were arbitrable and ordered supplemental briefing from the parties on the matter.  *See* Minutes in Chambers – Ruling on Plaintiffs' Motion to Remand, Docket Nos. 28.  The parties submitted the briefing accordingly.[2]  *See* Defendant's Supplemental Memorandum in Opposition to Plaintiffs' Arbitration Motion ("Def.'s Supp."), Docket No. 30; Plaintiffs' Supplemental Brief in Support of Arbitration Motion (Pls.' Supp."), Docket No. 36.[3]

II.     **Legal Standard**

        The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2010) (citation omitted).  "By its terms,

---

[1] Unless otherwise noted, the defined terms herein have the same meaning as those in the Court's Partial Ruling (*see* Docket No. 27).

[2] The Court will not repeat the factual background here.  The parties should refer to the description in the Partial Ruling.

[3] For the purposes of this tentative ruling, the Court considered the parties' original briefing filed ahead of the Partial Ruling, as well as the supplemental briefs filed afterwards.

1

the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Daugherty v. Experian Info. Solutions, Inc.*, 847 F. Supp. 2d 1189, 1193 (N.D. Cal. 2012) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (quoting *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 (E.D. Pa. 2006)).

## III.    Discussion

As set forth in the Partial Ruling, the Agreement included the Arbitration Provision:

> Any dispute arising out of, in connection with or relating to this Agreement shall be submitted for binding and final arbitration before a retired judge of the Superior Court of the State of California for the County of Los Angeles who shall be mutually selected by the parties. In the event that the parties cannot agree on the selection of such a retired judge within 30 days after one of the parties notifies the other in writing that there is any such dispute to be resolved, each party shall select such a retired judge, and the two retired judges so selected shall then select a third retired judge who shall serve as the sole judge in connection with such dispute. If the two party-appointed judges are unable to select a third judge within 30 days after their appointment, the sole retired judge in connection with such dispute shall be selected by the Superior Court of the State of California for the County of Los Angeles. The retired judge so selected shall conduct the arbitration in conformity with the rules of, and as if it were conducted by, the American Arbitration Association.

Agreement at p. 45 of 54. The Agreement also incorporated "confidentiality provisions," which were set forth in an attached "Exhibit 1." *Id.* ("It is understood that HBO shall comply with the confidentiality provisions set forth in Exhibit I attached hereto and incorporated herein by this reference."); Petition ¶ 31. The confidentiality provisions state "HBO shall not make any

disparaging remarks concerning Performer or any of his representatives, agents, or business practices or do any act that may harm or disparage or cause to lower in esteem the reputation or public image of Performer." Petition ¶ 33; Agreement at p. 51 of 54 ("Disparagement Clause"). They also state that "HBO shall not in any manner nor at any time (either during or after HBO's contact of HBO's relationship with Licensor and/or Performer), use or disclose, directly or indirectly . . . . any . . . 'Confidential Information.'" Agreement at p. 50 of 54. The confidentiality provisions also include the clause that:

> In the event that either party to this agreement brings an action to enforce the terms of these confidentiality provisions or to declare rights with respect to such provisions, the prevailing party in such action shall be entitled to an award of costs of litigation . . . in such amount as may be determined by the court having jurisdiction in such action.

*Id.* at p. 52 of 54.

A. Whether a Valid Arbitration Provision Exists Herein

Defendant first argues that no valid arbitration agreement exists because the confidentiality provisions state that the prevailing party in an action to enforce the provisions is entitled to an award of the costs of litigation as may be determined by the *court* having jurisdiction in such action. *See* Def.'s Supp. at 1. Based on this clause, Defendant insists that the more-specific language in the confidentiality provisions overrides the Agreement's Arbitration Provision, and that therefore, a court must resolve any dispute. *Id.* at 1-2. Further, anticipating Plaintiffs' arguments, Defendant contends: (1) that there is no indication that the reference to the court in the confidentiality provisions was intended for actions seeking injunctive relief; and (2) that even accepting that the confidentiality provisions were incorporated into the body of the Agreement, if the Court were to hold that the Arbitration Provision trumps the reference to the court, that would render the reference to the court superfluous. *See id.* at 2-3.

Plaintiffs first respond that Defendant conflates who has the burden of establishing arbitrability. *See* Pls.' Supp, at 1. Plaintiffs clarify that establishing the *existence* of an arbitration clause is their burden, but that the existence of the Arbitration Provision is undisputed. *See id.* Instead, Plaintiffs assert that Defendant is challenging the *scope* of the Arbitration Provision. *Id.*

The Court would agree with Plaintiffs' framing of the burden question. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[B]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement *exists*.") (emphasis

added); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("Sirius XM, as the party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence."); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) ("[T]he Federal Arbitration Act reflects 'a liberal federal policy favoring arbitration agreements,' that policy is best understood as concerning 'the scope of arbitrable issues.' " (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).  Whether a particular dispute falls within an arbitration agreement, however, is subject to the presumption in favor of arbitration.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Defendant cannot not seriously dispute the *existence* of the Arbitration Provision in the body of the Agreement.  Instead, the thrust of Defendant's position is that the Arbitration Provision does not *apply* to disputes that arise under the Disparagement Clause in the confidentiality provisions.  *See* Def. Supp. at 1 ("Plaintiffs cannot satisfy their burden of proving that a valid agreement to arbitrate exists because the very provision on which their Motion rests makes clear that any disputes must be resolved by "the court," not an arbitrator . . . . While the body of the 1992 Agreement contains an arbitration provision, the document that contains the non-disparagement sentence contains a different, more specific clause requiring judicial resolution of disputes.").  Because the Agreement incorporated the confidentiality provisions, it does not make sense to treat the provisions as a separate document or contract.  Thus, the confidentiality provisions are part of a contract that contains the Arbitration Provision.  As such, the Court would conclude that an arbitration agreement exists, and will address below whether this dispute is within the scope of the agreement.

B.  Whether the Arbitration Provision Encompasses the Present Dispute

1. *Reference to a Court in the Confidentiality Provisions*

First of all, the plain language of the clause containing the reference to a court in the confidentiality provisions does not make it clear that any dispute under the provisions *must be* litigated in court, as Defendant argues.  The clause begins, "*in the event* that either party to this agreement brings an action to enforce the terms of these confidentiality provisions . . . ."  Agreement at p. 52 of 54 (emphasis added).  The conditional nature of the opening sentence suggests that the clause only applies *if* a party brings an action to enforce the terms.  It says nothing

4

about *where* such an action may be brought.  And, as Plaintiffs point out, even if the Arbitration Provision requires arbitration, there are reasons that the parties could be in court.  Pls.' Supp. at 4.  Most obviously, one of the parties could resist arbitration, forcing the other party to seek court intervention.  A party could also seek injunctive relief or confirmation of an arbitration award in court.

Moreover, the reference to the "the court having jurisdiction," could very well include an arbitrator as well as a court of law.  Reading the "court having jurisdiction" language to include an arbitrator would negate any concern that the clause was inconsistent with or superfluous to the Arbitration Provision.  *See Harris v. Sandro*, 96 Cal. App. 4th 1310, 1312 (2002).  In *Harris*, the plaintiff obtained an option agreement that provided:  "Any dispute or claim in law or equity arising out of this contract or any resulting transaction shall be decided by neutral binding arbitration in accordance with the rules of the American Arbitration Association."  *Id.*  The agreement also included a fee-shifting provision: "Should any litigation be commenced between the parties . . . the party, Seller or Buyer, prevailing in such litigation shall be entitled to, in addition to such other relief as may be granted, a reasonable sum for attorneys' fees to be determined by the court in such litigation or in a separate action brought for that purpose."  *Id.*  A dispute arose between the parties, they engaged in arbitration, and the arbitrator awarded attorneys' fees to the defendant.  *Id.* The California Court of Appeal thereafter rejected plaintiff's argument that the arbitrator exceeded his authority by awarding fees.  *Id.* at 1314.  The plaintiff had seemingly argued that the agreement required that a court make the fee award.  *Id.*  However, the California Court of Appeal held:

> The option agreement does not require that a "court" or judge, rather than an arbitrator, make the fee award.  All of the parties' disputes are to be submitted to arbitration.  Where, as here, a contract both compels arbitration and awards attorney's fees to the prevailing party in "litigation" arising out of the contract, the attorneys' fee provision applies to the arbitration.  (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 95 [220 Cal.Rptr. 400]; *Taranow v. Brokstein, supra,* 135 Cal.App.3d at pp. 667-668.).  Any other result would render the fee provision meaningless, a result we must avoid where possible.  (Civ. Code, § 1641; *Tate v. Saratoga Savings & Loan Assn* (1989) 216 Cal.App.3d 843, 857 [265 Cal.Rptr. 440].)  By the same reasoning, a contract that both compels arbitration and requires a "court" to determine the amount of the fee award must contemplate that an arbitrator will make the fee award.  Otherwise, fees could never be awarded

5

> because no "court" may decide a dispute under the contract; all such
> disputes must be decided by an arbitrator.

*Id.* at 1314-15.

The Court finds the reasoning in *Harris* convincing. There, as here, the agreement included a broad and mandatory arbitration clause, and a conditional (and somewhat ambiguous) reference to a court in the context of attorneys' fees or costs. As such, the Court would come to the same conclusion as *Harris* and reconcile the possibly-inconsistent clauses by reading the reference to "a court" in the confidentiality provisions to also encompass an arbitrator.

Throughout its supplemental brief, Defendant repeats that the reference to a court in the confidentiality provisions is more specific than the Arbitration Provision, but does not explain exactly why it is more specific.[4] The Court disagrees. As stated above, the clause does not use mandatory language to designate a particular forum for dispute resolution. It only says that the court having jurisdiction can award the prevailing party costs. If anything, the Arbitration Provision is clearer and more specific. The Arbitration Provision states in mandatory terms that "[a]*ny* dispute arising out of, in connection with or relating to this Agreement shall be" arbitrated. Agreement at p. 45 of 54. And because the confidentiality provisions were incorporated into the Agreement, the plainest reading is that any dispute about those provisions would be governed by the broad Arbitration Provision. Further, neither the Arbitration Provision nor the confidentiality provisions include any "notwithstanding" language referring to the other to indicate that the confidentiality provisions are exempt from the Arbitration Provision. Thus, for the foregoing reasons, the Court would conclude that the language in the confidentiality provisions does not mandate that only a court may hear disputes under that provision.

Lastly, the Court does not believe that the reference to "the court having jurisdiction" in the confidentiality provisions renders the arbitrability of disputes under that clause ambiguous. But, even if the Court did think that the clause created ambiguity, it would still be forced to find the claims arbitrable because of the federal presumption of arbitrability. *See Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1286 (9th Cir. 2009).

### 2. *Relation to Leaving Neverland*

---

[4] Defendant's citations to articulations of the general rule that the particular controls the general are unavailing because Defendant does not explain how the confidentiality provisions are more specific that the Arbitration Clause, and because Defendant fails to direct the Court to any case holding that a reference to a court is more specific than a broad arbitration clause. *See* Def.'s Supp. at 3.

Defendant next argues that the Arbitration Provision does not encompass the dispute because the subject of the Agreement was a live concert performance by Michael Jackson in Bucharest, Romania, on October 1, 1992 and *Leaving Neverland* has nothing to do with that concert. *See* Def.'s Supp. at 3-4. Specifically, Defendant notes that *Leaving Neverland* does not mention the concert in Bucharest, contains no concert footage from the performance, and does not contain any "confidential information" that may have been disclosed to HBO in connection with the Bucharest telecast. *Id.* at 4.

In response, Plaintiffs dispute Defendant's characterization of the relationship between the film and the Petition. *See* Pls.' Supp. at 6. In the Petition, Plaintiffs alleged that *Leaving Neverland* accused Jackson of abusing children during the tour that included the Bucharest concert. Petition ¶ 40. Regardless of the relation, Plaintiffs contend that Defendant's argument goes to the merits of the dispute rather than its arbitrability. *See* Pls.' Supp. at 5-6. The Court tends to agree.

Plaintiffs' petition is largely based on Defendant's alleged breach of the Disparagement Clause of the Agreement. *See* Petition ¶¶ 36-40. The Disparagement Clause reads:

> HBO shall not make any disparaging remarks concerning Performer or any of his representatives, agents, or business practices or do any act that may harm or disparage or cause to lower in esteem the reputation or public image of Performer or any person, firm or corporation related to or doing business with Performer.

Agreement at p. 51 of 54. The language of the provision does not limit its effect to only disparaging remarks related to the Bucharest concert, the tour, or any other topic. Read with the presumption of arbitrability in mind, the Court thinks that the Arbitration Provision clearly encompasses the current dispute. The Arbitration Provision requires that any dispute arising under the Agreement must be arbitrated; the Disparagement Clause was incorporated into the Agreement; nothing on the face of the Disparagement Clause limits its effect to certain types of disparaging statements; and, in *Leaving Neverland*, HBO broadcast accusations that Jackson sexually abused children.

Whether the Disparagement Clause prohibits HBO from making those types of allegations is a question of breach that an arbitrator must decide.

### 3. Expiration of the Agreement

Next, Defendant argues that the Arbitration provision does not encompass the instant dispute because the Agreement has been fully performed and is expired. Def.'s Supp. at 5-6. The Court previously noted that any challenge to the validity of the Agreement as a whole is a question for the arbitrator. *See* Partial Ruling at 9-10 n.7. Moreover, even if the Agreement has expired,

7

the Supreme Court has held that arbitration agreements may outlive the contract of which they are a part. *See Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 252 (1977) (holding that the parties must arbitrate a dispute over severance pay even though the agreement providing for severance pay and arbitration had expired and the claim for the severance pay arose *after* the expiration); *see also Litton Fin. Printing Div. v. N.L.R.B.*, 501 U.S. 190, 204 (1991) (reiterating "a presumption in favor of postexpiration arbitration of matters unless negated expressly or by clear implication.' ") (quoting *Nolde Bros,*, 430 U.S. at 255)); *Wamar Int'l, LLC v. Thales Avionics, Inc.*, 2019 WL 1877615, at *10 n.3 (C.D. Cal. Mar. 20, 2019) ("Even where an agreement has been terminated, the well settled jurisprudence that holds arbitration agreements to a life and validity separate and apart from the agreement in which they are embedded dictates that parties' duties under an arbitration clause survive contract termination when the dispute is over an obligation arguably created by the expired contract." (internal quotation marks and citation omitted); *Brachfeld v. Hopkins*, 2017 WL 10436075, at *5 (C.D. Cal. Dec. 11, 2017) ("Absent an express agreement to the contrary, however, arbitration agreements 'survive[ ] contract termination when the dispute [is] over an obligation arguably created by the expired agreement.' " (quoting *Nolde Bros.*, 430 U.S. at 252) (alterations in original)).

The rule in *Nolde Brothers* is not limitless, however, and only applies to disputes that arguably arise under the contract at issue. *See Nolde Bros.*, 430 U.S. at 252-53. But because Plaintiffs' claims allegedly arise under the Disparagement Clause of the Agreement, and because there is no express clause terminating the Arbitration Provision at the expiration of the Agreement, the Court would apply the *Nolde Brothers* presumption.[5]

C. First Amendment

Finally, Defendant argues that the Court should deny the Arbitration Motion because the Arbitration Provision, "as applied here, is unenforceable as a matter of the First Amendment, due process, and California public policy." Def. Supp. at 7. HBO contends that it "is squarely attacking the enforceability of arbitration provision itself, not arguing the merits as Plaintiffs have wrongly claimed." *Id.* Specifically, Defendant asserts that the Arbitration Provision itself is

---

[5] Defendant's cite to *Just Film, Inc. v. Merch. Servs., Inc.*, 2011 WL 2433044 (N.D. Cal. 2011) is inapposite. *See* Arbitration Opp'n at 11-12. The court there did not hold that arbitration provisions expire along with their contracts. To the contrary, the court recognized the *Nolde Brothers* line of precedent but held that the claims did not arise under the agreement. *Just Film, Inc.*, 2011 WL 2433044, at *5.

8

13

suspect under the First Amendment because it allows Plaintiffs "a perpetual forum for them to police what are clearly defamation-after-death claims in disguise," and that the Court would "enmesh[]" itself in the controversy by enforcing the Arbitration Provision. *Id.*[6]

Plaintiffs respond that Defendant's arguments are "frivolous" because "[i]t is well established that judicially enforcing arbitration agreements does *not* constitute state action." Pls.'s Supp. at 7 (quoting *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 838 n. 1 (9th Cir. 2017) (emphasis added)). While the Court agrees that attempting to enforce an arbitration agreement in a contract that includes a non-disparagement clause through the filing of a lawsuit does not initially suggest the presence of state action, the initiation of the litigation itself can trigger First Amendment concerns. *See, e.g.*, California Code Civil Procedure § 425.16(a) ("The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."). It cannot be doubted that Plaintiffs' arbitration action is seeking to recover damages based upon Defendants' broadcasting a documentary.[7] Whether that fact should have some effect on the Arbitration Motion should be discussed more thoroughly at the hearing.

## IV.    Conclusion

The Court has not at this time reached a final decision on the Arbitration Motion but will decide the matter after hearing arguments of counsel.

---

[6] The Court notes that Defendant's Opposition attacked the Disparagement Clause rather than the Arbitration Provision. *See* Opp'n at 16-22; *id.* at 16 ("The 1992 Agreement's Non-Disparagement Sentence is Unenforceable."); *id.* at 17 ("Petitioners' Interpretation of Non-Disparagement Sentence Violates HBO's First Amendment and Due Process Rights"); *id.* at 19 ("application of the vague and overbroad non-disparagement and Confidentiality Provisions implicates and violates HBO's due process and First Amendment rights."). The Court will not consider any challenges to portions of the Agreement aside from the Arbitration Provision. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) ("First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

[7] Although Plaintiffs refer to *Leaving Neverland* as a documentary in quotes and characterize it as "one-sided" (*see* Complaint at 2:9-12), they do not deny that it is in fact a documentary and subject to First Amendment protections.

9