KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
Howard Weitzman (SBN 38723)
  hweitzman@kwikalaw.com
Jonathan P. Steinsapir (SBN 226281)
  jsteinsapir@kwikalaw.com
Zachary T. Elsea (SBN 279252)
  zelsea@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

FREEDMAN + TAITELMAN LLP
Bryan J. Freedman (SBN 151990)
  bfreedman@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Telephone: 310.201.0005
Facsimile: 310.201.0045

Attorneys for Petitioners Optimum
Productions and for the Co-Executors of
the Estate of Michael J. Jackson

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP<br>808 WILSHIRE BOULEVARD, 3RD FLOOR<br>SANTA MONICA, CALIFORNIA 90401<br>TEL 310.566.9800 • FAX 310.566.9850

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| OPTIMUM PRODUCTIONS, a California corporation; and JOHN BRANCA and JOHN MCCLAIN, in the respective capacities as CO-EXECUTORS OF THE ESTATE OF MICHAEL J. JACKSON,<br><br>        Petitioners,<br><br>        vs.<br><br>HOME BOX OFFICE, a Division of TIME WARNER ENTERTAINMENT, L.P., a Delaware Limited Partnership, and HOME BOX OFFICE, INC., a Delaware corporation, and DOES 1 through 5, business entities unknown, and DOES 6 through 10, individuals unknown,<br><br>        Respondents. | Case No. 2:19-cv-01862 GW(PJWx)<br><br>**PETITIONERS' OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION PENDING RESOLUTION OF APPEAL; AND DECLARATION OF JONATHAN P. STEINSAPIR IN SUPPORT THEREOF**<br><br>Judge: Hon. George H. Wu<br><br>Date: November 7, 2019<br>Time: 8:30 a.m.<br>Ctrm: 9D |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................ 3

III.  LEGAL STANDARD .................................................................... 4

IV.  ARGUMENT ................................................................................. 4

    A.    The Ninth Circuit Has Conclusively Held that Being Compelled to Arbitrate Cannot Constitute Irreparable Injury ................................... 4

    B.    HBO Cannot Show A Likelihood Of Success On The Merits ............. 10

        1.    HBO's contract expiration arguments are frivolous .................. 10

        2.    It is already settled law that a *State* anti-SLAPP statute cannot apply to a *federal* claim to compel arbitration. ............... 13

    C.    A Stay Would Substantially Injure the Jackson Estate ...................... 15

    D.    Granting A Stay Of Arbitration Would Contravene Public Policy ...... 17

V.   CONCLUSION ............................................................................. 18

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Arbaugh v. Y&H Corp.*
546 U.S. 500 (2006) .................................................................15

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ..................................................................7

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*
622 F.3d 996 (9th Cir. 2010) ....................................................11

*Buckeye Check Cashing, Inc. v. Cardegna*
546 U.S. 440 (2006 .................................................................11

*Camping Const. Co. v. Dist. Council of Iron Workers*
915 F.2d 1333 (9th Cir. 1990)..............................................passim

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) .................................................................13

*Divxnetworks, Inc. v. Gericom AG*
Case No. CV 04-2537 WQH2007 WL 4538623 (S.D. Cal. Dec. 19,
2007)...............................................................................6, 12

*Dorsey v. Nat'l Enquirer, Inc.*
973 F.2d 1431 (9th Cir. 1992) ...............................................2, 17

*Faiveley Transp. Malmo AB v. Wabtec Corp.*
559 F.3d 110 (2d Cir. 2009) ......................................................8

*Gen. Teamsters Union Local No. 439 v. Sunrise Sanitation Servs., Inc.*
2006 WL 2091947 (E.D. Cal. July 26, 2006) ............................12

*Graphic Commc'ns Union v. Chicago Tribune Co.*
779 F.2d 13 (7th Cir. 1985)...............................................passim

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*
552 U.S. 576 (2008) .................................................................15

*Hertz Corp. v. Friend*
559 U.S. 77 (2010) ...................................................................15

*Hilton v. Braunskill*
481 U.S. 770 (1987) ...........................................................1, 4, 5

*Himebaugh v. Smith*
476 F. Supp. 502 (C.D. Cal. 1978)............................................12

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Kropke v. Dunbar*
Case No. CV 16-08753 MWF, 2017 WL 8186745 (C.D. Cal. Feb. 14, 2017)...................................................................................................6

*Leiva-Perez v. Holder*
640 F.3d 962 (9th Cir. 2011)...............................................................passim

*McKinney v. Emery Air Freight Corp.*
954 F.2d 590 (9th Cir. 1992)............................................................2, 12

*Merrell Dow Pharm. Inc. v. Thompson,*
478 U.S. 804 (1986)..............................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1, 22 (1983)...............................................................3, 16, 17

*Nken v. Holder*
556 U.S. 418 (2009) ...................................................................1, 2, 4, 5

*Nolde Bros. v. Local 358*
430 U.S. 243 (1977) ...........................................................................2, 12

*Orange Belt Dist. Council of Painters No. 48 v. Standard Drywall Inc.*
1979 WL 1943 (S.D. Cal. Oct. 16, 1979).........................................5

*Owens-Illinois, Inc. v. Meade*
186 F.3d 435 (4th Cir. 1999) .............................................................14

*Ressler v. Vietnam Mar. Commc'n & Elecs. Co.*
Case No. CV 10–3836 PA, 2010 WL 11601041(C.D. Cal. Aug. 9, 2010).......................................................................................................6

*Rosenthal v. Great W. Fin. Sec. Corp.*
14 Cal. 4th 394 (1996) ........................................................................15

*Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*
193 F. Supp. 2d 6 (D.D.C. 2001) ..................................................8, 12

*Stop H-3 Ass'n v. Volpe*
353 F. Supp. 14 (D. Haw. 1972) .......................................................11

*Studio Transportation Drivers, Teamsters Local #399, IBT v. Por Vida Prods., LLC,*
2010 WL 11596524 (C.D. Cal. Mar. 24, 2010) ..............................14

*Trustees of the U.A. Local 38 Defined Benefit Pension Plan v. Trustees of the Plumbers & Pipe Fitters Nat'l Pension Fund*
Case No. CV 13-05528 YGR, 2014 WL 12698712 (N.D. Cal. Oct. 22, 2014).......................................................................................................6

*United States v. Bravo-Diaz*
312 F.3d 995 (9th Cir. 2002)...............................................................5

*United States v. Hinkson*
585 F.3d 1247 (9th Cir. 2009) ............................................................8

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Zurich Am. Ins. Co. v. Superior Court for State of California*
    326 F.3d 816 (7th Cir. 2003)...............................................................14


**<u>STATUTES</u>**

9 U.S.C. § 16............................................................................................17

Cal. Code Civ. Proc. § 425.16 ................................................................3

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION

**I.**      **INTRODUCTION**

The Jackson Estate filed its Petition to Compel Arbitration almost nine months ago.[1] HBO has refused to comply with its contractual obligation to arbitrate since then, dragging this process out as long as possible. Having ultimately failed to block the Estate's effort to obtain an order compelling HBO to arbitrate this dispute, HBO now attempts to create further procedural roadblocks to a hearing on the merits of this dispute. As explained below, HBO's motion is without merit and is contrary to the leading case from the Ninth Circuit, not even cited by HBO, on whether to stay orders compelling arbitration.

Federal courts must consider four factors when considering a request for a stay pending appeal:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009), quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

Critically, the party requesting the stay "*must* demonstrate that irreparable harm is probable if the stay is not granted." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (emphasis added). Thus, "a proper showing regarding irreparable harm . . . remains[ ] a *necessary* but not sufficient condition for the exercise of judicial discretion to issue a stay." *Ibid.* (emphasis added).

HBO contends that "requiring it to expend time and resources defending itself" in arbitration constitutes irreparable harm. Dkt. 71, p. 11 of 17. But the Ninth

---

[1] We use the same naming convention as in the motion to compel arbitration: "HBO" refers to Respondent/Defendant Home Box Office, Inc.; "the Jackson Estate" refers collectively to Petitioners/Plaintiffs Optimum Productions and the Co-Executors of the Estate of Michael J. Jackson; and "the Agreement" refers to the 1992 agreement at issue, Steinsapir Decl., Ex. B (Dkt. 18, pp. 25-40 of 42).

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Circuit has rejected this argument as a matter of law in a case that HBO somehow
2  neglected to even cite in its opposition . Specifically, the Ninth Circuit has made
3  clear that it is "simply not the case" that "unnecessarily undergoing arbitration
4  proceedings constitutes irreparable injury." *Camping Const. Co. v. Dist. Council of*
5  *Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990). As the Court explained, the
6  "time and … expense involved in the typical arbitration would scarcely qualify as
7  irreparable injury." *Ibid. See also Graphic Commc'ns Union v. Chicago Tribune*
8  *Co.*, 779 F.2d 13, 15 (7th Cir. 1985) (Posner, J.) (denying stay of order compelling
9  arbitration pending appeal for the same reason). The Ninth Circuit's holding in
10 *Camping Construction* dooms HBO's motion to stay.

11      HBO has likewise not come close to "ma[king] a strong showing that [it] is
12 likely to succeed on the merits" of its appeal. *Nken*, 556 U.S. at 434. In fact, HBO's
13 principal argument that it will succeed on appeal is its tired contention, rejected
14 repeatedly by this Court, that the Agreement has somehow "expired," and thus the
15 claims are no longer arbitrable. As explained at length in prior briefing, that
16 argument is *directly contrary* to precedent from the Ninth Circuit, holding that
17 whether an arbitration agreement has expired *is an issue for the arbitrator* and not
18 for the district court on a motion to compel arbitration. *McKinney v. Emery Air*
19 *Freight Corp.*, 954 F.2d 590, 593 (9th Cir. 1992). *See also Nolde Bros. v. Local 358*,
20 430 U.S. 243, 255 (1977).

21      HBO's vague references to the First Amendment also do not save HBO's
22 motion. HBO primarily cites authority holding that "the speedy resolution of cases
23 involving free speech is desirable." *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431,
24 1435 (9th Cir. 1992) (cited at Dkt. 71, 10-11 of 17). But that authority militates
25 *against* granting a stay, not for granting a stay, which would further delay a hearing
26 on the "merits" of HBO's supposed defenses under the First Amendment. If HBO's
27 First Amendment defenses are as strong as it claims, it should want them
28 adjudicated quickly.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3ᴿᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    Denying HBO's request for a stay is not only required under controlling

2    precedent, it is consistent with the policies evidenced in the Federal Arbitration Act

3    itself. The Supreme Court has recognized Congress's intent in enacting the FAA

4    was to "move the parties to an arbitrable dispute out of court and into arbitration as

5    *quickly and easily as possible*." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

6    *Corp.*, 460 U.S. 1, 22 (1983) (emphasis added). Allowing a recalcitrant party to

7    delay arbitration by opposing enforcement in Court and then staying the

8    enforcement of an order compelling arbitration pending an appeal "would make a

9    *mockery* of arbitration as a swift and effective remedy." *Graphic Commc'ns Union*,

10   779 F.2d at 15 (emphasis added).

11   For all these reasons, HBO's motion should be denied.

12   **II.    BACKGROUND**

13   Given the Court's familiarity with the facts underlying this case, we provide

14   only a very brief background of the proceedings to put the issues here in proper

15   context. The Jackson Estate filed a Petition to Compel Arbitration against HBO on

16   February 21, 2019. Dkt. 1-1**.** HBO thereafter removed the Petition to this Court on

17   March 13, 2019, invoking the Court's diversity jurisdiction. Dkt. 1.

18   After thorough briefing and argument, the Court found that the Jackson

19   Estate's breach of contract claims fell within the scope of the Agreement's valid

20   arbitration clause. Dkt. 40, 55.

21   At both oral arguments respecting the Jackson Estate's motion to compel

22   arbitration, the Court inquired as to why HBO had not filed a motion to strike the

23   Petition under California's anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16).

24   HBO then requested the opportunity to file such a motion, and the Court directed

25   HBO to do so. HBO's anti-SLAPP motion, and the related briefing and argument

26   that followed, revealed why HBO's very competent legal team had previously

27   declined to file such a motion: A state anti-SLAPP motion cannot be brought to

28   stymy a party's federal rights under a duly-enacted Congressional statute, i.e.,

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  specific enforcement of an arbitration clause governed by the Federal Arbitration

2  Act. Dkt. 54, 55.

3       The Court granted the Jackson Estate's Motion to Compel Arbitration and

4  dismissed HBO's anti-SLAPP motion on September 20, 2019. Dkt. 55. HBO then

5  filed notice of appeal from the order granting the motion to compel arbitration on

6  October 21, 2019. Dkt. 64. HBO now seeks an order staying enforcement of the

7  Court's order compelling arbitration pending appeal to the Ninth Circuit.

8  **III.   LEGAL STANDARD**

9       Under Federal Rule of Civil Procedure 62, district courts have discretion to

10  stay enforcement of judgments pending appeal. "A stay is not a matter of right, even

11  if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433. "The party

12  requesting a stay bears the burden of showing that the circumstances justify an

13  exercise of . . . discretion" granting a stay. *Id*. at 433-34.

14       Courts are to consider four factors when considering a request for a stay of an

15  order pending appeal:  "(1) whether the stay applicant has made a strong showing

16  that he is likely to succeed on the merits; (2) whether the applicant will be

17  irreparably injured absent a stay; (3) whether issuance of the stay will substantially

18  injure the other parties interested in the proceeding; and (4) where the public interest

19  lies." *Id*. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

20       "The first two factors of the traditional standard are the most critical," and,

21  importantly, they are mandatory**. O**nly "[o]nce an applicant satisfies the first two

22  factors, the traditional stay inquiry calls for assessing the harm to the opposing party

23  and weighing the public interest." *Ibid*. (emphasis added).

24  **IV.   ARGUMENT**

25       **A.   The Ninth Circuit Has Conclusively Held that Being Compelled to**

26           **Arbitrate <u>Cannot</u> Constitute Irreparable Injury**

27       "A proper showing regarding irreparable harm . . . remains[] a *necessary* but

28  not sufficient condition for the exercise of judicial discretion to issue a stay." *Leiva-*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  *Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (emphasis added and

2  capitalization altered). The party requesting the stay "*must* demonstrate that

3  irreparable harm is probable if the stay is not granted." *Ibid.* (emphasis added).

4      The only supposed "irreparable harm" that HBO points to in its brief is that

5  beginning the arbitral process would "requir[e] it to expend time and resources

6  defending itself" in arbitration. Dkt. 71, p. 11 of 17. But this contention fails as a

7  matter of law under settled precedent from the Ninth Circuit. The Ninth Circuit has

8  held that it is "simply not the case" that "unnecessarily undergoing arbitration

9  proceedings constitutes irreparable injury." *Camping Const. Co. v. Dist. Council of*

10  *Iron Workers*, 915 F.2d 1333, 1349 (9th Cir. 1990) (the "time and … expense

11  involved in the typical arbitration would scarcely qualify as irreparable injury.").

12      The Ninth Circuit thoroughly explained why. "First, the party objecting to

13  arbitration might well suffer no harm at all, irreparable or otherwise, for the

14  arbitration panel might decide in its favor. … A party which prevails at an

15  arbitration to which it objects would probably save time and money by having the

16  matter resolved in its favor in arbitration rather than in litigation." *Ibid.* Moreover,

17  "any arbitral award obtained by the party seeking arbitration will have no preclusive

18  effect in a subsequent confirmation or vacatur proceeding as long as the objecting

19  party has reserved its right to a judicial, rather than arbitral, determination of

20  arbitrability." *Ibid.* Thus, the Court held that the time and expense involved in an

21  arbitration "would scarcely qualify as irreparable injury." *Ibid.*

22      Inexplicably, HBO did not bring this binding precedent to the Court's

23  attention, and did not even cite it to the Court. Instead, it relied largely on a 40 year-

24  old case from the Southern District of California, *Orange Belt Dist. Council of*

25  *Painters No. 48 v. Standard Drywall Inc.*, 1979 WL 1943 (S.D. Cal. Oct. 16, 1979).

26  That case is of no value whatsoever, because it predates the Ninth Circuit's holding

27  in *Camping Construction Company* (and the Supreme Court's holdings regarding

28  the stay factors in *Hilton* and *Nken*). *See United States v. Bravo-Diaz*, 312 F.3d 995,

1   998 (9th Cir. 2002) (district court erred by relying on another district court case that

2   was "issued several years before our [controlling] decision [on subject matter at

3   issue]").

4         Not surprisingly, the district courts in California to address the issue since the

5   Ninth Circuit's holding in *Camping Construction Company* routinely apply it—in

6   *both* labor *and* commercial disputes—to deny motions to stay orders compelling

7   arbitration pending appeal. *See, e.g.*, *Kropke v. Dunbar*, Case No. CV 16-08753

8   MWF, 2017 WL 8186745, at *3 (C.D. Cal. Feb. 14, 2017) ("Plaintiffs are incorrect

9   that being forced to arbitrate issues Plaintiffs never agreed to arbitrate is per se

10  irreparable harm."); *Trustees of the U.A. Local 38 Defined Benefit Pension Plan v.*

11  *Trustees of the Plumbers & Pipe Fitters Nat'l Pension Fund*, Case No. CV 13-

12  05528 YGR, 2014 WL 12698712, at *3 (N.D. Cal. Oct. 22, 2014) (same); *Ressler v.*

13  *Vietnam Mar. Commc'n & Elecs. Co.*, Case No. CV 10–3836 PA, 2010 WL

14  11601041, at *5-6 (C.D. Cal. Aug. 9, 2010) (same); *Divxnetworks, Inc. v. Gericom*

15  *AG*, Case No. CV 04-2537 WQH2007 WL 4538623, at *3 (S.D. Cal. Dec. 19, 2007)

16  ("An applicant cannot demonstrate irreparable injury by simply asserting that he

17  may be required to undergo the time and expense of an unnecessary arbitration.").

18        The Seventh Circuit too has reached the same conclusion as the Ninth Circuit

19  for largely the same reasons. Specifically, in *Graphic Commc'ns Union v. Chicago*

20  *Tribune Co.*, 779 F.2d 13 (7th Cir. 1985), the Chicago Tribune argued, as HBO does

21  here, that it "will incur a substantial expense in time and money" if the court did not

22  stay the district court's order compelling arbitration on appeal. *Id.* at 15. The Court

23  rejected the Tribune's argument (largely identical to HBO's), holding that "the fact

24  that an order to arbitrate imposes a cost*,* the cost of the arbitration, whether it is an

25  opportunity cost of time or an out-of-pocket expense for lawyers or witness fees or

26  whatever, or both types of costs, *does not show irreparable harm*." *Ibid.* (emphasis

27  added). The Court explained that "[o]therwise every order to arbitrate would be

28  deemed to create irreparable harm, and it would be easy to get such orders stayed.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION

Kinsella Weitzman Iser Kump & Aldisert llp

808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1   That however would fly in the face of the strong federal policy in favor of

2   arbitrating disputes in general and labor disputes in particular. Arbitration is

3   supposed to be swift. It will not be swift if orders to arbitrate are routinely stayed

4   pending appeals from those orders." *Ibid*. (emphasis added and internal citations

5   omitted). The Court therefore concluded that "[t]he defendants have not made a case

6   for a stay of arbitration. What is more, we find it very difficult to imagine how such

7   a case could be made." *Ibid*.

8       In short, HBO's position that it will be "irreparably harmed" by the arbitration

9   going forward is foreclosed by binding precedent from the Ninth Circuit, along with

10  persuasive authority from the Seventh Circuit and from the district courts of this

11  Circuit. Obviously, if HBO had any way to distinguish these cases, it would have

12  discussed them. This motion must therefore be denied as "a proper showing

13  regarding irreparable harm . . . remains[] a *necessary* … condition for the exercise

14  of judicial discretion to issue a stay." *Leiva-Perez*, 640 F.3d at 968 (emphasis

15  added). [2]

16  _____

17      [2] It must be noted again that AT&T, of which HBO is a subsidiary, has spent

18  decades forcing arbitration on consumers—making it a condition of consumers
    procuring their often necessary services—reshaping the law in the process and

19  making public litigation of consumer claims against AT&T under basic consumer
    protection laws all but impossible (and by cutting off class actions of such claims,

20  makes them largely a dead letter as it is not economical to arbitrate such claims on
    an individual basis). *See generally  AT&T Mobility LLC v. Concepcion*, 563 U.S.

21  333, 344-46 (2011). Now, with the shoe on the other foot, AT&T is resisting
    arbitration at every cost, claiming that *even going forward with the arbitral process*

22  will *irreparably harm* the company. The hypocrisy of AT&T's position cannot be
    ignored. The Seventh Circuit pointed to this same hypocrisy—in another industry

23  that insists on arbitration with consumers—when sanctioning PaineWebber for
    filing a motion to stay arbitration pending appeal, finding the claim that it would

24  suffer irreparable injury to be simply frivolous (and like HBO, PaineWebber also
    did not cite the leading authority from that Circuit in its motion to stay).

25  *PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052 (7th Cir. 1988) ("The securities
    industry insists that its customers sign arbitration agreements, which the Supreme

26  Court has sustained—in part on the premise that it is desirable to have a cheap,
    quick method to deal with the disputes (many too small to justify full scale

27  litigation) this industry produces. … Doubtless PaineWebber enforces its arbitration
    clauses when its customers initiate litigation. Here, however, the customers invoked

28  the arbitration clauses, and PaineWebber is resisting.")

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    HBO also cannot escape this precedent by arguing that participating in

2    arbitration poses a "serious threat to HBO's exercise of its free speech rights to

3    continue to distribute … *Leaving Neverland*." Dkt. 71 at p. 7 of 17. HBO's

4    argument is baseless and supported by nothing other than counsel's *ipse dixit*.

5    The contention that an arbitration between the Jackson Estate and HBO—not

6    involving any potential liability against third parties—is somehow threatening

7    distribution of *Leaving Neverland* is absurd. The Jackson Estate seeks only to

8    recover monetary damages in arbitration and HBO does not—and cannot—seriously

9    contend that it will cancel airing *Leaving Neverland* pending its arbitration with the

10   Jackson Estate. *Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F.

11   Supp. 2d 6, 14 (D.D.C. 2001) ("financial harm alone cannot constitute irreparable

12   injury unless it threatens the very existence of the movant's business").

13   Critically, and tellingly, apart from attorney argument about the expense of

14   arbitration, and despite its evidentiary burden to show irreparable harm, HBO

15   submits *no declarations or other evidence* outlining exactly how HBO or its

16   continued distribution of *Leaving Neverland* would be adversely impacted by

17   enforcement of the Court's order compelling arbitration. If such evidence existed,

18   we would expect that HBO would have come forward with it. The complete absence

19   of evidence is probably the best evidence for the complete lack of merit for this

20   motion. *See United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (Court of

21   Appeals must reverse a district court's entry of preliminary injunction if it is

22   "without support in inferences that may be drawn from facts in the record"); *see also*

23   *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 120 (2d Cir. 2009)

24   (reversing entry of preliminary injunction because "[i]n the absence of evidentiary

25   support of irreparable harm, there was no basis for the entry of a preliminary

26

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  injunction against Wabtec in this action."). [3]

2       As for HBO's vague hand-wringing about a "chilling effect" on third parties,

3  that is a smokescreen designed to obfuscate the fact that the Jackson Estate's

4  petition is a garden variety request to compel arbitration of a basic breach of

5  contract claim. The Court explained in the following exchange at the September 19,

6  2019 hearing:

7          [HBO Counsel]: But the message sent by a lawsuit of this
        kind, Your Honor, it doesn't just go to HBO. It goes to the

8          small players, the independent producers, individuals who
        might want to speak out.

9
        THE COURT: The thing about it is in the end, it will go

10          into arbitration. As you indicated it's going to be a public
        arbitration. They are going to win or lose. If they lose,

11          they will say, oh, that was kind of stupid of them to have
        brought this.

12
        Let's put it this way, I mean, everything they have said . . .

13          they are not arguing that HBO is doing anything even that
        weird or anything that was wrong or anything of that sort.

14
        They are basically saying there was this provision in the

15          contract, and it was breached, and we want to have that
        placed in front of a arbitrator. It's not like -- again, it

16          doesn't seem to me that it is so troublesome.

17  Steinsapir Decl., Ex. A (Tr. of 9/19/19 Hrg.), pp. 15-16.  As the Court recognized,

18  the arbitration of a breach of contract case between the Jackson Estate and HBO is

19  unlikely to have a chilling effect on speech. And certainly, if the Court were wrong,

20  HBO would have submitted *evidence* to refute that.

21       HBO's argument that it will be irreparably harmed by participating in

22  arbitration is foreclosed by the Ninth Circuit's holding in *Camping Construction*, by

23  the persuasive holdings of other federal courts, including the Seventh Circuit, and by

24  the lack of *any* evidence to support its claim that it will be "irreparably harmed" by

25  _____

26     [3] "There is substantial overlap between these [stay factors] and the factors
governing preliminary injunctions." *Nken*, 556 U.S. at 434, citing *Winter v. Natural*

27  *Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

28

1  simply going forward with an arbitration (that likely would not be over by the end of

2  the appeal). HBO's Motion must therefore be denied.

3  **B.    HBO Cannot Show A Likelihood Of Success On The Merits**

4  **1.    HBO's contract expiration arguments are frivolous.**

5     When considering a request to stay an order pending appeal, the district court

6  considers whether the appeal presents substantial legal questions "*so long as* the

7  [movant] has made the threshold showing that irreparable harm is probable absent a

8  stay." *Leiva-Perez*, 640 F.3d at 971 (emphasis added). As HBO has failed to make

9  that threshold showing, the Court may end its inquiry and deny HBO's motion.

10    Even if the Court were to consider HBO's likelihood of success on the merits,

11 HBO fails to identify any difficult or novel issues of law in its Motion. The *sole*

12 issue HBO apparently believes presents a "difficult" question is HBO's argument

13 that the Agreement was "fully performed" and has thus "expired," rendering the

14 arbitration clause unenforceable. Dkt. 71 at pp. 12-14 of 17.[4] But the Court has

15 already repeatedly rejected HBO's argument as a non-starter under precedent from

16 both the Supreme Court and the Ninth Circuit.

17    In the Court's May 23, 2019 Tentative Order, which the Court adopted as

18 final, Dkt. 28, the Court dispensed with HBO's argument in a footnote, explaining

19

20    [4] HBO's argument that the contract has been "fully performed" is a red
herring. Even when contracts have been "fully performed," there are still continuing

21 obligations that remain. For an example familiar to any litigator, take a simple
settlement agreement providing for payment of money in exchange for a dismissal

22 of litigation and a release of claims. The agreement, to use HBO's terminology, is
"fully performed" after payment has been made and the case is dismissed. But there

23 almost always remain continuing covenants under a settlement agreement, e.g.,
confidentiality, covenants not to sue, non-disparagement, etc. Moreover, HBO

24 cannot be serious when it argues that every provision of the contract is somehow
unenforceable because the contract "expired." To state the obvious, if HBO decided

25 to re-air *Live in Bucharest* tomorrow, that would be a breach of the Agreement (as
the Agreement only allowed for airing during a limited time). Likewise, if HBO

26 went to its library and found film outtakes of Michael Jackson that it obtained from
its involvement in *Live in Bucharest* and used those to make another program, that

27 would also constitute a textbook breach of the confidentiality obligations. Simply
put, there are obligations under the Agreement that clearly have *not* "expired" at all.

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

that "[t]o the extent Defendants are arguing that this Court must determine the continued validity of the Agreement as a whole before analyzing whether the Arbitration Provision commits the question of arbitrability to the arbitrator, they are misguided." Dkt. 27, p. 10 of 14, n. 7. The Court recited the well-established rule that "[t]he continued validity of the Agreement as a whole is a question for the arbitrator." *Ibid.*, citing and quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000-01 (9th Cir. 2010).

Ignoring the Court's ruling, HBO made the same exact argument again in the next round of briefing. In its corresponding order, the Court responded that "[t]he Court previously noted that any challenge to the validity of the Agreement as a whole is a question for the arbitrator," Dkt. 40, p. 8 of 10, and then devoted an entire section of its July 15, 2019 Order to explaining exactly why HBO's argument fails under Supreme Court and Ninth Circuit precedent. Dkt. 40, 8-9 of 10.

In its final September 19, 2019 order, the Court even reiterated that "[d]efendants vigorously dispute the applicability of the Agreement, whether the Agreement has expired, and whether the Agreement as a whole is void based on First Amendment concerns. But the Court has addressed the first two issues in its Tentative Ruling, and Defendants may argue the third in front of the arbitrator." Dkt. 54 at 13 of 16 (adopted as final, Dkt. 55).

Although HBO continues to raise this issue, it is clear that the Court's rejection of HBO's argument does not "chart[ ] new and unexplored ground," *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972), given that the Supreme Court and the Ninth Circuit have already answered the legal question. As discussed at length in prior briefing, the Ninth Circuit has explicitly held that whether a contract has expired is an issue for the arbitrator and *not* for resolution by a federal court on a motion to compel arbitration: "Precepts laid down instruct us to distinguish between a dispute over whether a contract ever existed and *a dispute*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION

1  *over whether a contract has expired* or has been terminated or repudiated. In the

2  former case, the issue is for the court; *in the latter, the issue is for the arbitrator* if

3  the breadth of the arbitration clause is not in dispute." *McKinney v. Emery Air*

4  *Freight Corp.*, 954 F.2d 590, 593 (9th Cir. 1992). The Supreme Court has

5  essentially held the same. *Nolde Bros. v. Local 358*, 430 U.S. 243, 255 (1977)

6  ("where the dispute is over a provision of the expired agreement, the presumptions

7  favoring arbitrability must be negated expressly or by clear implication").

8      HBO points to no authority *actually granting* a stay of an order compelling

9  arbitration due to legal novelty. *See Stop H-3 Ass'n*, 353 F. Supp. at 19 (denying

10  stay). Instead, the two primary cases upon which HBO relies <u>deny</u> a motion to stay

11  an order compelling arbitration on appeal because, under the Ninth Circuit's holding

12  in *Camping Construction Company*, a stay "applicant cannot demonstrate

13  irreparable injury by simply asserting that he may be required to undergo the time

14  and expense of an unnecessary arbitration." *Divxnetworks, Inc.*, 2007 WL 4538623,

15  at *3; *Gen. Teamsters Union Local No. 439 v. Sunrise Sanitation Servs., Inc.*, 2006

16  WL 2091947, at *4 (E.D. Cal. July 26, 2006) (denying stay for same reasons).

17      Importantly, in a case where the district court acknowledged that "[t]he

18  arbitration versus litigation issue in the present case clearly raises some *difficult*

19  *questions of law and policy*" and found that "there is no Ninth Circuit authority

20  directly on point," the court nonetheless decided against staying arbitration, because

21  "the other factors the equities do not weigh in favor of a stay." *Himebaugh v. Smith*,

22  476 F. Supp. 502, 510 (C.D. Cal. 1978). In that case, Judge Byrne reached the same

23  conclusion as the Ninth Circuit in *Camping Construction Company*—fifteen years

24  before the Ninth Circuit got there—holding that "[a]lthough [movant] may suffer

25  the expense of an inappropriate arbitration, the results of the arbitration will not

26  preclude [movant] from later asserting the inappropriateness of the arbitration

27  forum. Arbitration, therefore, will not result in irreparable injury to [movant]." *Id.* at

28  511. The court further held that "[a] delay in arbitration will be harmful to the [party

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800  •  FAX 310.566.9850

12

1 seeking arbitration] and to the public, which has an interest in the speedy resolution

2 of arbitrable matters." *Ibid*.

### 2. It is already settled law that a *State* anti-SLAPP statute cannot apply to a *federal* claim to compel arbitration.

5 Whether the anti-SLAPP statute applies is an easy question. Notwithstanding

6 the several rounds of briefing and exploration of various issues, the Court's decision

7 to grant the Petition to compel arbitration was ultimately grounded in long-

8 established, bedrock principles relating to the FAA. As the Court quoted,

> By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate *must be enforced, absent a ground for revocation of the contractual agreement.*

14 *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis added).

15 That is the beginning and end of the inquiry. With respect to California's anti-

16 SLAPP statute, it remains undisputed that the anti-SLAPP statute is not a "ground

17 for revocation of the contractual agreement." *Ibid*. Thus, under *Dean Witter*

18 *Reynolds*, the result of HBO's appeal of the dismissal of the anti-SLAPP motion is

19 preordained. Given a finding that (1) that the Estate's breach of contract claim falls

20 within the scope of the Agreement's arbitration clause, and (2) that California's anti-

21 SLAPP statute is not a ground for revocation of the arbitration agreement, it would

22 be impossible to *both* deny the Jackson Estate's motion to compel arbitration *and*

23 remain faithful to the Supreme Court's holding in *Dean Witter Reynolds* and its very

24 extensive progeny (cited in prior briefing).

25 Additionally, California's anti-SLAPP statute does not apply in federal court

26 to claims based on federal law. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 955 n.3

27 (9th Cir. 2013). In its order denying HBO's anti-SLAPP motion, the Court held

28 "that the only question before the Court right now – whether it must grant the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION

Petition – sounds under the FAA" but nonetheless concluded that "it does not follow that a petition to compel arbitration is necessarily a federal claim like those discussed in Ninth Circuit cases applying anti-SLAPP to the state causes of action." (Dkt. 64 at p. 6 of 16). Having further researched the issue in response to the Court's order, it is clear that a motion to compel arbitration under the FAA *is* unambiguously a federal claim. *See*, *e.g.*, *Studio Transportation Drivers, Teamsters Local #399, IBT v. Por Vida Prods., LLC*, 2010 WL 11596524, at *6 (C.D. Cal. Mar. 24, 2010) (granting default judgment and concluding that "Petitioner has adequately established a claim for relief under the Federal Arbitration Act."); *Zurich Am. Ins. Co. v. Superior Court for State of California*, 326 F.3d 816, 822 (7th Cir. 2003) ("But Zurich's *federal claim* arises under the Federal Arbitration Act (FAA) . . . . The federal claim does not therefore seek to set aside the state court's orders and does not depend on a determination that the court erred."); *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 439 (4th Cir. 1999) ("Owens–Illinois' cause of action arises out of the Federal Arbitration Act"). This must be so—a claim for relief must be predicated on *some* source of law. And, as the Court held, the FAA is the principal source of law that the Jackson Estate relies on to compel arbitration.

Moreover, as explained in the Jackson Estate's briefs opposing HBO's anti-SLAPP motion, it is irrelevant that a petition to compel arbitration governed by the FAA cannot be filed originally in federal court absent an independent basis for federal jurisdiction. Dkt. 50-2, p. 4 n. 1 of 11. Indeed, the California Supreme Court has itself made clear that a petition to compel arbitration under the FAA is a "federal claim" *regardless* of whether it is filed in state or federal court:

> But the federal policy of ensuring enforcement of private arbitration agreements, centrally embodied in section 2, is not self-implementing; its effectuation requires that courts have available some procedure by which a party seeking arbitration may compel a resisting party to arbitrate. Section 4 of the [FAA] establishes one such procedure; state law may or may not provide for other equivalent or similar procedures. If no adequate state procedures are provided, state courts may, in order fairly to adjudicate a

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3ᴿᴰ FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800  •  FAX 310.566.9850

*federal claim for enforcement of an arbitration agreement,* be obliged to adopt a procedure similar in its essentials to that set out in the [FAA].

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 408 (1996) (emphasis added). In other words, a petition filed in state court to compel arbitration pursuant to the FAA, like any other federal claim filed in state court, is still a *federal claim.*[5]

The Court's ruling on the Jackson Estate's Petition correct, and the Ninth Circuit will almost certainly affirm the Court's order on appeal without controversy. In the meantime, HBO cannot show either irreparable harm or a likelihood of success on the merits so its request for a stay must be denied.

### C.    A Stay Would Substantially Injure the Jackson Estate

Although HBO will suffer no injury by being made to arbitrate, further delay in enforcing the arbitration clause will injure the Jackson Estate by continuing to deprive it of its contractual right to arbitration. HBO argues that because the Jackson Estate is only seeking money damages, it cannot be harmed by further delay. Not so. The Jackson Estate is seeking to vindicate its federal right to an arbitral forum. As the Supreme Court has held, "Congress's clear intent, in the Arbitration Act," is to

_____

[5] As explained in the prior briefing, the fact that a claim under the FAA cannot be filed originally in federal court (absent another basis for federal jurisdiction) is irrelevant to the question of whether the claim is based on federal law. In asserting that the FAA does not create a "federal cause of action," HBO is conflating the question of federal jurisdiction with the separate question of whether a claim is based on federal law. In fact, although the FAA may *today* be "something of an anomaly" in creating a federal claim but leaving its enforcement principally to state trial courts absent diversity, *Hall St. Assocs., L.L.C. v. Mattel*, Inc., 552 U.S. 576, 582 (2008), it was hardly an anomaly when it was passed in 1925. For most of this country's history, Congress has exempted classes of federal claims from the federal courts' original jurisdiction. In fact, for roughly the first hundred years of the Nation's history, the federal trial courts had *no* general federal question jurisdiction at all. "[I]t was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction," *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 807 (1986), despite vesting the federal trial courts with diversity jurisdiction in the First Judiciary Act in 1789. *Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010). And until 1980, Congress required that *all* federal claims must have a specific amount in controversy (equal to the diversity statute) to be filed in a federal district court, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505-06 (2006), and if they did not, those cases would need to be filed in state court.

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1    "to move the parties to an arbitrable dispute out of court and into arbitration as

2    *quickly and easily as possible*." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22

3    (emphasis added).

4    The Ninth Circuit has admonished courts for not recognizing a party's

5    legitimate and weighty interest in the quick and easy enforcement of their right to

6    arbitrate. As the Ninth Circuit explained in *Camping Construction Company*, "[n]or

7    can we say that the minor expense and inconvenience to the objecting party,

8    including being the object of an outstanding unfavorable award, outweighs the other

9    party's interests, of which the district court seems to have taken little notice in this

10   case." *Camping Const. Co.*, 915 F.2d at 1349.

11   The Jackson Estate filed its Petition to Compel Arbitration in February 2019,

12   almost nine months ago. The current median time to resolution on the merits in a

13   civil appeal to the Ninth Circuit is 17 ½ months.[6] Congress did not intend for a

14   plaintiff to have to wait years while their arbitral claims languished in procedural

15   limbo. As the Seventh Circuit has explained, "if orders to arbitrate are routinely

16   stayed pending appeals from those orders" then "the typical arbitration will proceed

17   as follows: the union demands arbitration; the employer refuses; the union sues to

18   compel arbitration; the employer resists the suit; the district court orders arbitration;

19   the employer appeals; the order is stayed pending appeal; the court of appeals

20   affirms; at last, years after the dispute arose, the arbitration can begin. This pattern

21   would make a mockery of arbitration as a swift and effective remedy." *Graphic*

22   *Commc'ns Union*, 779 F.2d at 15.

23   In short, a stay would further eviscerate the Jackson Estate's right to move

24   this "arbitrable dispute out of court and into arbitration as quickly and easily as

25   _____

26   [6] *U.S. Courts of Appeals Judicial Business*, Table B-4A— Median Times for Civil
     and Criminal Cases Terminated on the Merits—During the 12-Month Periods
27   Ending September 30, 2017 and 2018  (September 30, 2018), Available at
     https://www.uscourts.gov/sites/default/files/data_tables/jb_b4a_0930.2018.pdf.
28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800  •  FAX 310.566.9850

Kinsella Weitzman Iser Kump & Aldisert llp
808 Wilshire Boulevard, 3ʳᴰ Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

1  possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.

2      **D.**    **Granting A Stay Of Arbitration Would Contravene Public Policy**

3      Congress has a strong policy not just of arbitration, but of expedient judicial

4  enforcement of arbitration agreements. Staying the Jackson Estate's indisputably

5  arbitrable claims for months or years makes a "mockery" of this policy. *Graphic*

6  *Commc'ns Union*, 779 F.2d at 15. There is simply no case to be made otherwise,

7  and HBO has not even tried to do so.

8      To dispel any doubt, Congress essentially enshrined the prioritization of

9  speedy enforcement of arbitration clauses by allowing orders *denying* arbitration to

10 be immediately appealable, but *not* orders compelling arbitration (except in limited

11 circumstances where the only claim before the Court is a *federal* claim to enforce an

12 arbitration agreement under the FAA). 9 U.S.C. § 16(a)(1)(B). Were Congress

13 troubled by the possibility of parties undertaking erroneously-compelled

14 arbitrations, it could have made orders compelling arbitration immediately

15 appealable as well. But it chose not to.

16     Additionally, HBO's cited authorities holding that "the *speedy resolution* of

17 cases involving free speech is desirable" militate *against* granting a stay, not for it.

18 *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) (see Dkt. 71,

19 10-11 of 17). It is self-evident that a stay in arbitration *of the merits* can only further

20 *delay* resolving the "merits" (such as they are) of HBO's First Amendment defenses.

21     HBO continues to tout its unspecified First Amendment defenses to

22 enforcement of the Agreement, but the only party to "unnecessarily delay the

23 disposition" of those issues is HBO—by unilaterally resisting arbitration without

24 basis for eight months, and now by asking the Court to stay arbitration on the merits.

25 Any public interest in speedily resolving First Amendment questions therefore

26 militates against issuing a stay and not for it.

27

28

## V.    <u>CONCLUSION</u>

The Jackson Estate respectfully requests that HBO's request for a stay be denied and that the order compelling arbitration be enforced forthwith.

DATED: November 1, 2019            KINSELLA WEITZMAN ISER
                                   KUMP & ALDISERT LLP


By:        */s/ Howard Weitzman*
           Howard Weitzman
           Attorneys for Optimum Productions and
           for John Branca and John McClain as
           Executors of the Estate of Michael J.
           Jackson

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

## <u>DECLARATION OF JONATHAN STEINSAPIR</u>

I, Jonathan Steinsapir, declare as follows:

1.      I am an attorney duly admitted to practice before this Court. I am a partner with Kinsella Weitzman Iser Kump & Aldisert LLP, attorneys of record for Optimum Productions and for John Branca and John McClain as Co-Executors of the Estate of Michael J. Jackson ("the Jackson Estate"). If called as a witness, I could and would competently testify to all the facts within my personal knowledge except where stated upon information and belief.

2.      Attached as Exhibit A to this declaration is a true and correct copy of the transcript of proceedings in this Court in this case on September 19, 2019.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 1, 2019, at Santa Monica, California.

/s/ *Jonathan Steinsapir*

Jonathan P. Steinsapir

0386.00348/669313

THE JACKSON ESTATE'S OPPOSITION TO HBO'S MOTION TO STAY ORDER COMPELLING ARBITRATION